**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CIVIL ACTION NO.________

**MICHAEL ALLEN,**
*Petitioner*

**v.**

**DARREL VANNOY, Warden,**
**Louisiana State Penitentiary**
*Respondent*

---

**MEMORANDUM IN SUPPORT OF**
**PETITION FOR WRIT OF HABEAS CORPUS**
**28 U.S.C. § 2254**

---

**RESPECTFULLY SUBMITTED BY:**

12.12, 2019.
DATE

Michael Allen 575625

**MICHAEL ALLEN #575625, PRO-SE**
**CAMP-D, RAVEN 3/RIGHT**
**LOUISIANA STATE PENITENTIARY**
**ANGOLA, LOUISIANA 70712**

# TABLE OF CONTENTS

Page No.

STATEMENT OF JURISDICTION .......... 1

STATEMENT OF THE CASE .......... 2

TIMELINESS & EQUITABLE TOLLING .......... 3

STATEMENT OF THE FACTS .......... 8

CLAIMS FOR RELIEF .......... 9

1. The State Court's Denial Of Petitioner's Claim That The Affidavit Submitted In Support Of The Arrest Warrant Is Constitutionally Insufficient To Support Probable Cause To Arrest Him For Second Degree Murder, Resulted In A Decision That Is Contrary To, Or Involved An Unreasonable Application Of, Clearly Established Federal Law, As Determined By The Supreme Court Of The United States In Illinois v. Gates, 462 U.S. 213 (1983); Draper v. United States, 358 U.S. 307 (1959); And United States v. Harris, 403 U.S. 573 (1971)

2. The State Court's Denial Of Petitioner's Claim That The In-Court And Out-Of-Court Identification Procedure Used By Police Created A Substantial Likelihood Of Mis-Identification And Should Have Been Inadmissible At Trial Because It Was Not Shown That The Procedure Negated Every Reasonable Probability Of Mis-Identification, Resulted In A Decision That Is Contrary To, Or Involved An Unreasonable Application Of, Clearly Established Federal Law, As Determined By The Supreme Court Of The United States In Manson v. Brathwaite, 432 U.S. 98 (1977)

3. The State Court's Denial Of Petitioner's Claim That He Received Ineffective Assistance Of Counsel At Trial Because His Defense Attorney Failed To Put The Prosecutor's Case Through The Adversarial Process As Envisioned By The Sixth Amendment Of The Constitution And The Right To Counsel, Resulted In A Decision That Is Contrary To, Or Involved An Unreasonable Application Of, Clearly Established Federal Law, As Determined By The Supreme Court Of The United States In Strickland v. Washington, 466 U.S. 668 (1984)

ARGUMENT NO. 1 .......... 11

ARGUMENT NO. 2 .......... 15

ARGUMENT NO. 3 .......... 19

Page No.

CONCLUSION....23

CERTIFICATE OF SERVICE....24

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT....25

**INDEX OF AUTHORITIES**

## CONSTITUTIONAL:

Article I, Section 5, of the Louisiana Constitution....11

Fourth Amendment of the United States Constitution....11

The Sixth Amendment....10, 19, 20

## STATUTORY:

§ 2244(d)(1)....5, 7

§ 2244(d)(1)(A)....3

§2254(e)(1)....6

28 U.S.C. § 2241....1

28 U.S.C. § 2244(d)(1)(A)....3

28 U.S.C. § 2244(d)(2)....4

28 U.S.C. § 2254....1, 10

28 U.S.C. § 2254(e)(2)....10, 11

28 U.S.C. 2254 habeas corpus....3

28 U.S.C.§2254(d)(2)....6

28 U.S.C.A. § 2244(d)(1)(A)....3

Page No.

28 U.S.C.A. § 2254(d)....................5

28 U.S.C.A. § 2254(d)(1)....................11, 16

La. C.Cr.P. art. 930.1....................6

La. R.S. 14:30.1....................2

LSA-R.S. 13:910....................6

## CASE LAW:

Clark v. Johnson, 202 F.3d 760 (5th Cir. 2000)....................11

Davis v. Johnson, 158 F.3d 806, 810 (5th Cir.1998), cert. denied, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999)....................5

Dixon v. Cain, 316 F.3d 553, 554-55 (5th Cir. 2003)....................4

Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959)....................9, 11

Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir.1999)....................5

Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004)....................3

Gerstien v. Pugh, 420 U.S. 103, 95 S.Ct. 845, 43 L.Ed.2d 54 (1975)....................13

Gibson v. State, 758 So.2d 782 (La. 4/11/00)....................13

Illinois v. Gates, 462 U.S. 213, 103, S.Ct. 2317, 76 L.Ed.2d 527 (1983)....................9, 11, 13

Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2L.Ed.2d, 1503 (1958)....................13

James v. Whitley, certiorari denied 115 S.Ct. 1704, 514 U.S. 1069, 131 L.Ed.2d 565....................5

Jimenez v. Quarterman, 129 S.Ct. 681, 685-86, 172 L.Ed.2d 475 (2009)....................3

Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)....................9, 15, 16

McMann v. Richards, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)....................20

Page No.

McQuiggin v. Perkins, 569 U.S. ___, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013)........................7

Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. 2d 401 (1972)........................................18

Rummel v. Estelle, 590 F.2d 103 (5th Cir. 1979)..........................................................................21

State ex rel., Clarence Foy v. Criminal District Court, 669 So.2d 393 (La. 3/15/96)......................6

State ex rel., Lonnie Bilbo v. State of Louisiana, 825 So.2d 1154 (La. 9/20/02)............................6

State of Louisiana v. Lester Moody, No. 40345-KH.......................................................................21

State of Louisiana v. Michael Allen, No. 499-990, Criminal District Court, Parish of Orleans (2012).........................................................................................................................................18

State v. Allen, 129 So.3d 724 (La. App. 4th Cir. 11/20/13)..............................................................2

State v. Allen, 140 So.3d 1174 (La. 2014).........................................................................................2

State v. Chism, 591 So.2d 385 (1991)..............................................................................................16

State v. Guillot, 353 So.2d 1005 (La. 1977).....................................................................................15

State v. Johnson, 557 So.2d 1030 (La. App. 4th Cir. 1990)..............................................................21

State v. Johnson, 759 So.2d 1052, writ denied, 00-1949 (La. 9/21/01), 797 So.2d 60...................15

State v. Lumpkin, 813 So.2d 640 (La. App. 1st Cir. 3/28/02).........................................................11

State v. Mena, 344 So.2d 357 (La. 1976)...................................................................................13, 14

State v. Powell, 677 So.2d 1008 (La. App. 2d Cir. 4/12/96)...........................................................16

State v. Prudholm, 483 So.2d 729 (La. 1984)..................................................................................21

State v. Reed, 483 So.2d 1278 (La. App. Cir. 1986).......................................................................21

State v. Rodrigue, 437 So.2d 830 (La. 1983)...................................................................................13

State v. Simms, 571 So.2d 145 (La. 1990)......................................................................................13

State v. Sparrows, 612 So.2d 191 (La.App. 4th Cir. 1992)..............................................................21

Page No.

State v. Welsh, 371 So.2d 1314 (La. 1979) ..... 13

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 764 (1984) ..... 10, 19, 20, 21

U.S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d (1967) ..... 18

United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) ..... 9, 11, 13

United States v. Wynn, 292 F.3d 226 (5th Cir. 5/31/02) ..... 5

Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ..... 6

Wilson v. Cain, 564 F.3d 702, 706 (5th Cir. 4/1/2009) ..... 3

Wood v. Allen, 558 U.S. 290, 130 S.Ct. 841, 845 (2010) ..... 6

## OTHER AUTHORITY:

Rule 4-2 and 4-3 ..... 7

Supreme Court Rule 13 ..... 3

The Assessment Of Trial Level Defense Services In Louisiana 40 Years After Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ..... 19

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MICHAEL ALLEN,**
*Petitioner,*

**vs**

**DARREL VANNOY, Warden,**
**Louisiana State Penitentiary**
*Respondent*

**Docket No:______________**

**Section:________________**

**Mag. Judge:______________**

**Judge:_________________**

* * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM SUPPORTING PETITIONER'S**
**Sec. 2254 PETITION FOR WRIT OF HABEAS CORPUS**

**MAY IT PLEASE THE COURT:**

Now comes, **Michael Allen D.O.C. #575625,** (also referred to as "Petitioner" herein), a person in custody under a state-court judgment, who submits this Memorandum in Support of his Petition for Writ of Habeas Corpus, seeking a determination that his custody violates the Constitution, laws, or treaties of the United States. Respondent Darrel Vannoy has custody of Petitioner by virtue of a Orleans Parish conviction and sentenced imposed by the Orleans Parish Criminal District Court, State of Louisiana.

**STATEMENT OF JURISDICTION**

The Federal Writ of Habeas Corpus is authorized by 28 U.S.C. § 2241. A person in custody in a State prison may seek relief by a Petitioner for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

## STATEMENT OF THE CASE

Petitioner was charged by grand jury indictment on October 1, 2009, along with co-defendant Michael Treaudo ("Mr. Treaudo"), with second degree murder of Mr. Arthur Brown a/k/a "Rat", a violation of La. R.S. 14:30.1. The Petitioner pleaded not guilty at his October 13, 2009 arraignment. **(See Appendix A, P. 1).** The trial court denied the Petitioner's motions to suppress the evidence and the identification on January 26, 2010. **(See Appendix A, P. 2).**

The defendant was tried by jury on September 26-28, 2011, and on September 28, 2011, was found guilty as charged. **(See Appendix A, P. 7).** October 14, 2011, the trial court denied the defendant's motion for post-verdict judgment of acquittal and sentenced him to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. **(Appendix A, P. 8).**

Petitioner sought a timely appeal to the Fourth Circuit, Court of Appeal, **(See Appendix C-1, P. 11)**, and the Court of Appeal affirmed Petitioner's conviction and sentence. ***State* v. *Allen*,** 129 So.3d 724 (La. App. 4th Cir. 11/20/13) **(See Appendix C-2, P. 30).** Petitioner filed Application for Certiorari in the Louisiana Supreme Court on December 4, 2013, **(See Appendix C-3, P. 40)**, and the Louisiana Supreme Court denied certiorari on May 30, 2014. ***State* v. *Allen*,** 140 So.3d 1174 (La. 2014)**(See Appendix C-4, P. 58).**

Petitioner filed an application for PCR into the Criminal District Court, Parish of Orleans, for the State of Louisiana on the date of May 28, 2015. **(See Appendix D, P. 59).**

On the date of August 24, 2018, Petitioner received legal mail dated May 9, 2018, **(See Appendix F-2, P. 102)**, denying Petitioner's Post Conviction Relief Application. **(See Appendix F-1, P. 101).**

Petitioner filed Notice of intent to seek writs. **(See Appendix G-1, P. 105).** On the date of

9/13/18, Petitioner filed an Application for Remedial and Supervisory Writs, and/or Review. **(See Appendix G-2, P. 108).** On 12/14/18, the Court of Appeal, Fourth Circuit denied relief. **(See Appendix G-3, Pp. 131-32).** Petitioner filed certiorari in the Louisiana Supreme Court and on the date of September 24, 2019, the Louisiana Supreme Court denied relief. **(See Appendix G-4, P. 133-34).**

Petitioner now seeks relief by way of 28 U.S.C. 2254 *habeas corpus.*

**TIMELINESS AND EQUITABLE TOLLING**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner must file his § 2254 petition within one year from the date that his conviction became final by the conclusion of direct review or the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A); ***Jimenez v. Quarterman***, 129 S.Ct. 681, 685-86, 172 L.Ed.2d 475 (2009) (explaining the rules for calculating the one-year period under § 2244(d)(1)(A)).

Appellate counsel filed a timely appeal brief from the conviction and sentence on September 11, 2012. **(See Appendix C-1, P. 11).** Petitioner's conviction and sentence was affirmed on November 20, 2013. **(Appendix C-2, P. 30).** Petitioner timely filed for Writ Certiorari and/or Review to the Louisiana Supreme Court (See **Appendix C-3, P. 40**), which was denied May 30, 2014. **(See Appendix C-4, P. 58).** Petitioner's one year time limit to get into the federal court did not start to run until 90 days after the Louisiana Supreme Court denied certiorari. See ***Wilson v. Cain***, 564 F.3d 702, 706 (5th Cir. 4/1/2009); ***Foreman v. Dretke***, 383 F.3d 336, 338 (5th Cir. 2004); Supreme Court Rule 13; 28 U.S.C.A. § 2244(d)(1)(A). Petitioner's one year time limit to get into the federal court did not start to run until Aug 28, 2014.

On the date of May 28, 2015, Petitioner submitted an application for Post Conviction

Relief, ("PCR"), and Memorandum in Support. **(See Appendix D, P. 59).** At this time, the properly filed PCR stopped Petitioner's time limit from running. ***Dixon v. Cain***, 316 F.3d 553, 554-55 (5th Cir. 2003); *see also* 28 U.S.C. § 2244(d)(2). Petitioner lost 273 days of his 365 days to get into federal district court. Petitioner had 92 days remaining on his one year federal time.

**EXTRAORDINARY CIRCUMSTANCES:**

After Petitioner filed his May 28, 2015 PCR, he requested a "status check". **(See Appendix E-1, P. 93).** After receiving no answer, Petitioner requested a number of status checks. **(See Appendix E-2 to E-8, Pp. 94 to 100).** Petitioner sent a copy of his May 28, 2015 PCR with one of the status check request. However, the district court mistakenly interpreted this copy as a second and/or successive filing.

The Court, on May 9, 2018, stated:

> The Petitioner has filed a second post-conviction relief application with the court. After reviewing the evidence and considering the law, however, the defendant's application is repetitive. **This court denied defendant's identical post-conviction relief application on May 28, 2015.** As such, Petitioner's post-conviction relief application is DENIED in its entirety.

**(See Appendix F-1, P. 101).**

Petitioner did not file a second application for PCR, but instead, sent his initial PCR in as proof of filing, along with his request for a "Status Check". However, the Criminal District Court for the Parish of Orleans mistakenly ruled on his "Status Check" as a second or successive Post Conviction Relief. **(See Appendix F-1, P. 101).**

Not only is the district court's interpretation of his Status Check, as a second or successive filing, a mistake, but Petitioner did not receive knowledge of a denial of his May 28, 2015 PCR until August 24, 2018. **(See Appendix F-2, P. 102).** Petitioner obtained a list of when he received legal mail, and it shows that Petitioner did not receive the district court's denial of the

May 28, 2015 PCR during the year of 2015. **(See Appendix F-3, Pp. 103-04).**

Petitioner filed Notice of intent to seek writs. **(See Appendix G-1, P. 105).** On the date of 9/13/18, Petitioner filed an Application for Remedial and Supervisory Writs, and/or Review. **(See Appendix G-2, P. 108).** On 12/14/18, the Court of Appeal, Fourth Circuit denied relief. **(See Appendix G-3, P. 131).**

Petitioner filed Certiorari in the Louisiana Supreme Court. On the date of September 24, 2019, the Supreme Court denied certiorari. **(See Appendix G-4, P. 133).**

In the instant case there exist extraordinary circumstances such as to warrant the application of equitable tolling, thus exempting petitioner's claim from dismissal under §2244(d)(1). A court can allow an untimely petition to proceed under the doctrine of equitable tolling "**<u>in extraordinary circumstances</u>**". ***Davis v. Johnson***, 158 F.3d 806, 810 (5th Cir.1998), *cert. denied*, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999); see also ***Fisher v. Johnson***, 174 F.3d 710, 713 (5th Cir.1999). The one-year limitation period is subject to equitable tolling but, only in "rare and exceptional cases." ***Davis v. Johnson***, supra, at 811; ***Fisher v. Johnson***, supra, (asserting that courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling". ***Davis v. Johnson***, supra, at 811. Also see ***United States v. Wynn***, 292 F.3d 226 (5th Cir. 5/31/02).

<u>*LEGAL AND FACTUAL MISTAKE:*</u>

The above shows that the district court made a legal and factual mistake. If record as a whole does not fairly support factual findings of state court, finding is not entitled to presumption of correctness on habeas corpus petition; if record does fairly support finding, presumption of correctness applies and petitioner must prove by clear and convincing evidence that the finding is erroneous. 28 U.S.C.A. § 2254(d). ***James v. Whitley***, *certiorari denied* 115

S.Ct. 1704, 514 U.S. 1069, 131 L.Ed.2d 565.

This Honorable Court may grant relief when a state court has misapplied a governing legal principle to a set of facts. *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (internal quotations omitted). Petitioner has met the burden of rebutting the presumption of correctness by clear and convincing evidence." *Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 845 (2010). **28 U.S.C.§2254(d)(2) and §2254(e)(1).**

***UNREASONABLE DELAY:***

Petitioner also submits that the trial judge or the clerk of court did not send Petitioner a timely copy of the ruling or order within 30 days of such order. The Honorable trial judge ruled on the application on May 9, 2018, and Petitioner did not receive a copy until August 24, 2018, here in Angola. **(See Proof of mailing from the Criminal District Court, Section "J", Appendix F-2, P. 102).** Mr. Michael Allen is not at fault since trial judge and/or the clerk of court failed to send a copy of his ruling within 30 days as required under La. C.Cr.P. art. 930.1. See ***State ex rel., Clarence Foy v. Criminal District Court***, 669 So.2d 393 (La. 3/15/96); ***State ex rel., Lonnie Bilbo v. State of Louisiana***, 825 So.2d 1154 (La. 9/20/02).

Furthermore, LSA-R.S. 13:910, states that the Clerk of Court is responsible for providing copies of such ruling signed by trial judge. The Orleans Criminal District Clerk of Court Office has failed in their duties as required by law in this matter.

Petitioner did not receive a ruling from the court when his PCR was denied and Petitioner's time lost was undeserving. Petitioner should not be punished or have to suffer consequences for the Clerk of Court and/or the District Court's Judge's mistake.

***PETITIONER FILED A NOTICE OF INTENT TO APPLY FOR WRIT APPLICATION AND REQUESTED THE COURT TO FIX A DATE FOR FILING, BUT THE COURT FAILED TO DO SO***

On September 13, 2018, Petitioner filed a timely notice of intent to apply for writs, into the Fourth Circuit, Court of Appeals. **(See Appendix G-1, P. 105).** Petitioner submit that the trial Court had not fixed or extended the time to seek application for supervisory writs and remedial writs or review to the Court of Appeal, Fourth Circuit. Here, Petitioner, Mr. Allen, is not at fault since, **1)** The district Court has made a legal and factual mistake by interpreting his request for a "Status Check" as a second or successive PCR filing; **2)** the District Court and the Clerk of Court failed to notify Petitioner of the denial of his PCR; and **3)** because Judge Daryl A. Derbigny, did not fixed a return date, when relator clearly filed his notice and his request to fix the time to file, on time, as required under Rule 4-2 and 4-3.

Considering the foregoing, Petitioner has shown extraordinary circumstances such as to warrant the application of equitable tolling thus exempting petitioner's claim from dismissal under § 2244(d)(1).

**ACTUAL INNOCENCE**

Petitioner contends that he is actually innocent. Petitioner did not kill Mr. Arthur (Rat) Brown. When Yolanda Merritt, who lived in the neighborhood where the shooting took place, was presented with photographic lineups containing Mr. Treaudo and Mr. Allen, she identified Mr. Treaudo, but not Mr. Allen. Also New Orleans Police Department Detective Kevin Burns testified that "no physical evidence connected Mr. Allen to the murder of Arthur "Rat" Brown."

Actual innocence serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, or expiration of the AEDPA statute of limitations. *McQuiggin v.*

*Perkins*, 569 U.S. ___ , 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013).

**STATEMENT OF THE FACTS**

The facts according to Petitioner's Counseled State Appeal Brief is as follows:

On June 7, 2009, Michael Treaudo borrowed Tasha Jones's teal Chevy Tahoe and told her he was going to pick up Michael Allen. (Transcript of trial, Sept. 28, 2011, pp. 33, 42). According to Mr. Treaudo's testimony, he did go pick up Mr. Allen. (09-28-11, P. 86). A short time later, the teal Tahoe pulled up outside Arthur Brown's residence. Nicole Jackson, Arthur Brown's girlfriend and the mother of his child, testified she went outside and saw the Tahoe and that Michael Treaudo (who was the only person she saw in the Tahoe) asked her where "Rat" (Arthur Brown's nickname) was. (09-27-11, pp. 36-7). She went inside and told "Rat" who was asking for him; and, "Rat" went outside. (09-27-11, p. 30). She never saw him again. When she went back outside, her son told her "Rat" left in the Tahoe. (09-27-11, p. 31).

Mr. Treaudo, who testified at Mr. Allen's trial after receiving a plea bargain for a manslaughter conviction and a seven-year sentence, told the jury he had a conversation with Mr. Allen the day before, in which Mr. Allen indicated he believed "Rat" had picked up two hundred dollars Mr. Allen dropped. (09-28-11, pp. 80, 83). He testified he and Mr. Allen picked "Rat" up to go to a friend of "Rat's" and buy some marijuana. (09-28-11, p. 86). The stop at the friend's house was fruitless. Mr. Treaudo testified the three went next to his uncle's house, who was not home. According to Mr. Treaudo, Mr. Allen then asked him to drive toward the East, so he could take some money to a girl. (09-28-11, p. 88). They drove to a neighborhood with only one way in or out, and went into the neighborhood. (09-28-11, p. 90). When they got to the point where Mr. Treaudo claimed Mr. Allen told him to stop, Mr. Treaudo was on the phone with his friend Latoria Carter. (09-28-11, pp. 89, 91). He testified he, Mr. Allen and "Rat" all got out of the Tahoe, as he told Latoria he would call her back. Then, according to Mr. Treaudo's testimony, he walked around the corner of the Tahoe to see Mr. Allen shoot "Rat" in the head. He ran back to get in the Tahoe, and heard four more shots. (09-28-11, p. 91). Arthure "Rat" Brown died of multiple gunshot wounds to the head. (09-28-11, pp. 7-15).

Yolanda Merritt, who lived in the neighborhood where the shooting took place, testified she saw a teal Chevy SUV drive past her house shortly after she heard sounds she took for gunshots. (09-27-11, pp. 49-50). She noticed the Chevy because the nature of the neighborhood was such that she was familiar with all the cars that frequented the neighborhood. (09-27-11, p. 50). When presented with photographic lineups containing Mr. Treaudo and Mr. Allen, she identified Mr. Treaudo, but not Mr. Allen. (09-27-11, pp. 55-6).

New Orleans Police Department Detective Kevin Burns testified no physical evidence connected Mr. Allen to the murder of Arthur "Rat" Brown. (09-

27-11, p. 109). Aside from Mr. Treaudo's self-serving testimony, no other testimony placed Mr. Allen with Mr. Treaudo that day with any degree of certainty. Ms. Jones testified Mr. Treaudo told her he was going to pick up Mr. Allen, but she could offer no insight into whether he actually did so. (09-28-11, p. 42). Lamyra Henry, the mother of another of Mr. Brown's children, testified she talked on the phone to Mr. Brown just minutes before his death, and he told her he was with "Son" (Mr. Treaudo) and "Mike." (09-28-11, p. 46). Though she admitted she knew more than one "Mike," it was her opinion "Mike" was Michael Allen. (09-28-11, pp. 50, 58). Latoria Carter, who was on the phone with Mr. Treaudo, did not hang up the phone when Mr. Treaudo told her he would call her back. She heard shots, and heard a voice she believed to be Mr. Treaudo's ask, "Man, what the f**k you did that for? but she could not identify the other voice she heard. (09-28-11, pp. 129-30).

**(See Appendix C-1, Pp. 1-4).**

**CLAIMS FOR RELIEF**

**1. THE STATE COURT'S DENIAL OF PETITIONER'S CLAIM THAT THE AFFIDAVIT SUBMITTED IN SUPPORT OF THE ARREST WARRANT IS CONSTITUTIONALLY INSUFFICIENT TO SUPPORT PROBABLE CAUSE TO ARREST HIM FOR SECOND DEGREE MURDER, RESULTED IN A DECISION THAT IS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES IN ILLINOIS V. GATES, 462 U.S. 213 (1983); DRAPER V. UNITED STATES, 358 U.S. 307 (1959); AND UNITED STATES V. HARRIS, 403 U.S. 573 (1971)**

**2. THE STATE COURT'S DENIAL OF PETITIONER'S CLAIM THAT THE IN-COURT AND OUT-OF-COURT IDENTIFICATION PROCEDURE USED BY POLICE CREATED A SUBSTANTIAL LIKELIHOOD OF MIS-IDENTIFICATION AND SHOULD HAVE BEEN INADMISSIBLE AT TRIAL BECAUSE IT WAS NOT SHOWN THAT THE PROCEDURE NEGATED EVERY REASONABLE PROBABILITY OF MIS-IDENTIFICATION, RESULTED IN A DECISION THAT IS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES IN MANSON V. BRATHWAITE, 432 U.S. 98 (1977)**

**3. THE STATE COURT'S DENIAL OF PETITIONER'S CLAIM THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BECAUSE HIS DEFENSE ATTORNEY FAILED TO PUT THE PROSECUTOR'S CASE THROUGH THE ADVERSARIAL PROCESS AS ENVISIONED BY THE SIXTH AMENDMENT OF THE CONSTITUTION AND THE RIGHT TO COUNSEL, RESULTED IN A DECISION THAT IS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES IN STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984)**

**STANDARD OF REVIEW**

28 U.S.C. § 2254 states, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

* * *

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonably application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id.

Under AEDPA, a habeas petitioner's entitlement to an evidentiary hearing when he has failed to develop the factual basis of a claim is restricted to the narrow exceptions of 28 U.S.C. § 2254(e)(2), which provides:
(2) If the applicant has failed to develop the factual basis of a claim in State court proceedinga, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that —

(A) the claim relies on —
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

See ***Clark v. Johnson***, 202 F.3d 760 (5th Cir. 2000); 28 U.S.C. § 2254(e)(2).

**ARGUMENT NO. 1**

**THE STATE COURT'S DENIAL OF PETITIONER'S CLAIM THAT THE AFFIDAVIT SUBMITTED IN SUPPORT OF THE ARREST WARRANT IS CONSTITUTIONALLY INSUFFICIENT TO SUPPORT PROBABLE CAUSE TO ARREST HIM FOR SECOND DEGREE MURDER, RESULTED IN A DECISION THAT IS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES IN ILLINOIS V. GATES, 462 U.S. 213 (1983); DRAPER V. UNITED STATES, 358 U.S. 307 (1959); AND UNITED STATES V. HARRIS, 403 U.S. 573 (1971)**

The Fourth Amendment of the United States Constitution and Article I, Section 5, of the Louisiana Constitution prohibit unreasonable searches and seizures and provide that a warrant may not be issued without probable cause. *e.g.*, ***Illinois v. Gates***, 462 U.S. 213, 103, S.Ct. 2317, 76 L.Ed.2d 527 (1983); ***Draper v. United States***, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327; 28 U.S.C.A. § 2254(d)(1); ***State v. Lumpkin***, 813 So.2d 640 (La. App. 1st Cir. 3/28/02). Both Federal and State Constitutions provide on the matter of unreasonable search and seizure, in pertinent part: "No warrants shall issue, but upon probable cause, support by oath or affirmation..."

In the instant case, Petitioner Allen argues that detective Kevin Burns, Jr., of the New Orleans Police Department's Homicide Division, arrest warrant affidavit contained no affirmative allegation that the witnesses he relied on demonstrated they spoke with any personal knowledge

of the crime, or the identity of the perpetrator, sufficiently to form a basis upon which a finding of probable cause could be made. Also, the affiant to the arrest warrant failed to indicate in his report, that his independent investigation produced any source's of information, which led him to believe that the information was reliable.

During the Motion to Suppress the Evidence and Identification hearing, detective Burns testified that the received information from a party whom was listed on the victim's cell phone as a favorite five, and that the victim left with an individual named Michael Treaudo. **(See Appendix H-2, P. 185, Lns 8 to 24).** That person further stated that Michael Treaudo was the driver of a teal blue Chevy Tahoe. A witness whom lived on the scene of the shooting on 5700 Red Maple, spoke with detective Burns the following day. She stated that she heard what she believed to be gunshots and that the gunshots came from inside the vehicle. The witness further stated that when she looked out of her window, she observed a blue green Chevy Tahoe. being driven by a black male small in size wearing a white t-shirt and talking on a cell phone. **(See Appendix H-2, P. 185, Lns 23 to 24) & (Appendix H-2, P. 198, Lns 16-21).** The detective then acknowledged that this was the same witness whom gave police the lead on the case the same day of the murder. **(See Appendix H-2, P. 198, Lns 25-27).** Detective Burns testified that he then showed this witness a photographic lineup which contained a picture of Michael Allen. However, the witness could not identify Allen as a person in the Chevy Tahoe. **(See Appendix H-2, P. 199, Lns 6-9).** Several witnesses testified at the suppression hearing including the owner of the Chevy Tahoe which was alleged to be involved in the murder. **(See Appendix H-2, Pp. 4-102).** None of those witnesses identified Michael Allen as being in the Chevy Tahoe before or during the murder of Arthur Brown.

Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and which he has reasonable and trustworthy information sufficient to justify a person of average caution in the belief that the accused has committed an offense. Petitioner Allen argues that detective Kevin Burns failed to establish any corroborating evidence to reasonably support his sources veracity, reliability or basis of knowledge to support his assertion to the magistrate judge the probable cause to arrest him existed. *e.g.*, *Illinois v. Gates*, supra; *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2L.Ed.2d, 1503 (1958); *Gibson v. State*, 758 So.2d 782 (La. 4/11/00). The Determination of probable cause, unlike the determination of guilt at trial, does not require the resolution of conflicting evidence required at trial. The evidence must support a reasonable belief that the person to be arrested has committed a crime. Cf. *Gerstien v. Pugh*, 420 U.S. 103, 95 S.Ct. 845, 43 L.Ed.2d 54 (1975); *State v. Rodrigue*, 437 So.2d 830 (La. 1983); *State v. Simms*, 571 So.2d 145 (La. 1990).

Petitioner Allen argues that he was arrested June 10, 2009. One day before his co-defendant Michael Treaudo. (See New Orleans Police Report, supplemental report no. F-08717-09, Pg. 1-2). Thus, Treaudo's confession after his arrest a day later than Allen's should be constitutionally insufficient to support probable cause. The Court's have held that admissions of criminal activity carry their own indicia of reliability sufficient to support a finding of probable cause. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *State v. Mena*, 399 So.2d 149 (La. 1981); *State v. Welsh*, 371 So.2d 1314 (La. 1979); *State v. Mena*, 344 So.2d 357 (La. 1976). The court have further held that where a person's confession to a crime, the confession and implication of another is deemed highly credible and more reliable and trust-worthy than previous statements disavowing any knowledge of the murder, because confessions

are statements against penal interest. See *Mena*, 399 So.2d at 152.

Petitioner Allen asserts that since he was arrested a day before Michael Treaudo made his confession to police implicating him as the shooter, detective Burns did not posses any facts and circumstances within his personal knowledge to justify a man of average caution in the belief that he has committed or is committing an offense to justify his arrest. Detective Burns did not possess Michael Treaudo's information before he sought the arrest warrant for Michael Allen, nor did any of the numerous witnesses provide him with any information indicating that Michael Allen was with Treaudo on the day of the murder. In passing on the validity of an arrest warrant a reviewing court may consider only the information brought to the magistrate judge's attention. In this case, the affidavit to the arrest warrant did not set forth the underlying circumstances necessary to enable the magistrate to independently judge the validity of the information provided by the witness to form the conclusion that Petitioner Allen committed the crime of murder and the affiant, detective Burns, has nothing in the affidavit to the arrest warrant to support the claim that the information he received from the witnesses in this matter was credible or reliable, so that the probative value of the report can be assessed by the magistrate on the information provided to him and whether the affiant had any independent knowledge from his investigation to support probable cause to arrest the Petitioner. Wherefore, Petitioner Allen asserts that this Court should find based upon the above facts and evidence that the police in this matter lacked constitutionally sufficient probable cause to arrest him.

## ARGUMENT NO. 2

**THE STATE COURT'S DENIAL OF PETITIONER'S CLAIM THAT THE IN-COURT AND OUT-OF-COURT IDENTIFICATION PROCEDURE USED BY POLICE CREATED A SUBSTANTIAL LIKELIHOOD OF MIS-IDENTIFICATION AND SHOULD HAVE BEEN INADMISSIBLE AT TRIAL BECAUSE IT WAS NOT SHOWN THAT THE PROCEDURE NEGATED EVERY REASONABLE PROBABILITY OF MIS-IDENTIFICATION, RESULTED IN A DECISION THAT IS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES IN MANSON V. BRATHWAITE, 432 U.S. 98 (1977)**

A line-up is unduly suggested if the procedure focuses attention on the defendant. *e.g.*, ***State v. Guillot***, 353 So.2d 1005 (La. 1977). A strict identity of characteristics is not required, but a sufficient resemblance to reasonably test the identification is necessary. *Id.* Even if the procedure used was suggestive, an identification will be admitted if, under the totality of the circumstances, the identification is found to be reliable. See ***State v. Johnson***, 759 So.2d 1052, *writ denied*, 00-1949 (La. 9/21/01), 797 So.2d 60.

Petitioner Allen contends that the identification of him as the person who shot Arthur Brown should have been ruled inadmissible as none of the witnesses relied on by police described him as the person whom they saw shoot Mr. Brown. In the instant case, State witness Yolanda Merritt testified that on Sunday morning, June 7, 2009, she heard what she believed to be gunshots. She then observed a teal colored SUV drive through her neighborhood in New Orleans East occupied by two Black males. **(Appendix H-2, Pp. 224-228)**. Witness Merritt testified that she was able to get a good look at the driver and the passenger of the SUV. She gave a description to police indicating the driver was a small built Black male, and the passenger was a bigger built guy. **(Appendix H-2, P. 229)**. Also, that the drive of the SUV was talking on a cell phone with his head turned toward the passenger. Witness Merritt then testified that she felt

something was strange about the vehicle and that she wrote down the last three digits of the license plate which was 709. She also testified that she noted the time, which she stated was 12:33 p.m., and the color and make of the SUV, teal and Chevy on her sticky tab note pad. **(Appendix H-1, Pp. 163-64).** Subsequently, members of the New Orleans Police Department met with witness Merritt to obtain any identification information on the two suspects. Witness Merritt was able to tentatively identify the driver of the SUV, but not the passenger. **(Appendix H-1, Pp. 166-171).** When a defendant claims that he is not the person who committed the crime, the rationale found in ***Manson v. Brathwaite***, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), should be used to determine the reliability of the identification. The factors to be considered are:

1. The opportunity of the witness to view the criminal at the time of the crime;
2. the witness's degree of attention;
3. the accuracy of his or her prior description of the criminal;
4. the level of certainty demonstrated at the confrontation; and
5. the length of the time between the crime and the confrontation.

Id. 28 U.S.C.A. § 2254(d)(1).

Petitioner Allen argues State witness Merritt, who lives on the scene of the crime, and observed the two occupants of the teal colored SUV failed to identify him as one of the occupiers she saw driving through her neighborhood Sunday, June 7, 2009. See ***State v. Powell***, 677 So.2d 1008 (La. App. 2d Cir. 4/12/96); ***State v. Chism***, 591 So.2d 385 (1991). Therefore her identification of him as a suspect in the murder should have been ruled inadmissible by the trial court. Additionally, another witness for the State, Nicole Jackson, testified that she and Arthur Brown lived together and that Brown is the father of her child. **(Appendix H-1, Pp. 136-139).** She stated that on June 7, 2009, at about 11:00 a.m., her son came inside and said: Mama, Mike

want Rat outside. She asked her son was it little Mike which is the nickname she knows Michael Treaudo goes by. **(Appendix H-1, P. 140).** Her son replied yes, and she told Rat who it was looking for him. Five minutes later, her son came back inside and told her Mama, they have a girl outside that was Ray. At that point witness Jackson went outside to see who the girl was. The girl stated something about a cell phone she and Rat shared. After she and the girl finished speaking she turned to go back inside to tell Rat what the girl said when little Michael Treaudo leaned up in his vehicle and asked Man Nicki, where Rat at **(Appendix H-1, at P. 141).** Witness Jackson testified that she then went inside and told Rat that Mike was outside and Rat went outside to see what the girl wanted. When Rat came back in the house, he started toward the room where witness Jackson was to say something, stopped, through his hands up like, fuck it, and turned around and left. She stated that she didn't see him (Rat) anymore after that.

Witness Jackson further testified that the way her hours is positioned she was able to see the driver's side of the SUV. After Rat left the house, witness Jackson stated she went outside to see where he went. She was informed by some people that he go into a car. Later on that day Jackson's son came running into the house saying "Mom they got the man calling on the phone saying Rat got shot." Rat's sister also called Rat's phone where a man answered and informed her that the person who owns the phone is dead. **(Appendix H-1, P. 143).** She asked the man to describe the person and what he had on. Once the man did so, she threw the phone down and started hollering. Later that day she met with a detective at her house who showed her a photographic lineup. Witness Jackson stated at trial she was able to identify a person in the photo lineup. The person she identified as being in the driver's seat of the car which Arthur Brown left her house in was Michael Treaudo. **(Appendix H-1, at. P. 144).**

During the cross-examination of witness Jackson by the defense Jackson testified that when she first went outside at 11:00 a.m., she didn't see anyone in the blue SUV. It was when she was going back inside that Michael Treaudo called her name and she looked back and noticed him in the driver's seat of the vehicle. **(Appendix H-1, P. 147-48).** Witness Jackson further stated that she didn't see Michael Allen in the SUV on June 7, 2009 when Rat got into the vehicle and left her house. **(Appendix H-1, P. 148).** As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. Petitioner Allen contends that the in-court identification of him by the witnesses for the State should be excluded as evidence, as the witnesses made no previous identification at any line-up conducted by police prior to his trial. Cf. ***U.S. v. Wade***, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d (1967); ***Neil v. Biggers***, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. 2d 401 (1972). The record does not reflect that the identification of Petitioner Allen came from an independent source. It appears that police depended on a previous crime in which Petitioner was alleged to be involved in 2004 that led them to concluded he was the shooter in the instant matter. See Transcript of Prieur Motion; ***State of Louisiana v. Michael Allen***, No. 499-990, Criminal District Court, Parish of Orleans (2012).

Petitioner Allen asserts that it was not proven that he was the shooter of Arthur Brown on June 7, 2009, and gives these items for consideration:

1. Witness Merritt's inability to describe him as the person whom was sitting in the passenger seat of teal colored SUV when it drove by her New Orleans East neighborhood on June 7, 2009.
2. The witness's attention seemed to be focused on the driver of the SUV and the fact that it was a strange vehicle in her neighborhood.
3. The witness failed to give a prior description of him to police.

4. The witnesses admitted at trial that they could not identify the passenger in the SUV.
5. The length of time between the crime and the confrontation did not affect the witnesses' inability to identify him as the person in the passenger seat of the SUV.

The association of the driver and passenger with the SUV and the crime was established by means not directly bearing on whether Petitioner Allen was the person seen with Michael Treaudo when he, Treaudo, allegedly picked up Arthur Brown in front of Nicole Jackson's residence and subsequently drove to New Orleans East where Mr. Brown was ultimately murdered. Therefore, the identification of Petitioner Allen by the State's witnesses in the photographic lineup, and subsequently in court, should have been ruled insufficient and ultimately inadmissible, as the identification evidence offered by the State to the jury failed to negate every reasonable probability of misidentification.

**ARGUMENT NO. 3**

**THE STATE COURT'S DENIAL OF PETITIONER'S CLAIM THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BECAUSE HIS DEFENSE ATTORNEY FAILED TO PUT THE PROSECUTOR'S CASE THROUGH THE ADVERSARIAL PROCESS AS ENVISIONED BY THE SIXTH AMENDMENT OF THE CONSTITUTION AND THE RIGHT TO COUNSEL, RESULTED IN A DECISION THAT IS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES IN STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984)**

Petitioner contends that his trial counsel rendered ineffective assistance when he failed to investigate the circumstances of his case prior to trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 764 (1984). Therefore, Petitioner is the victim of systematic ineffective assistance of counsel as set forth in The Assessment Of Trial Level Defense Services In Louisiana 40 Years After *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which held that: Every person accused of a crime, whether state or federal is entitled to a

lawyer at trial. **(See Appendix I, P. 282).**

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. ***McMann v. Richards***, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. ***Strickland v. Washington***, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 764 (1984). A conviction defendant's claim that counsel's assistance was so defective as to require reversal of the conviction requires that the defendant show, first that counsel's performance was deficient and second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. ***Strickland***, supra. In the instant case, Petitioner Allen contends that his defense counsel failed to effectively challenge the information received by investigating officer Kevin Burns as to the truth of the identity of the passenger and the shooter as provided by the witnesses police interviewed. Allen argues that the information detective Burns included in his report shows the inability of any of the witnesses whom were questioned by police to identify him as the passenger or the shooter on the day of the murder.

Defense counsel had access to this information prior to Allen's trial. Therefore, he should have been prepared to attack the police investigation more thoroughly. At trial, defense counsel's questioning of the State's witnesses revealed that those witnesses' merely identified Michael Allen and Michael Treaudo, instead of whether they observed them commit crime. Under the totality of the circumstances, the identification evidence should not have been admissible at Petitioner Allen's trial. **(Appendix H-1, Pp. 172-180).** If there is only one plausible line of defense, counsel should conduct a reasonably substantial investigation into that line of defense.

Cf. ***Rummel v. Estelle***, 590 F.2d 103 (5th Cir. 1979). In this case, the only question was the identity of the shooter. Thus, counsel should have focused on the key issue of whether anyone could identify his client as the shooter rather than whether the crime was committed.

Generally, the issue of ineffective assistance of counsel is matter more properly addressed in an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. See ***State v. Prudholm***, 483 So.2d 729 (La. 1984); ***State v. Johnson***, 557 So.2d 1030 (La. App. 4th Cir. 1990); ***State v. Reed***, 483 So.2d 1278 (La. App. Cir. 1986). Allen argues that he was prejudiced by his defense counsel's performance before the jury as counsel's focus was not on the key issue of the prosecutor's case, which was the identity of the shooter. Allen asserts that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. ***Strickland***, supra, 466 U.S. at 693, 104 S.Ct. at 2068; ***State v. Sparrows***, 612 So.2d 191 (La.App. 4th Cir. 1992).

As a result, Petitioner was deprived of his constitutionally guaranteed right to have effective assistance of counsel at his trial.

What's interesting, is in order to complete the record, the Court should find that it is appropriate to order an evidentiary hearing as to Petitioner claims ineffective assistance of counsel. To be sure, a statement from Petitioner's prior attorney appears to be mandated by the June 23, 2005, judgment of the Second Circuit, Court of Appeal in ***State of Louisiana v. Lester Moody***, No. 40345-KH. In this case, the Court of Appeal granted the defendant's writ taken after the trial court summarily denied his application for post-conviction relief, the court stated:

> "Ineffective assistance claims asserting omissions by counsel can rarely be ruled on without additional information, and ordinarily would require a response from the former counsel."

The Court further stated: the defendant's former counsel must file his response into the record and the response should be served on defendant and the state's attorney, with the court given a courtesy copy of the response. The state and the defendant should be given 30 days to file further responses.

Finally, it has become increasingly clear that this Court should order a hearing whenever there are question of facts which cannot be properly resolved from the record. For all the reasons stated above, Petitioner's conviction and sentence must be reversed.

REQUEST FOR SUBPOENAS OF WITNESSES WHOM COULD TESTIFY TO THE TRUTH OF THE ALLEGATION SUBMITTED IN PETITIONER'S POST CONVICTION RELIEF APPLICATION, PLEASE ISSUE SUBPOENAS AD TESTIFICANDUM

Representatives of:

The National Legal Aid & Defender Association
1140 Connecticut Avenue, NW Suite 900
Washington, DC 20036

The National Association of Criminal Defense Lawyers
1150 18th Street, NW Suite 950
Washington, DC 20036

It bare repeating: Petitioner adopt pages: 12, 13, 14, and 15 for review as to his ineffective assistance of counsel claims, and the argument in the original application for post-conviction relief on the merits presented herein.

Hence, for readily apparent reasons, the trial judge attempted to circumvent Petitioner's properly filed post-conviction relief claims with an unattainable process.

To avoid a miscarriage of justice, this Court must examine the constitutional issues presented herein. In view of the foregoing facts and law plead by Michael Allen, in his Application and Memorandum, it is clear that the state trial court abused its discretion, and

committed legal error, without ordering an evidentiary hearing or other relief as justice requires.

Accordingly, this Honorable Court should grant his writ application, granting the relief it deems necessary and just.

## CONCLUSION

Considering the foregoing, Petitioner prays that the petition for habeas relief be granted and judgment entered in favor of the petitioner and against the State.

Petitioner further prays that this Honorable Court order that the State either retry the petitioner within 180 days or dismiss the charges.

Respectfully submitted by:

Michael Allen 575625

Michael Allen #575625, Pro-se
Camp-D, Raven 3/Right
Louisiana State Penitentiary
Angola, La. 70712

**PLEASE SERVE:**

Leon A. Cannizzaro, Jr.
District Attorney
619 South White Street
New Orleans, Louisiana 70119

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MICHAEL ALLEN,**
*Petitioner,*

**vs**

**DARREL VANNOY, Warden,**
**Louisiana State Penitentiary**
*Respondent*

**Docket No:**________________

**Section:**________________

**Mag. Judge:**________________

**Judge:**________________

* * * * * * * * * * * * * * * * * * * * * * *

**CERTIFICATE OF SERVICE**

I am an inmate confined in an institution. Today, __________________, 2019, I am depositing the § 2254 Petition For Writ Of Habeas Corpus, Application to Proceed In Forma Pauperis, and Memorandum in Support of Habeas Corpus, in this case in the institution's internal mail system, First-class postage is being prepaid either by me or by the institution on my behalf, and mailed to: The Leon A. Cannizzaro, Jr., District Attorney, 619 South White Street, New Orleans, Louisiana 70119.

I declare under penalty of perjury that the forgoing is true and correct (see 28 U.S.C. § 1746; 18 U.S.C. § 1621).

Michael Allen 575625

Michael Allen #575625

Signed on 12-2, 2019.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

**1.**

**[X] this document contains 7,444 words, or**

**[ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text.).**

**2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:**

**[X] this document has been prepared in a proportionally spaced typeface using Open Office/Libre Office in 12 font, Times New New Roman,**

**or**

**[ ] this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type*].**

(s) Michale allen 575625

**Michael Allen #575625**

**Dated: ______________________________**

**(Added Apr. 29, 2002, eff. Dec. 1, 2002; amended Apr. 28, 2016, eff. Dec. 1, 2016, absent contrary Congressional action.)**