**\*724  129 So.3d 724**

2012-1118 La.App. 4 Cir. 11/20/13

Court of Appeal of Louisiana,
Fourth Circuit.

STATE of Louisiana
v.
Michael ALLEN.

No. 2012-KA-1118.
Nov. 20, 2013.

**Background:**  Defendant was convicted in the Criminal District Court, Orleans Parish, No. 490-990, Darryl A. Derbigny, J., of second-degree murder. Defendant appealed.

**Holdings:**  The Court of Appeal, James F. McKay, III, C.J., held that:

(1) evidence was sufficient to support verdict that defendant was perpetrator of shooting;

(2) evidence that defendant was involved in prior drive-by shooting, directed at person who five years later was victim of fatal shooting, was admissible to establish defendant's identity as the individual who shot and killed victim; and

(3) any error in trial court's exclusion of evidence that third party had prior gun-related arrest or conviction was harmless error.

Affirmed.

**West Headnotes**

**[1]**  Sentencing and Punishment ⚖️353

350H ----
    350HII Sentencing Proceedings in General
350HII(G) Hearing
350Hk350 Advice and Warnings
350Hk353 Advice as to post-conviction or other collateral relief.

Criminal procedure article providing for trial court to inform defendant, at time of sentencing, of prescriptive period for post-conviction relief, is suppletory language that does not bestow an enforceable right in favor of an individual defendant. LSA-C.Cr.P. art. 930.8(C).

**[2]**  Homicide ⚖️1178

203 ----
    203IX Evidence
203IX(G) Weight and Sufficiency
203k1176 Commission of or Participation in Act by Accused;  Identity
203k1178 Testimony of co-perpetrator.

[See headnote text below]

**[2]**  Homicide ⚖️1184

203 ----
    203IX Evidence
203IX(G) Weight and Sufficiency
203k1176 Commission of or Participation in Act by Accused;  Identity

203k1184   Miscellaneous   particular circumstances.

Evidence was sufficient to support verdict that defendant was perpetrator of shooting, as would support conviction for second-degree murder; accomplice testified that defendant stated he shot victim because victim had picked up 200 dollars that defendant had dropped, witness testified that on day of shooting she had loaned her vehicle to accomplice and that defendant was the person whom accomplice told witness he was going to pick up that day, and witness testified that accomplice and victim grew up together. LSA-R.S. 14:30.1(1).

**[3]**  Criminal Law ⚖️373.12

110 ----
    110XVII Evidence
110XVII(F) Other Misconduct by Accused
110XVII(F)12 Nature and Circumstances of Other Misconduct Affecting Admissibility
110k373.7 Similarity to Crime Charged
110k373.12 Other particular offenses.

[See headnote text below]

**[3]**  Criminal Law ⚖️373.14

110 ----
    110XVII Evidence
110XVII(F) Other Misconduct by Accused
110XVII(F)12 Nature and Circumstances of Other Misconduct Affecting Admissibility
110k373.7 Similarity to Crime Charged
110k373.14 Same or identical victims.

Evidence that defendant was involved in prior drive-by shooting, directed at person who five years later was victim of fatal shooting, was admissible to establish defendant's identity as the individual who shot and killed victim; crimes were similar violent crimes and shared same victim. LSA-C.E. art. 404(B)(1).

**[4]**  Criminal Law ⚖️1170(1)

110 ----
    110XXIV Review
110XXIV(Q) Harmless and Reversible Error
110k1170 Exclusion of Evidence
110k1170(1) In general.

Any error in trial court's exclusion of evidence that third party had prior gun-related arrest or conviction was harmless error, in murder prosecution in which defendant alleged that third party was possible co-perpetrator of fatal shooting along with accomplice; jury clearly believed accomplice's testimony that defendant shot and killed the victim.

**[5]**  Criminal Law ⚖️338(1)

110 ----
    110XVII Evidence
110XVII(D) Facts in Issue and Relevance
110k338 Relevancy in General
110k338(1) In general.

[See headnote text below]

**[5]**  Criminal Law ⚖️338(7)

110 ----

Appendix "C-2"
30

© 2018 Thomson Reuters. No claim to original U.S. Govt. works.

110XVII Evidence
110XVII(D) Facts in Issue and Relevance
110k338 Relevancy in General
110k338(7) Evidence calculated to create prejudice against or sympathy for accused.

The right to present a defense does not require a trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. U.S.C.A. Const.Amend. 6.

**\*725** Leon A. Cannizzaro, Jr., District Attorney, Matthew C. Kirkham, Assistant District Attorney, Parish of Orleans, New Orleans, Louisiana, for State of Louisiana.

Peggy J. Sullivan, Louisiana Appellate Project, Monroe, Louisiana, for Defendant/Appellant.

(Court composed of Chief Judge JAMES F. McKAY III, Judge TERRI F. LOVE, Judge JOY COSSICH LOBRANO).

JAMES F. McKAY, III, Chief Judge.

Michael Allen ("defendant") was convicted of the second degree murder of Arthur Brown ("Mr. Brown"). Finding no patent errors or merit to any of the defendant's assignments of error, we affirm the defendant's conviction and sentence.

**STATEMENT OF THE CASE**

The defendant was charged by grand jury indictment on October 1, 2009, along with codefendant Michael Treaudo ("Mr. Treaudo"), (FN1) with second degree murder of **\*726** Mr. Brown a/k/a "Rat or Rat Rat", a violation of La. R.S. 14:30.1. (FN2) The defendant pleaded not guilty at his October 13, 2009 arraignment. The trial court denied the defendant's motions to suppress the evidence and the identification on January 26, 2010. The trial court granted the State's *Prieur* (FN3) motion on August 18, 2011.

The defendant was tried by a twelve-person jury on September 26-28, 2011, and found guilty as charged. On October 14, 2011, the trial court denied the defendant's motion for post-verdict judgment of acquittal and sentenced him to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.

**FACTS**

Nicole Jackson testified at trial that Mr. Brown was the father of her child. They were living together on June 7, 2009. On that morning, the couple's son came inside around 11:00 a.m. to tell her that "Little Mike" (FN4) wanted to see "Rat," who was taking a shower. Ms. Jackson testified that she did not like "Little Mike." Approximately five minutes later their son came back inside and said a girl outside wanted to see "Rat." Ms. Jackson went outside to see an SUV parked on the opposite side of the street. She told the girl that "Rat" was in the shower, and the girl said something about a cell phone. As Ms. Jackson turned to go back inside, she said Mr. Treaudo leaned up in the driver's seat and asked her where "Rat" was. She turned around and told him that "Rat" was in the shower. She returned inside and told "Rat" that Mr. Treaudo was outside. "Rat" went outside and came back in. He was

coming in the room to say something, but he stopped in the middle of the room, threw his hands up, said "F--k it," and turned around and walked back out. She never saw him alive again.

At some point, Ms. Jackson's son ran inside saying that someone had said that "Rat" had been shot. "Rat's" sister called about that time, telling her that someone had called her saying that "Rat" had been shot. Ms. Jackson called "Rat's" cell phone, and a male answered. He told her an individual was dead, and she ascertained by a description of the individual's tattoos and clothing that it was "Rat." A detective subsequently met with her and showed her a photo lineup in which she identified Mr. Treaudo. Ms. Jackson said Mr. Treaudo and Mr. Brown grew up together. She claimed that she did not know the defendant.

Ms. Jackson confirmed on cross examination that she had seen Mr. Treaudo in a blue SUV, in the driver's seat, and that he had asked for "Rat" to come outside. She testified that she did not see the defendant that day.

Yolanda Merritt ("Ms. Merritt") testified that she lived on New Hampshire Street in eastern New Orleans, in the Maple Ridge **\*727** subdivision, and that she had resided in that subdivision since the late 1980's. She was home on June 7, 2009, a Sunday, with her mother, when she heard what sounded like gunshots. She looked out a window and saw a teal-colored Chevy SUV, with tinted windows, occupied by two black males. The vehicle was proceeding at a normal speed coming from the direction of Red Maple Drive and onto New Hampshire Street. She wrote down on a small "sticky note" the last three digits of the license plate "7-0-9," the make ("Chevy") and color ("teal") of the SUV, and the time, 12:33 p.m. The NOPD incident recall reflected that the 911 call was initiated at 12:35 p.m. She identified a pack of small, rectangular sticky notes introduced in evidence, with the top note being the one on which she had written that information.

Ms. Merritt described the driver as a "small built" young black male, with dreadlocks, wearing a white T-shirt, and the passenger as a bigger, stockier, male. The driver was on a cell phone and had his head turned toward the passenger, while the passenger was looking straight ahead. A minute or two later she heard screaming. She recalled a neighbor coming toward her home screaming that someone had been shot. She called 911 and reported the vehicle and occupants she had seen. The police talked to her that day; a couple of days later she was shown two photo lineups, State Exhibits 13 and 14. In S-13 she identified photo number one as depicting the driver of the teal Chevy SUV. The SUV had driven past her home with the driver's side facing her home. She could not identify anyone in the S-14 photo lineup. Ms. Merritt replied in the affirmative when asked on cross examination whether she had gotten a look at the passenger in the teal Chevy SUV, but was unable to identify anyone.

New Orleans Police Department ("NOPD") 911 operator Yolanda Haynes ("Ms. Haynes") identified a 2009-911 incident recall and audiotape under NOPD item number F-8717-09. She verified that the caller identified herself as Ms. Merritt. Ms. Haynes confirmed that the incident recall reported that the vehicle involved was a blue Chevy SUV with a partial license plate number of "7-0-9," occupied by two dark-

compleeted black male with dreadlocks.   She also testified that the incident recall contained a dispatch at 12:36 p.m. of a truck occupied by several males; a notification of a unit responding to a dispatch, giving a location at 13031 New Hampshire Street; a dispatch from a citizen calling from 5210 Red Maple Drive; and a dispatch with a description of the victim and describing the perpetrators as two black males driving a Chevy, with a partial license plate number "7-0-9."

NOPD Homicide Detective Richard Chambers testified that he responded to a homicide call on June 7, 2009, to Red Maple Drive.   Detective Chambers identified a number of crime scene photographs.   No spent cartridge casings were found at the scene.   He opined that the lack of cartridge casings indicated that either a firearm that did not eject spent cartridge casings--like a revolver-type firearm--was used in the shooting, or that the shooting did not occur in that area. Collected as evidence at the scene were a Samsung green T-Mobile flip cell phone; a white Walgreens bottle cap; one "sporting waves" container lid; and one spent projectile recovered when Mr. Brown's body was removed.

Detective Chambers confirmed that he was not the lead detective in the case.   He did not talk to any witnesses.   His duties were to view the scene and direct the crime lab to retrieve evidence.

*728 NOPD Homicide Detective Kevin Burns was the lead detective in the homicide investigation.   At the scene, Detective Burns inspected Mr. Brown's cell phone and found various names listed therein.

One name in Mr. Brown's cell phone was, Lamyra Henry ("Ms. Henry"), who also had a child with Mr. Brown.   The cell phone call log reflected that Mr. Brown called Ms. Henry at 12:05 p.m., which was a missed call, and then called her again at 12:07 p.m., when Mr. Brown talked to Ms. Henry for ten minutes and three seconds. After speaking with Ms. Henry, Detective Burns ascertained that the victim was alive at 12:17 p.m., and that he had been killed at approximately 12:33 p.m.

Another name in the cell phone was that of Ms. Jackson.   Pursuant to the conversation with Ms. Jackson, Detective Burns was able to confirm Mr. Brown's identity.   He also learned that Mr. Brown left his residence with Mr. Treaudo.   At some point during the investigation, Detective Burns learned from Ms. Jackson that the owner of the vehicle involved in the incident was Tasha Jones ("Ms. Jones"), who resided around the corner from Ms. Jackson.

Detective Burns went to Ms. Jones' residence.   She described her vehicle to him.   It was not at the location.   He said nothing about the homicide, but asked her to whom she had lent her vehicle.   Ms. Jones telephoned the driver of her vehicle, Mr. Treaudo, using the speakerphone feature, thus permitting Detective Burns to hear the conversation between Ms. Jones and Mr. Treaudo.   Ms. Jones asked the detective to take her to her vehicle after Mr. Treaudo advised her where it was located.   The vehicle was located at Alix and LeBouef Streets in Algiers, which is approximately one and one-half blocks from the residence of Mr. Treaudo's sister.   After determining that the vehicle was unoccupied, Detective Burns had it towed to the evidence cage at NOPD headquarters.   He also had Ms. Jones transported to the homicide office to give a statement.

That same day, Detective Burns learned of the defendant Michael Allen.   He compiled photo lineups and returned to Ms. Jackson's residence.   Ms. Jackson identified Mr. Treaudo as the individual who picked up the victim on the day he was murdered.   She could not identify anyone in a second lineup.

During the course of the investigation, Detective Burns showed Ms. Henry separate photo lineups in which she picked out both defendant and Mr. Allen, respectively.   Ms. Henry knew both men by their given names and by nicknames, "Sun" for Mr. Treaudo and "Mike" for the defendant. (FN5) Detective Burns also met with Ms. Henry the day after the murder and displayed two photo lineups to her.   She identified only Mr. Treaudo in one lineup.

A white T-shirt was seized from Mr. Treaudo's residence.   No fingerprints taken from the car matched defendant, Mr. Treaudo, or the victim.   Detective Burns testified that he arrested Mr. Treaudo on June 11, 2009.   When he advised Mr. Treaudo of his rights, Mr. Treaudo waived them and gave a statement.   The detective identified State Exhibit 29 as an audiotape of that statement.

Detective Burns confirmed on cross examination that on the day of the killing Ms. Henry never saw the defendant, Mr. Treaudo, or the victim.   However, the victim told Ms. Henry on the phone that he *729 was with "Sun" and "Mike" shortly before his death, and the victim continued to talk to Ms. Henry until 12:17 p.m., approximately sixteen minutes before he was shot and killed.   Detective Burns confirmed that a pair of Timberland boots was seized during the investigation because he received information that the defendant had worn Timberland boots during the murder.   He said the defendant was wearing a pair of boots when arrested that had a red substance on them, and that another pair of boots was seized from his residence; neither pair of boots had blood or human DNA on it. No evidence was retrieved from the white T-shirt recovered as evidence from the defendant's residence. Detective Burns testified that fingerprints found on and in Ms. Jones' teal-colored Chevrolet Tahoe were matched to some individuals; those individuals were never developed as suspects.   The detective confirmed that there was no physical evidence connecting the defendant to the murder.   Detective Burns confirmed that Ms. Merritt was the only witness on the scene, in the area where the murder occurred.

NOPD Sergeant Nicholas Gernon, then a homicide detective, participated in the arrest of Mr. Treaudo on June 11, 2009.   Mr. Treaudo was lying on a couch when found in a residence at 3630 Frenchmen Street. Detective Gernon lifted up the couch cushions and discovered a .45 caliber High Point semi-automatic pistol, along with a bottle of cleaning oil and a cell phone.   The leaseholder of the residence indicated that she did not know where the gun came from, nor was she aware it was there.

The State and the defense stipulated that Kenneth Leary was qualified as an expert in firearms and ballistics; that he examined the firearm recovered from the residence where Mr. Treaudo was arrested; that he examined the bullet fragments recovered from the scene and the body of the victim; that one of the bullet fragments recovered from the scene was consistent with the .38 caliber class of ammunition; that two of the other fragments recovered exhibited rifling

© 2018 Thomson Reuters. No claim to original U.S. Govt. works.

32

characteristics similar to those on the fragment identified as consistent with the .38 caliber class of ammunition; and that the firearm recovered at the time of Mr. Treaudo's arrest did not fire any of the bullets, fragments of which were found at the scene and in the body of the victim.

Cynthia Gardner, M.D., qualified by stipulation as an expert in the field of forensic pathology, testified that she performed an autopsy on Mr. Brown at the Orleans Parish Coroner's Office. Toxicology testing on a sample of Mr. Brown's blood revealed a metabolite of the prescription drug Valium, what she described as a slight central nervous system depressant. Mr. Brown sustained five gunshot wounds to the head/face, with three bullets exiting and two being retained. He also had one gunshot wound to the left shoulder that exited and one gunshot wound to the left hand that also exited. Two of the five gunshot wounds to the face were fired from a distance of no farther than two feet away. Dr. Gardener identified two bullets she recovered from Mr. Brown's head and a bullet that was present in the t-shirt.

NOPD Homicide Detective Robert Long assisted Detective Burns on the night of the killing, June 7, 2009. He transported Ms. Jones, the owner of the vehicle involved, to the homicide office, where he and his partner, Homicide Detective Michael McCleery (FN6), interviewed her and presented her with two photo lineups. He identified the two lineups he presented to Ms. Jones. She identified a photo in State *730 Exhibit 37 as being Mr. Treaudo and a photo in State Exhibit 38 as being defendant. Detective Long replied in the affirmative when asked whether Ms. Jones told him why she selected the individuals in the lineups. Detective Long stated on cross examination that the basis of the interview was to determine to whom Ms. Jones might have loaned her vehicle. Detective Long said that to his knowledge she did not witness the killing. He replied in the negative when asked whether, as far he knew, Ms. Jones had any idea who was inside of her vehicle at the time of the murder or even immediately prior to the murder.

Detective Long testified on redirect examination that Ms. Jones identified Mr. Treaudo as the person to whom she loaned her vehicle and the defendant as the person Mr. Treaudo was going to pick up.

Ms. Jones testified at trial that she had a prior conviction in 1995 for possession of stolen property and one in 2009 for attempted theft, which was a reduced charge. She stated that she was not testifying because she received a reduced charge in the 2009 case but that she was testifying because the state called her; she did not really want to be there. She identified a photo of the back of her 2007 Chevy Tahoe, license plate number "RFP 709." Ms. Jones testified that she met Mr. Treaudo through the defendant about a year prior to the homicide. She knew the defendant as "Stank" and also by "Big Mike." She knew Mr. Treaudo as "Little Mike." Ms. Jones used to see Mr. Treaudo and the defendant together all the time. She had loaned her Tahoe to Mr. Treaudo on June 6, 2009, telling him to have it back by 11:00 p.m., as she was planning on going out in it. However, she fell asleep, not awakening until the next morning, Sunday, June 7, when she discovered that her Tahoe was not at her residence. Mr. Treaudo returned to Ms. Jones' home that same morning. While at her home, Mr. Treaudo answered Ms. Jones' cell phone in her presence, and after he disconnected the phone call, he borrowed Ms.

Jones' Tahoe once again and left.

Ms. Jones testified that later the same day, June 7, a detective knocked on her door and asked the whereabouts of her vehicle. She told him Mr. Treaudo had it. The detective asked her to call Mr. Treaudo and find out where her Tahoe was. She called Mr. Treaudo, who told her that he had parked her Tahoe around his sister's residence. She drove with the detective to Mr. Treaudo's sister's residence where they found the Tahoe; she commented that the Tahoe had been washed since she had last seen it. The detective exited his car and approached the Tahoe. He did not tell her why he wanted her Tahoe until he returned to his vehicle.

Ms. Jones stated that she knew Mr. Brown from the neighborhood as "Rat Rat." She confirmed that Mr. Brown knew the defendant and Mr. Treaudo. While at the police station Ms. Jones received a telephone call from Mr. Treaudo's sister. Ms. Jones told her she was at the police station and that the police were saying that the defendant and Mr. Treaudo had killed "Rat Rat." Ms. Jones identified her handwriting on the respective photo lineups in which she had identified Mr. Treaudo as the person to whom she had lent her truck on June 7, 2009, and the defendant as the person whom Mr. Treaudo told her he was going to pick up that day.

Ms. Jones stated on cross-examination that on June 7, 2009, Mr. Treaudo asked her if he could borrow her Tahoe to pick up the defendant, but she replied in the negative when queried whether she knew if Mr. Treaudo had, in fact, picked anyone up.

*731 Ms. Henry testified that she had a prior conviction from 2007 for distribution of crack cocaine and another one for theft. She confirmed that Mr. Brown was the father of her child. She said Mr. Brown telephoned her about 9:30 a.m. on June 7, 2009, but she missed that call. She had several missed calls from him before she called him back. He told her he was across the river, meaning the east bank of New Orleans with "Sun" and "Mike." He said that if he made it back in the "Cut Off" he would meet her in the park. She said that five or ten minutes later (she subsequently said it was not even a minute or two later) she was outside when she heard her mother screaming inside. Ms. Henry ran inside and asked what happened. Her mother told her nothing had happened, to just stay there and that she would be back. Approximately ten minutes later (she estimated ten to twenty minutes on cross examination) some guy and a white boy pulled up and told her that they just found "Rat" dead.

Ms. Henry testified that a detective later met with her. She gave a statement, was shown two photo lineups and asked to identify the two people Mr. Brown told her over the telephone were in the vehicle with him minutes before he was killed. She identified Michael "Sun" Treaudo in the photo lineup marked State Exhibit 21, and the defendant, Michael "Mike" Allen, in the photo lineup identified as State Exhibit 20. She had known Mr. Treaudo her entire life and she estimated she had known the defendant from the neighborhood for five or six years. Ms. Henry conceded that she identified the photos of the defendant and Mr. Treaudo as the individuals the victim told her were in the vehicle with him shortly before his death. She confirmed that when she testified at Mr. Treaudo's trial she never mentioned anything about the defendant.

Ms. Henry replied in the negative when asked on redirect examination whether anyone had questioned her about the defendant during the course of Mr. Treaudo's trial (which resulted in a hung jury). A portion of Ms. Henry's June 8, 2009 recorded statement to police was played for the jury, in which she said that when the victim called her she said: "I'm in a car with Sun' and Mike' goin' across the river." The prosecutor asked Ms. Henry about defense counsel having questioned her regarding there being "a lot of Mikes out there." Ms. Henry said she knew Mr. Brown meant that he was with the defendant because Mr. Treaudo and the defendant were always together. She said when Mr. Brown said he was with "Sun" and "Mike," she knew "exactly who he was talking about."

Mr. Treaudo testified on behalf of the State. He confirmed that he had originally been charged in the instant case but had pleaded guilty to manslaughter and received a seven-year sentence. He admitted to three other prior felony convictions—two for unauthorized use of a motor vehicle and one for possession of crack cocaine. Mr. Treaudo knew the defendant, whom he called "Mike," for approximately ten years, as of June 2009. He knew Mr. Brown his entire life. Mr. Treaudo stated that in June 2009, he was living with Ms. Jones and at other times with Latoria Carter ("Ms. Carter").

Mr. Treaudo testified that he saw the defendant on Saturday, June 6, 2009, and that the defendant talked about dropping/losing two hundred dollars, which he believed "Rat Rat" picked up. He confirmed that he borrowed Ms. Jones' bluish-green Tahoe on the night of June 6, 2009. He was supposed to take it back to her that night, but he fell asleep, and she must have also. Mr. Treaudo slept at the residence of Angela Woolridge ("Ms. Woolridge") *732 that night. He returned the Tahoe to Ms. Jones' residence the next morning. He was at Ms. Jones' residence on June 7, 2009, when the defendant called him on a cell phone, asking Mr. Treaudo to pick him up at his girlfriend's home. He picked up the defendant. The defendant said he wanted to procure some marijuana at "Rat Rat's" residence. They drove there, but "Rat Rat" was in the shower. When "Rat Rat" came outside, he told them he knew who had marijuana. When "Rat Rat" went to get into the Tahoe, the defendant got out of the front seat and told "Rat Rat" to get in the front. The person who was supposed to have the marijuana was not home, so the three men drove to the home of Mr. Treaudo's uncle looking for marijuana, but he was not home either. Mr. Treaudo said the defendant must have received a phone call, because he asked Mr. Treaudo to take him to eastern New Orleans to drop off some money to a girl.

Mr. Treaudo testified that when they got on the bridge going across the river he talked to a girlfriend, Ms. Carter (on a cell phone), while "Rat Rat" also talked to someone (on a cell phone). The defendant directed him to take a particular exit, and they ended up on a street that was one way in and one way out. At some point the defendant directed Mr. Treaudo to stop, near a little U-turn. All three men exited the vehicle. Mr. Treaudo said he was still talking to Ms. Carter when he exited the Tahoe. As he hung up with Ms. Carter, he went around the back of the Tahoe only to see the defendant shoot "Rat Rat" in the head with a black revolver. He had not heard either "Rat Rat" or the defendant say anything before the shooting. Mr. Treaudo scrambled to get back into the Tahoe and heard four more shots. The defendant got back in the

car, and Mr. Treaudo asked him why he shot him. The defendant replied: "You either rolling with me or you can roll with him." Mr. Treaudo told the defendant he was "tripping," and the defendant directed him to pull off. Once they got on I-10, the defendant told Mr. Treaudo to keep his mouth shut and that he better not say anything. Mr. Treaudo confirmed that he told police he hung up the phone on Ms. Carter right before the shooting, but later learned that he had not disconnected the call.

Mr. Treaudo said he dropped the defendant off at a female's residence, with a name beginning with the letter "J." Mr. Treaudo said that as they had crossed the river, the defendant removed the spent cartridge casings from the revolver and threw them in the river. Mr. Treaudo said his sister called him while he was still in the Tahoe, asking him who killed Mr. Brown. He told her not to call him if she did not know what really happened. She told him the police were looking for him. He parked the Tahoe approximately four blocks from his sister's residence. Ms. Jones called him asking where her Tahoe was, and he told her. He said that before he left the Tahoe he wiped the steering wheel down, along with where "Rat Rat" and the defendant had been sitting. He said he did that because he was nervous and scared, and he did not know what to do.

Mr. Treaudo said the police found him at Ms. Woolridge's residence four or five days after the murder and arrested him. He waived his rights and gave a statement on June 11, 2009. Mr. Treaudo testified that the defendant had come to Ms. Woolridge's residence after the killing. Mr. Treaudo asked him why he shot "Rat Rat," and the defendant complained that he knew "Rat Rat" had picked up two hundred dollars he had dropped. He said the defendant tried to get him to come back across the river, but he told him that he was going to stay at Ms. Woolridge's *733 home. When asked why he had not wanted to go back with the defendant across the river, Mr. Treaudo stated that was afraid for his life, and that he felt the defendant would do something to him since he was the only person who knew what happened.

Mr. Treaudo stated that after the defendant was arrested, the defendant telephoned him from jail and asked him to break Ms. Jones' phone, so Mr. Treaudo broke the phone and threw it in the street. He confirmed that was the same phone he was talking on at the time of the shooting. Mr. Treaudo said he was telling the truth, and that he had pleaded guilty because he did everything the defendant told him to do and felt responsible for "Rat Rat's" death. The transcript of the June 11, 2009 phone call by the defendant from jail reflects that the defendant asked Mr. Treaudo if he "threw that phone away," and that Mr. Treaudo replied that he had "cracked" it.

Mr. Treaudo admitted on cross examination that he had already been tried in the case concerning the murder of Mr. Brown which ended with a hung jury, and that was when he decided to take the plea bargain deal. He knew that if he was convicted of second degree murder he would never get out of prison. He had also been told that a witness had picked him out as leaving the scene of the murder. Mr. Treaudo also admitted that the State agreed not to charge him as a habitual offender. He denied ever being charged with a firearm violation for a gun found under the sofa at Ms. Woolridge's residence. Mr. Treaudo claimed he

© 2018 Thomson Reuters. No claim to original U.S. Govt. works.

did not know the defendant had a gun on the day of the killing.

Ms. Carter believed she had prior misdemeanor convictions for marijuana and theft. Ms. Carter knew Mr. Treaudo her entire live. She had known the defendant a few years. She described Mr. Treaudo and the defendant as "best buddies," and confirmed that she would see them hanging out together a lot. Ms. Carter testified that Mr. Treaudo telephoned her on June 7, 2009, and she was on the phone with him for five or six minutes. Towards the end of that phone call she heard silence, followed by five or six gunshots, followed by Mr. Treaudo asking: "Man, what the f--k you did that for?" She then heard a voice say: "N----t, you either with me or you with this n----r?" She then heard Mr. Treaudo say: "Man, f--k." Mr. Treaudo said nothing to her after she heard the gunshots.

On cross examination, Ms. Carter confirmed that she and Mr. Treaudo were talking and that he left the phone open. After she heard the gunshots, he did not respond to her anymore. Ms. Carter stated on redirect examination that Mr. Treaudo was hollering when he said: "Man, what the f-k you did that for?" She confirmed that Mr. Treaudo sounded surprised.

Don Hancock ("Mr. Hancock") testified that he was the telephone supervisor for the Orleans Parish Sheriff's Office, and that he oversaw operations of all telecommunications equipment at the sheriff's office, including an inmate telephone station. He stated that all inmate telephone calls were recorded digitally. He said that when an inmate makes a call, he has to use his pin number or folder number issued at booking, and that upon acceptance of the call by the receiver there is an announcement to both parties that the calls are subject to monitoring and recording. Mr. Hancock identified a CD he downloaded of telephone calls for the defendant from June 10, 2009 through June 20, 2009. He also identified transcripts of those calls. He testified that he verified that the transcripts corresponded with the calls, and *734 that the transcripts accurately reflected what was said on the jail call recordings. The recordings were played for the jury, and the transcripts of the calls were provided to jurors. A June 11, 2009 call transcript reflects defendant asking Mr. Treaudo if he "threw that phone away," and that Mr. Treaudo replied that he had "cracked" it.

Ms. Henry, recalled as a witness by the defense, was confronted with her testimony given at the trial of Mr. Treaudo, relative to whom Mr. Brown told her he was with during a phone call between them shortly before he was murdered. She testified that Mr. Brown told her "I'm with Sun." The prosecutor then asked Ms. Henry, during Mr. Treaudo's trial: "Who did you say he was with?" And Ms. Henry replied: "Sun." On cross examination by the prosecutor, Ms. Henry was asked whether anyone had asked her during her testimony at Mr. Treaudo's trial who else had been in the vehicle other than "Sun." She replied in the negative. She also confirmed that she told a detective in her June 8, 2009 recorded statement given the day after the murder that Mr. Brown told her he was with "Sun" and "Mike," as was verified by playing the recorded statement for the jury.

During redirect examination, Ms. Henry replied in the affirmative when asked whether she had been asked while testifying at Mr. Treaudo's trial "who was in the car," and that the only answer she had given was

"Sun."

## ERRORS PATENT

A review of the record reveals no errors patent on the face of the record.

[1] The defendant cites as an error patent that the trial court erred in failing to advise the defendant of his right to post-conviction relief and the time limit within which to file for such relief. However, this is a reference to La.C.Cr.P. art. 930.8(C), which states that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief, either verbally or in writing. However, La.C.Cr.P. art. 930.8(C) is supplicatory language that does not bestow an enforceable right in favor of an individual defendant. State v. Brumfield, 2009-1084, pp. 1-2 (La.9/2/09), 16 So.3d 1161, 1162; see also State v. Reel, 2010-1737, pp. 14-15 (La.App. 4 Cir. 10/3/12), 126 So.3d 506, 517, 2012 WL 4711881, writ denied, 2012-2433 (La.4/12/13), 111 So.3d 1018 (The failure of a trial court to inform the defendant of the time period within which to petition for post-conviction relief is not an error and requires no action on the part of an appellate court.).

## ASSIGNMENT OF ERROR NO. 1

[2] In his first assignment of error the defendant argues that the evidence was insufficient to support his conviction. The defendant was convicted of second degree murder, defined in pertinent part by La. R.S. 14:30.1(1) as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.

This Court set forth the applicable standard of review for sufficiency of the evidence in State v. Huckabay, 2000-1082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, as follows:

> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 *735 (La.App. 4 Cir.1991) To view preceding link please click here . However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
>
> In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and

© 2018 Thomson Reuters. No claim to original U.S. Govt. works.

129 So.3d 724, 2012-1118 La.App. 4 Cir. 11/20/13. State v. Allen. (La.App. 4 Cir. 2013)  Page 7

circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Shapiro*, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from *Jackson v. Virginia, supra*, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. *State v. Wright*, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the *Jackson* reasonable doubt standard. *State v. Jacobs*, 504 So.2d 817 (La.1987).

*Huckabay*, 2000-1082, p. 32, 809 So.2d at 1111, quoting *State v. Ragas*, 98-0011, pp. 13-14 (La.App. 4 Cir. 7/28/99). 744 So.2d 99, 106-107.

When the identity of the defendant as the perpetrator is disputed. the State must negate any reasonable probability of misidentification in order to satisfy its burden under *Jackson v. Virginia, supra*. *State v. Galle*, 2011-0930, p. 31 (La.App. 4 Cir. 2/13/13), 107 So.3d 916, 935; *State v. Everett*, 2011-0714, p. 15 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 619, *writs denied*, 2012-1593, 2012-1610 (La.2/8/13), 108 So.3d 77.

In the defendant's sufficiency argument he attacks the credibility of Mr. Treaudo. However, "a reviewing court is not called upon to decide whether it believes the witnesses...." *Huckabay, supra*, quoting *State v. Smith*, 600 So.2d 1319, 1324 (La.1992). A factfinder's decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. *State v. James*, 2009-1188, p. 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996. The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Wells*, 2010-1338, p. 5 (La.App. 4 Cir. 3/30/11). 64 So.3d 303, 306.

Considering the facts of this case detailed hereinabove, and viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant was the individual who shot and killed the victim while having the specific intent to kill or to inflict great bodily harm upon him. There is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NO. 2

[3] In this assignment of error, the defendant argues that the trial court erred in admitting evidence of his involvement in the 2004 block party shooting. As noted above, the State sought to introduce evidence of the 2004 shooting in connection *736 with its *Prieur* motion, in order to show motive, preparation, or plan.

La. C.E. art. 404(B)(1) states:

Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of

any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

The Louisiana Supreme Court set forth the applicable law in *State v. Rose*, 2006-0402, pp. 12-13 (La.2/22/07), 949 So.2d 1236, 1243-1244, as follows:

It is well settled that courts may not admit evidence of other crimes to show the defendant as a man of bad character who has acted in conformity with his bad character. La. C.E. art. 404(B)(1); *State v. Williams*, 96-1023, p. 30 (La.1/21/98), 708 So.2d 703, 725; *State v. Prieur*, 277 So.2d 126, 128 (La.1973). Evidence of other crimes, wrongs or acts committed by the defendant is generally inadmissible because of the "substantial risk of grave prejudice to the defendant." *Prieur*, 277 So.2d at 128. However, the State may introduce evidence of other crimes, wrongs or acts if it establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404(B)(1). The State must provide the defendant with notice and a hearing before trial if it intends to offer such evidence. *Prieur*, 277 So.2d at 130. Even when the other crimes evidence is offered for a purpose allowed under art. 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. *State v. Martin*, 377 So.2d 259, 263 (La.1979); *Prieur*, 277 So.2d at 130. The State also bears the burden of proving that defendant committed the other crimes, wrongs or acts. *State v. Galliano*, 2002-2849, p. 2, (La.1/10/03), 839 So.2d 932, 933 (*per curiam* ).

Although a defendant's prior bad acts may be relevant and otherwise admissible under La. C.E. art. 404(B), the court must still balance the probative value of the evidence against its prejudicial effects before the evidence can be admitted. La. C.E. art. 403. Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree. *State v. Germain*, 433 So.2d 110, 118 (La.1983). As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. *Id. See also Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997)("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."). (Footnote omitted).

Mr. Treaudo testified that he was at the 2004 block party at "Rat Rat's" mother's house. He stated that "Rat Rat" was standing in front of "his" door, presumably meaning his mother's door, where he was living, when shots were fired at "Rat Rat" and another male. Mr. Treaudo confirmed *737 that someone named "Jacque" was also shooting at "Rat Rat" at the block party. When asked if "Jacque's" name was really "Wayne Charles", Mr. Treaudo said "probably so." When asked if "Jacque Wayne Charles" had any beef with "Rat Rat", Mr. Treaudo replied not that he knew of. He denied that "Jacque Wayne Charles" was *the individual he picked up*, as defense counsel phrased it, "when you two guys went out there to murder Arthur Brown."

© 2018 Thomson Reuters. No claim to original U.S. Govt. works.

36

Ms. Henry testified at trial, as she had at the *Prieur* hearing, that she and Mr. Brown were standing across the street from the Mr. Brown's mother's home when shots were fired toward the home from a car driving down the street. She stated that the shots were fired away from them. She also stated that she observed the defendant in the driver's side, back seat of the car from which the shots were fired. She never informed the police that the defendant was involved in the shooting.

Tyrone Phillips identified the defendant as one of the males who jumped out of the car at the 2004 block party and fired shots. Mr. Phillips testified that at the time of this shooting he was standing next to his cousin, Jonathan Bush, who was shot and wounded. Mr. Phillips said that, while Mr. Brown had been standing within sight of him, Mr. Brown was not around when the shots were fired. Mr. Phillips identified the defendant in a six-photo lineup as the individual who committed the shooting. Mr. Phillips talked to the police on the night of the shooting, but never talked to them about it again. When asked whether he had any prior convictions, Mr. Phillips replied not that he knew of. Mr. Phillips conceded on cross examination that he might have had a 1998 conviction for simple burglary, but said that he did not remember.

NOPD Detective John Duzac investigated the 2004 Kent Drive shooting. Detective Duzac identified the defendant in court. He also identified State Exhibit 1 as a copy of the photo lineup he presented to Mr. Phillips, who he said had identified photo number five, the defendant's photo, as depicting the shooter. Detective Duzac maintained that he obtained an arrest warrant for the defendant in connection with 2004 shooting. Detective Duzac stated that the defendant was never convicted of nor pleaded guilty to the 2004 Kent Drive shooting. He did not know whether the defendant had ever been indicted, although he stated that he "charged" the defendant. When asked whether Mr. Brown was ever shot on that scene, Detective Duzac said he did not recall the name, Arthur Brown. The detective said the victim in the 2004 shooting was unable to identify anyone, and he confirmed that Mr. Phillips was the only person who came forward, made an identification, and gave a statement.

NOPD 911 operator Yolanda Haynes identified a 911 incident recall and a corresponding audiotape recording of the call, under NOPD item number G-19738-04. Ms. Haynes replied in the negative when asked on cross examination whether she saw the names Arthur Brown or Michael Treaudo in the incident recall.

The defendant is correct that the testimony of the three eyewitnesses to the 2004 shooting diverged on whether shots were fired at Mr. Brown. However, the trial court granted the motion and issued written reasons. Therein, the court stated that two witnesses would testify at trial that in 2004, the defendant committed a drive-by shooting against Mr. Brown. The trial court expressly stated that it had listened to the testimony of Ms. Henry and Mr. Treaudo and found it to be credible and compelling.

The court found that both the instant murder and the 2004 block party shooting involved similar criminal conduct toward *738 the same victim. The court found the evidence relevant to show defendant's intent, knowledge, and identity. The court also expressly found that evidence of the block party shooting was not

outweighed by its prejudicial effect.

A trial court's ruling on the admissibility under La. C.E. art. 404(B)(1) of other crimes evidence is reviewable under an abuse of discretion standard. See *State v. Henderson,* 2012-2422, pp. 3-4 (La.1/4/13), 107 So.3d 566, 568 ("[W]e conclude the trial court abused its discretion in finding the defendant's prior conviction to be inadmissible under LSA-C.E. art. 404(B)(1)"); *State v. Barnes,* 2011-1421, p. 15 (La.App. 4 Cir. 9/19/12), 100 So.3d 926, 936, *writ denied,* 2012-2251 (La.4/1/13), 110 So.3d 575; *State v. Gibson,* 99-2827, p. 12 (La.App. 4 Cir. 4/11/01), 785 So.2d 213, 220. A trial court's ruling as to the relevancy of evidence will not be disturbed absent a clear abuse of discretion. *State v. Sanders,* 2012-0409, p. 14 (La.App. 4 Cir. 11/14/12), 104 So.3d 619, 630. A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. *State v. Girard,* 2012-0790, p. 6 (La.App. 4 Cir. 3/6/13), 110 So.3d 687, 691.

Even assuming that the State was required to prove the commission of the prior offense by "clear and convincing evidence" rather than by a preponderance, (FN7) it cannot be said that the trial court abused its discretion in finding by clear and convincing evidence that the defendant participated in intentionally shooting at either Mr. Brown or toward his mother's residence at the 2004 block party. It is certainly a reasonable statement that simply having shots fired toward one's residence in a drive-by shooting during a party at that residence bestows a victim status upon that individual. Despite a difference between the two offenses, it cannot be said that the trial court abused its discretion in rejecting the notion suggested by the defendant that the State introduced evidence of the prior crimes simply to show that the defendant was a person of bad character because he was involved in the prior crime, and thus that he probably committed the instant crime. The similarities between the crimes were that the defendant was the perpetrator in the prior violent crime and the alleged perpetrator in the instant violent crime, and Mr. Brown was a victim in some manner in the 2004 crime and the ultimate victim in the instant crime.

Evidence of the prior crime was relevant to establish the defendant's identity as the individual who shot and killed Mr. Brown some five years after the defendant had participated in the earlier violent crime involving Mr. Brown. The trial court did not abuse its discretion in finding that that the probative value of the evidence of 2004 shooting incident was not substantially outweighed by the danger of unfair prejudice to the defendant.

There is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NO. 3

[4] In his third assignment of error the defendant argues that this Court should remand the case for a "determination" of the trial court's reasoning in denying his request to introduce "evidence of a prior conviction and criminal history" of Jacque Wayne Charles ("Mr. Charles"). Mr. Treaudo testified on both direct and cross examination that one of the shooters at the 2004 block party was named "Jacque." When asked on cross examination whether "Jacque's" name was really "Wayne Charles", Mr. Treaudo answered, "probably *739 so." Mr. Treaudo denied that Mr. Charles was "the individual that you picked up when you two guys

37

went out there to murder Arthur Brown, right?"

The defense counsel then asked Mr. Treaudo if he knew that Mr. Charles had a long list of "gun convictions," which drew an objection from the State. The trial court did not address the objection before defense counsel rephrased it, asking Mr. Treaudo if he knew the individual had been arrested and convicted numerous times for possession of a firearm.   At that point the trial court asked counsel to approach the bench, whereupon, the record reflects, an unrecorded bench conference was held.   The defense counsel then stated, for the record, and before the jury: "I have his conviction to introduce, but I will move on."

At the close of the State's case the defense counsel brought up for the record what was discussed during the unrecorded bench conference prompted by defense counsel questioning Mr. Treaudo about prior firearms-related convictions of Mr. Charles.   Defense counsel stated for the record that he had attempted to introduce certified prior convictions of Mr. Charles, an individual who the defense was alleging could have been a possible co-perpetrator with Mr. Treaudo.   The trial court did not allow the introduction of that evidence. The defense counsel noted that the trial court stated it would make it clear for the record that it was a contemporaneous objection for purposes of appeal.

The defense counsel argued that the defendant had a constitutional right to present a defense.   The trial court confirmed for the record that the defense counsel's objection was to be treated as a contemporaneous one.   While the trial court also stated that the defense counsel could proffer the documents and they could be placed into the record, no such evidence is contained in the record.   Neither of the two exhibit indexes, for the September 27 or 28, 2011 days of trial, or the minute entries for the days of the trial, reflects that the defense introduced or proffered any evidence during the trial.

The defendant argues that he was deprived of his right to present a defense by the denial of his request to introduce what he represented at trial were "certified convictions" of Mr. Charles, and what he represents in his appellate brief was "evidence of a prior conviction and criminal history" of that individual.

[5] The Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee the criminally accused a meaningful opportunity to present a complete defense.   *State v. Dressner*, 2008-1366, p. 15 (La.7/6/10), 45 So.3d 127, 137;   *State v. Blank*, 2004-0204, p. 49 (La.4),27 955 So.2d 90, 130. However, the right to present a defense does not require a trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. *Everett*, 2011-0714, p. 30, 96 So.3d at 627; *State v. Fernandez*, 2009-1727, p. 14 (La.App. 4 Cir. 10/6/10), 50 So.3d 219, 229.

A trial court's ruling as to the admissibility of evidence will not be disturbed absent a clear abuse of discretion.   *State v. Cyrus*, 2011-1175, p. 20 (La.App. 4 Cir. 7/5/12), 97 So.3d 554, 565.   Also, a trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect under La. C.E. art. 403. *State v. White*, 2009-0025, p. 9 (La.App. 4 Cir. 9/

16/09), 22 So.3d 197, 204.

*740. In the instant case, the defendant presented evidence--the testimony of Mr. Treaudo, the State's primary witness against him--that Mr. Charles was an individual who was with the defendant at the 2004 block party and that Mr. Charles had shot at Mr. Brown.   Thus, the fact that Mr. Charles had shot at Mr. Brown at the 2004 block party was established by the same witness that the State primarily relied upon to prove beyond a reasonable doubt that it was the defendant who shot and killed Mr. Brown on June 7, 2009.

On appeal the defendant complains that the trial court's ruling prevented him from presenting evidence of Mr. Charles' criminal history "and possible involvement in Mr. Brown's death."   However, it is inaccurate to say that the trial court refused to permit the defendant to present evidence of Mr. Charles' involvement in Mr. Brown's death.   There was no direct evidence of that fact.   It had already been established by the State's main witness that Mr. Charles shot at Mr. Brown in July 2004.   Given this known fact, evidence that Mr. Charles may have had a prior arrest and/or conviction for a firearm-related offense was virtually irrelevant to any inference that might have been drawn by the jury that Mr. Charles was involved in Mr. Brown's June 2009 murder.

While the defendant complains that the trial court did not give any reason for denying him the right to present evidence that Mr. Charles had a prior gun-related arrest and/or conviction, the trial court could have found that, given the circumstances, such evidence was irrelevant and/or that, even if marginally relevant, its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, as per La. C.E. art. 403.   It cannot be said that such a finding by the trial court was a clear abuse of discretion.

Further, even assuming that the trial court erred in refusing to admit any such evidence, it constituted harmless error insofar as defendant being deprived of his right to present a defense.   *See State v. Juniors*, 2003-2425, p. 55 (La.6/29/05), 915 So.2d 291, 332 ("[B]ecause any error in the exclusion of the letter allegedly written by Williams was clearly harmless, the defendant was not deprived of the opportunity to present a defense.").   The jury obviously believed Mr. Treaudo's testimony that defendant shot and killed Mr. Brown on June 7, 2009.   There is no reason the jury would not have also believed Mr. Treaudo's testimony that Mr. Charles shot at Mr. Brown in 2004. However, having that information, the jury obviously rejected any suggestion that it was Mr. Charles who killed Mr. Brown in 2009.   The guilty verdict rendered in the instant case was surely unattributable to any error by the trial court in barring any marginally relevant evidence of a prior arrest and/or conviction of Mr. Charles for a firearms offense.   *State v. Higginbotham*, 2011-0564, p. 3 (La.5/6/11), 60 So.3d 621, 623 (Harmless error exists where the guilty verdict actually rendered was "surely unattributable" to the error.).   There is no merit to this assignment of error.

For the foregoing reasons, we affirm the defendant's conviction and sentence.

**AFFIRMED.**

38

© 2018 Thomson Reuters. No claim to original U.S. Govt. works.

(FN1.) Mr. Treaudo's surname is spelled "Trudeaux" in the indictment, but "Treaudo" in the affidavit for the warrant for his arrest, on his arrest register, on his rights-of-arrestee form, in all of his pleadings, and in all minute entries.    The Louisiana Department of Corrections also lists his last name as "Treaudo."

(FN2.) In connection with the murder of Arthur Brown, Mr. Treaudo was initially tried but the trial resulted in a hung jury.    Subsequent to this, on February 7, 2011, the State amended the indictment as to Mr. Treaudo to charge manslaughter, to which he pleaded guilty that date and was immediately sentenced to seven years at hard labor.

(FN3.) *State v. Prieur*, 277 So.2d 126 (La.1973).  The relevant incident in the State's *Prieur* motion was a

2004 shooting at a block party at 2911 Kent Drive in New Orleans, where the defendant was identified as the shooter, but never convicted.  The State argued that Mr. Brown was also the intended victim in the 2004 shooting.    The 2004 incident is addressed below in the defendant's second assignment of error.

(FN4.) In Ms. Jackson's testimony she refers to Michael Treaudo as "Little Mike."

(FN5.) Ms. Henry refers to Michael Treaudo as "Sun" and the defendant Michael Allen as "Mike."

(FN6.) The transcript refers to the detective as McClary, but the correct spelling is McCleery.

(FN7.) See discussion at *State v. Barnes, supra.*

39

© 2018 Thomson Reuters. No claim to original U.S. Govt. works.

# SUPREME COURT

# STATE OF LOUISIANA

---

Docket No:

STATE OF LOUISIANA,
*Appellee*

versus

MICHAEL ALLEN
*Appellant*

## *APPLICATION FOR WRIT OF CERTIORARI*
FROM THE COURT OF APPEAL, FOURTH CIRCUIT
DOCKET NO: 2012-KA-1118
FROM THE ORLEANS PARISH CRIMINAL DISTRICT COURT
DOCKET NO: 490-990J

Original Brief On Behalf Of Michael Allen

Appendix "C-3"

Respectfully Submitted:

*Michael Allen*

Michael Allen DOC #575625
Main Prison Complex, Hickory Hall-4
Louisiana State Penitentiary
Angola, La. 70712

40

A

COURT RULES
APPENDIX C. SUPREME COURT OF LOUISIANA
WRIT APPLICATION FILING SHEET

No._____

TO BE COMPLETED BY COUNSEL
or PRO SE LITIGANT FILING APPLICATION

TITLE

Applicant: Michael Allen
Have there been any other filing in this
Court in this matter?  NO

STATE OF LOUISIANA

VS.

Are you seeking a Stay Order? NO
Priority Treatment? NO
If so you MUST complete & attach a Priority Form

MICHAEL ALLEN

## PRO SE LITIGANT INFORMATION

APPLICANT: **Michael Allen**
Address: **Louisiana State Prison**
**Angola, Louisiana 70712**
Phone:_____ Bar Roll No._____
Pleading being filed: X In Proper Person

RESPONDENT **Leon A. Cannizzaro, Jr.**
Address: **619 White Street**
**New Orleans, La. 70119**
Phone:_____ Bar Roll No._____
X In Forma Pauperis

Attach a list of additional counsel/pro se litigants, their addresses, phone numbers and the parties they represent.

### TYPE OF PLEADING

☐ Civil,   X **Criminal**,   ☐ Bar,  ☐ Civil Juvenile   ☐ Criminal Juvenile   ☐ Other

### ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION

Tribunal/Court:_____ Docket No. _____
Judge/Commissioner/Hearing Officer:_____ Ruling Date:_____

### DISTRICT COURT INFORMATION

Parish and Judicial District Court: **Criminal District/ Orleans Parish** Docket No **490-990**
Judge and Section **Darryl A. Derbigny Sec. "J"** Date of Ruling/Judgment: **10-14-2011**

### APPELLATE COURT INFORMATION

Circuit: **Fourth Circuit**_____ Filing Date____Docket No. **2012-KA-1118**_____
Applicant in Appellate Court: **Michael Allen – Pro-se** Ruling Date: **11-20-2012**
Panel of Judges **McKay, Love, Lobrano** Rehearing Info. **N/A**
Applicant: **Michael Allen**_____ Date Filed **09/11/12**____ Action on Rehearing: **N/A**
Ruling Date: **N/A** Panel of Judges: _____**N/A**_____ En Banc:☐

### PRESENT STATUS

☐ Pre Trial, Hearing/Trial Scheduled Date:_____ , ☐ Trial in Progress, X *Post Trial*
Is there a stay order now in effect? NO  Has this pleading been filed simultaneously in any other court?
NO. If so, explain briefly_____

### VERIFICATION

I certify that the above information and all of the information contained in this application is true and correct to the best of my knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule X, are attached to this filing. I further certify that a copy of this application has been mailed or delivered to the appropriate court of appeal (if required), to the respondent judge in the case of a remedial writ, and to all other counsel and unrepresented parties.

_____
SIGNATURE

41



# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

MOTION TO PROCEED IN FORMA PAUPERIS ...............................................iii

AFFIDAVIT OF POVERTY ...............................................................................iii

JURISDICTION...................................................................................................v

ASSIGNMENT OF ERRORS..............................................................................v

CONTROLLING WRIT GRANT CONSIDERATION...........................................v

STATEMENT OF THE CASE..............................................................................1

    I. Course of the proceedings......................................................................1

    II. Statement of the Facts.........................................................................1-3

SUMMARY ARGUMENTS..................................................................................3

ASSIGNMENT OF ERRORS ..............................................................................3

    Argument on Assignment of Error Number One ....................................3-6

    Argument on Assignment of Error Number Two ....................................6,7

    Argument on Assignment of Error Number Three...................................7-9

CONCLUSION ................................................................................................9,10

CERTIFICATE OF SERVICE.............................................................................11

APPENDIX:

Court of Appeal Judgment...........................Exhibit-A

42

# TABLE OF AUTHORITIES

## U.S. CONSTITUTION:

Fourteenth Amendment............................................................................................4
Sixth and Fourteenth Amendments.......................................................................7

## U.S. SUPREME COURT CASE LAW:

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)....................4,5

## LOUISIANA CONSTITUTION:

Article I, § 16...........................................................................................................7

## LOUISIANA CASE LAW:

State v. Blank, 04-0204 (La. 4/11/07), 955 So.2d 90,130,..................................7
State v. Combs, 600 So.2d 751 (La.App. 2d Cir. 1992).......................................5
State v. Dressner, 08-1366 (La. 07/06/10); 45 So.3d 127,13...............................7
State v. Frederick, 340 So.2d 1353 (La. 1976).....................................................8
State v. Gatlis, 36,661 (La.App. 2 Cir. 03/14/03), 839 So.2d 1258 ...................8
State v. Jackson, 352 So.2d 195 (La. 1977).......................................................8,9
State v. LaFleur, 398 So.2d 1074,1080 (La.1981)...............................................9
State v. Ledet, 345 So.2d 474 (La. 1977).............................................................8
State v. Lee, 340 So.2d 1339,1345 (La. 1976)....................................................8
State v. Matthews, 375 So.2d 1165 (La.1979)......................................................5
State v. McDermitt, 406 So.2d 195,200 (La.1981)..............................................8
State v. Prieur, 277 So.2d 126 (La. 1973)............................................................8
State v. Rhodes, 29-207 (La. App. 2 Cir. 1/22/97); 688 So.2d 628.....................5
State v. Sutfield, 354 So.2d 1334 (La. 1978)........................................................9

## CODAL AND STATUTORY PROVISIONS:

La.C.Cr.P. Art. 821 ..............................................................................................11

43

## MOTION TO PROCEED IN FORMA PAUPERIS

Pursuant to Article 5181 et. Seq., of the Louisiana Code of Civil Procedure, motion is hereby made for leave to proceed in forma pauperis in this application for supervisory writs.

In support of his motion, Allen submits that he is an indigent by virtue of his incarceration, having no income or assets to pay the cost of the this prosecution in or advance or as they may accrue.

However, Allen contends that he has sought this relief requested in good faith because he believes that he is entitled to such relief as a matter of law.

WHEREFORE, considering the foregoing, Allen respectfully prays that this Honorable Court will grant the motion.

Respectfully Submitted,

Michael Allen DOC #575625
Main Prison Complex, Hickory Hall-4
Louisiana State Penitentiary
Angola, Louisiana 70712

iii

44

## AFFIDAVIT OF POVERTY

I, Michael Allen, being first duly sworn deposes and say

that:

1) I am currently confined at the Louisiana State Penitentiary, Angola, Louisiana.

70712.

2) I am the affiant listed in the foregoing Supervisory Writ.

3) That I am destitute, without the legal means by which to pay for the cost of the

proceedings governing the aforementioned legal application.

4) That I do not own any property of any sort, including cars, homes, trucks, real-

estate, land, appliances, moveable or immoveable.

5)     That I do not own any stocks, bonds, notes, certificates of deposit or other

instruments of value, which can be used to pay the cost of these proceedings.


Respectfully Submitted,

Michael Allen DOC #575625
Main Prison Complex, Hickory Hall-4
Louisiana State Penitentiary
Angola, Louisiana 70712


Sworn to and subscribed before me on this 9th day of December

2013, at Angola, Louisiana.

Notary or Person's Authorized to
Administer an Oath

45

iv

## JURISDICTION

This Honorable Court has been vested with Jurisdiction over this matter pursuant to LSA-Const. Art. 5, Section 5(A), of the Louisiana Constitution of 1974.

## ASSIGNMENT OF ERRORS

1. Whether The Fourth Circuit Erred In Finding That The Evidence Adduced At Trial Was Sufficient To Support A Conviction For Second Degree Murder.

2. Whether The Fourth Circuit Erred In Finding That The Trial Court Was Correct In Refusing To Permit Michael Allen To Present A Defense.

3. Whether The Fourth Circuit Erred In Finding The Trial Court Was Correct In Permitting The State To Introduce Evidence Of Michael Allen's Involvement In A 2004 Shooting, For Which He Was Not Convicted, Because The Evidence Introduced Was More Prejudicial Than Probative.

## CONTROLLING WRIT GRANT CONSIDERATION

This Honorable Court should grant writs in this matter because the Honorable Fourth Circuit's judgment is clearly misapplication of the law.

46

TO THE HONORABLE JUSTICES OF THE LOUISIANA SUPREME COURT:

MAY IT PLEASE THIS HONORABLE COURT:

### STATEMENT OF THE CASE

I. Course of the proceedings

By Bill of Indictment filed October 1, 2009, the State of Louisiana charged Michael Allen and Michael Treaudo with the second degree murder of Arthur Brown. (R.pp.1-2). On January 26, 2010, the Trial Court heard Mr. Allen's motion to suppress, after which it denied the motion. (R.p.5). The Trial Court heard the State's *Prieur* motion on August 11, 2011; and, on August 18, 2011, it deemed admissible evidence of Mr. Allen's involvement in a shooting in 2004. (R. p. 9)[1] Jury trial commenced on September 27, 2011, at the conclusion of which the jury found Mr. Allen guilty as charged of second degree murder. (R.p. 10, transcript of trial, Sept. 28, 2011, p. 154).[2] The Trial Court refused to permit Mr. Allen to present evidence, in his case in chief, of the criminal history of Jacque Wayne Charles, who Mr. Allen was alleging could have been a co-conspirator with Michael Treaudo. (09-28-11, pp. 155-6). On October 14, 2011, the Trial Court sentenced Mr. Allen to life in prison without benefit of probation, parole or suspension of sentence and denied his motion for post-verdict judgment of acquittal. (R.p. 11, transcript of sentencing, Oct. 14, 2011, p. 2). A motion for appeal was also filed on October 14, 2011; and, the Louisiana Appellate Project, through undersigned counsel, was appointed to represent Mr. Allen for purposes of appeal. (R.pp. 76,78).

II.    Statement of the facts

On June 7, 2009, Michael Treaudo borrowed Tasha Jones's teal Chevy Tahoe and told her he was going to pick up Michael Allen. (Transcript of trial, Sept. 28, 2011, pp. 33,42). According to Mr. Treaudo's testimony, he did go pick up Mr. Allen. (09-28-11, p.86). A short time later, the teal Tahoe pulled up outside Arthur Brown's residence.

---

1   The transcript of the August 11 and 18, 2011, hearing are not a part of the record on appeal. A motion to supplement the record is filed simultaneously with this brief. Defendant reserves the right to file a supplemental brief at a later date, should the motion to supplement be granted.

2   The transcripts of the proceedings in this matter are not marked with record page numbers.

47

Nicole Jackson, Arthur Brown's girlfriend and the mother of his child, testified she went outside and saw the Tahoe and that Michael Treaudo (who was the only person she saw in the Tahoe) asked her where "Rat" (Arthur Brown's nickname) was. (09-27-11, pp. 36-7). She went inside and told "Rat" who was asking for him; and, "Rat" went outside. (09-27-11, p.30). She never saw him again. When she went back outside, her son told her "Rat" left in the Tahoe. (09-27-11, p. 31).

Mr. Treaudo, who testified at Mr. Allen's trial after receiving a plea bargain for a manslaughter conviction and a seven-year sentence, told the jury he had a conversation with Mr. Allen the day before, in which Mr. Allen indicated he believed "Rat" had picked up two hundred dollars Mr. Allen dropped. (09-28-11, pp. 80,83). He testified he and Mr. Allen Picked "Rat" up to go to a friend of "Rat's" and buy some marijuana. (09-28-11, p.86). The Stop at the friend's house was fruitless. Mr. Treaudo testified the three went next to his uncle's house, who was not home. According to Mr. Treaudo, Mr. Allen asked him to drive toward the East, so he could take some money to a girl. (09-28-11, p. 88). They drove to a neighborhood with only one way in or out, and went into the neighborhood. (09-28-11, p. 90). When they got to the point where Mr. Treaudo claimed Mr. Allen told him to stop, Mr. Treaudo was on the phone with his friend Latoria Carter. (09-28-11, pp. 89,91). He testified he, Mr. Allen and "Rat" all got out of the Tahoe, as he told Latoria he would call her back. Then, according to Mr. Treaudo's testimony, he walked around the corner of the Tahoe to see Mr. Allen shoot "Rat" in the head. He ran back to get in the Tahoe, and heard four more shots. (09-28-11, p.91). Arthur "Rat" Brown died of multiple gunshot wounds to the head. (09-28-11, pp. 7-15).

Yolanda Merritt, who lived in the neighborhood where the shooting took place, testified she saw a teal Chevy SUV drive past her house shortly after she heard sounds she took for gunshots. (09-27-11,pp. 49-50). She noticed the Chevy because the nature of the neighborhood was such that she was familiar with all the cars that frequented the neighborhood. (09-27-11, p. 50). When presented with photographic lineups containing Mr. Treaudo and Mr. Allen, she identified Mr. Treaudo, but not Mr. Allen. (09-27-11, pp.

2 of 11
*State v. Allen,* (Appeal—Certiorari—La. Supreme Ct.)

48

55-6)

New Orleans Police Department Detective Kevin Burns testified no physical evidence connected Mr. Allen to the murder of Arthur "Rat" Brown. (09-27-11,p.109). Aside from Mr. Treaudo's self-serving testimony, no other testimony placed Mr. Allen with Mr. Treaudo that day with any degree of certainty. Ms. Jones testified Mr. Treaudo told her he was going to pick up Mr. Allen, but she could offer no insight into whether he actually did so. (09-28-11, p.42). Lamyra Henry, the mother of another of Mr. Brown's children, testified she talked on the phone to Mr. Brown just minutes before his death, and he told her he was with "Son" (Mr. Treaudo) and "Mike". (09-28-11,p.46). Though she admitted she knew more than one "Mike", it was her opinion "Mike" was Michael Allen. (09-28-11, pp.50,58). Latoria Carter, who was on the phone with Mr. Treaudo, did not hang up the phone when Mr. Treaudo told her he would call her back. She heard shots, and heard a voice she believed to be Mr. Treaudo's ask, "Man, what the f**k you did that for?" but she could not identify the other voice she heard. (09-28-11,pp. 129-30).

## ASSIGNMENT OF ERRORS

1. Whether The Fourth Circuit Erred In Finding That The Evidence Adduced At Trial Was Sufficient To Support A Conviction For Second Degree Murder.

2. Whether The Fourth Circuit Erred In Finding That The Trial Court Was Correct In Refusing To Permit Michael Allen To Present A Defense.

3. Whether The Fourth Circuit Erred In Finding The Trial Court Was Correct In Permitting The State To Introduce Evidence Of Michael Allen's Involvement In A 2004 Shooting, For Which He Was Not Convicted, Because The Evidence Introduced Was More Prejudicial Than Probative.

## ARGUMENT ON ASSIGNMENT OF ERROR NUMBER ONE

**The Fourth Circuit Erred In Finding That The Evidence Adduced At Trial Was Sufficient To Support A Conviction For Second Degree Murder.**

The evidence adduced at Michael Allen's trial was not sufficient to support a conviction for second degree murder. Only Michael Treaudo's self-serving testimony put Mr. Allen with him at the time of the shooting with any degree of certainty. Detective

3 of 11
*State v. Allen*, (Appeal—Certiorari–La. Supreme Ct.)

49

Kevin Burns testified no physical evidence connected Mr. Allen to the murder. Ms. Jones's testimony Mr. Treaudo told her he was going to pick up Mr. Allen serves only to prove Mr. Treaudo wanted her to believe he was going to pick up Mr. Allen. Her testimony does not prove Mr. Treaudo actually did so. Nicole Jackson did not see anyone in the Tahoe but Mr. Treaudo, moments before Arthur Brown left her home in that Tahoe. Lamyra Henry's testimony demonstrates nothing more than the fact Mr. Brown told her he was with "Son" and "Mike," and, she admitted she knew more than one "Mike". Further, Ms. Henry admitted that, when she testified at Michael Treaudo's trial ) which ended with a hung jury), she only told the jury Mr. Brown stated he was with "Son." She did not testify, at Mr. Treaudo's trial, that Mr. Brown indicated he was with anyone other than Mr. Treaudo. (09-28-11, pp. 147-9, 152).

Latoria Carter, who was on the phone with Mr. Treaudo at the time shots rang out, could only identify one voice—that of Mr. Treaudo. The only person Yolanda Merritt was able to identify as having been in the Tahoe when it drove past her house was Mr. Treaudo. All the evidence and testimony points to Michael Treaudo being with Arthur Brown when he was shot; only Mr. Treaudo's self-serving testimony and statements gave indication Michael Allen was with them.

The standard of review for sufficiency of the evidence is set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979):

> "A conviction must be based on proof sufficient for any rational trier of fact, when viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime proven beyond a reasonable doubt".

In reviewing the sufficiency of the evidence to support a criminal conviction, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the court to determine whether the evidence is minimally sufficient. A complete reading of the transcript of this trial shows that the state failed to meet the burden of *Jackson v. Virginia*. In *Jackson*, the United States Supreme Court set out the standard by which appellate courts are to review the sufficiency of the evidence in criminal

4 of 11
*State v. Allen*, (Appeal—Certiorari—La. Supreme Ct.)

50

prosecutions:

> "...the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson*, 443 U.S. At 319

This standard was adopted by the Louisiana Supreme Court in *State v. Matthews*, 375 So.2d 1165 (La.1979). Further, in *State v. Rhodes*, 29-207 (La. App. 2 Cir. 1/22/97); 688 So.2d 628 the Court stated:

> The relevant inquiry when reviewing a conviction for the sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard, now legislatively embodied within La.C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. *State v. Combs*, 600 So.2d 751 (La.App. 2d Cir. 1992), *writ denied*, 604 So.2d 973 (La.1992). All evidence, both circumstantial and direct, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.

The evidence in this matter is not sufficient under the *Jackson* standard to satisfy a rational juror beyond a reasonable doubt that Michael Allen was guilty of the murder of Arthur Brown. It was more than sufficient to satisfy a rational juror that Michael Treaudo was involved in the murder of Arthur Brown, and only Mr. Treaudo's testimony implicated Michael Allen.

Michael Treaudo's testimony was not only self-serving, but was also contradictory to testimony presented by other witnesses. In connection with testimony about a shooting that took place in 2004 (erroneously admitted through the Trial Court's ruling on the State's *Prieur* motion, addressed hereinbelow), Mr. Treaudo testified Michael Allen shot at Arthur Brown, who was standing in his doorway. He also testified Mr. Brown exchanged fire with Mr. Allen that day in 2004. (09-28-11, pp. 95,116). Directly to the contrary, Lamyra Henry testified on the day of the 2004 shooting, Arthur Brown was standing across the street from this house, beside her; he had not gun, was not involved in an exchange of gunfire, and was not in the line of fire. (09-27-11,p.55). Tyrone Phillips,

5 of 11
*State v. Allen*, (Appeal—Certiorari—La. Supreme Ct.)

51

whose cousin was shot in the 2004 incident, testified he was standing in the line of fire, and Arthur Brown was nowhere near him. (09-28-11, p. 76).

Sgt. Nicholas Gernon of the New Orleans Police Department testified he participated in the arrest of Michael Treaudo. Mr. Treaudo was arrested at the home of a Ms. Woolridge, where he was found sitting on her couch. In the couch, under the cushion on which Mr. Treaudo had been sitting, police found a handgun, cleaning oil and a cell phone. Ms. Woolridge was unaware of the presence of the gun. (09-27-11, pp. 112-6). Mr. Treaudo claimed the gun was not his, and that he never saw a gun retrieved from the sofa on the day of his arrest. (09-28-11, pp. 108-9).

All the evidence presented at trial points undeniably to the victim, Arthur Brown, being in the company of Michael Treaudo when he was shot. No physical evidence links Michael Allen to the shooting. No one other than Michael Treaudo identified Michael Allen as having been present when the shooting occurred. Although Michael Treaudo received the benefit of a plea bargain, in which he pled guilty to manslaughter and received only a seven-year sentence, the evidence presented at the trial of this matter implicates Mr. Treaudo as Arthur Brown's Killer, not Michael Allen. There is not sufficient evidence to support a conviction of Michael Allen for any involvement in the death of Arthur Brown.

### ARGUMENT ON ASSIGNMENT OF ERROR NUMBER TWO

**The Fourth Circuit Erred In Sustaining The Trial Court's Exclusion Of Evidence Favorable To Defense.**

### LAW AND ARGUMENT

The Fourth Circuit erred in sustaining the trial court's exclusion of evidence favorable to defense. At the conclusion of the presentation of the State's evidence, trial counsel for Mr. Allen attempted to introduce evidence of a prior conviction and criminal history of Jacque Wayne Charles. According to the testimony of Michael Treaudo, Mr. Charles was one of the individuals involved in the 2004 shooting, along with Mr. Allen. (09-28-11, pp. 116-9). Mr. Treaudo denied Mr. Charles was involved in the murder of

6 of 11
*State v. Allen*, (Appeal—Certiorari—La. Supreme Ct.)

52

Arthur Brown, but the defense intended to introduce the evidence of Mr. Charles's criminal history in order to present him as a possible co-conspirator with Mr. Treaudo in the killing of Arthur Brown. (09-28-11, pp. 155-6). The Trial Court stated no reason, on the record, for its refusal to permit Mr. Allen to present evidence of Mr. Charles's criminal history and possible involvement in Arthur Brown's death.

"The Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 16, of the Louisiana Constitution guarantee the criminally accused a meaningful opportunity to present a complete defense." *State v. Dressner*, 08-1366 (La. 07/06/10); 45 So.3d 127,137, citing *State v. Blank*, 04-0204 (La. 4/11/07), 955 So.2d 90,130, cert. Denied, 552 U.S. 994 (2007). Given the record's silence, in this matter, as to the Trial Court's reasoning in denying Mr. Allen the right to present his evidence, and the fact Mr. Allen was prejudiced by the Trial Court's refusal to permit him to present a defense, this Honorable Court should remand this matter to the Trial Court for a determination of the Trial Court's reasoning in excluding the evidence in question. In the event, the Trial Court's reasoning is not supported by the law and evidence, this Honorable Court should overturn Mr. Allen's conviction, and remand this matter for a new trial in which Mr. Allen will be permitted to present evidence in his defense.

### ARGUMENT ON ASSIGNMENT OF ERROR NUMBER THREE

**The Fourth Circuit Erred Sustaining The Trial Court's Finding That The Prieur Evidence Was Not Improperly Admitted**

The Fourth Circuit erred in sustaining the trial court's finding that the Prieur evidence was not improperly admitted. Specifically, in hearings on August 11 and 18, 2011, the Trial Court determined evidence of Mr. Allen's involvement in the 2004 shooting incident was admissible. At trial, evidence regarding that incident was presented in the form of testimony from Detective John Duzac (who investigated the incident), 911 operator Yolanda Haynes, Lamyra Henry, Tyrone Phillips and Michael Treaudo. Michael Allen was not convicted; the record is unclear as to who the victim even was. Det. Duzac's testimony indicated the victim was Tyrone Phillips; Mr. Phillips's testimony

7 of 11
*State v. Allen*, (Appeal—Certiorari—La. Supreme Ct.)

53

indicated the victim was his cousin Jonathan. (09-27-11 p. 15; 09-28-11, p. 67). Det. Duzac implied the lack of a conviction was due to Hurricane Katrina, although the incident was in July, 2004, and Katrina did not strike New Orleans until August, 2005. (09-27-11, pp. 5,17).

The evidence regarding the 2004 incident was not necessary to avoid depriving the State's case of "narrative momentum and cohesiveness". *See State v. Gattis*, 36,661 (La.App. 2 Cir. 03/14/03), 839 So.2d 1258 *writ denied*, 872 So.2d 519 (La. 5/14/04), *cert. denied*, 2005 U.S. LEXIS 2542 (U.S., 3/21/05). Generally, evidence of criminal offenses, other than the offense being tried, is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. *State v. McDermitt*, 406 So.2d 195,200 (La.1981). Thus, to avoid this unfair inference that a defendant committed the crime charged simply because he is a person of bad character, other crimes evidence is inadmissible unless it has an independent relevancy besides merely showing a criminal disposition. *State v. LaFleur*, 398 So.2d 1074,1080 (La.1981). La. C.E. 404(B) provides, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.

In order to be admissible, the extraneous offense must meet several tests:

(1) There must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith. State v. Prieur, 277 So.2d 126 (La. 1973);

(2) The modus operandi employed by the defendant in both the charged and uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person. *State v. Jackson*, 352 So.2d 195 (La. 1977); *State v. Lee*, 340 So.2d 1339,1345 (La. 1976);

(3) The other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. *State v. Frederick*, 340 So.2d 1353 (La. 1976);

(4) The other crimes evidence must tend to prove a material fact genuinely at issue; *State v. Ledet*, 345 So.2d 474 (La. 1977);

54

(5) The probative value of the extraneous crimes evidence must outweigh its prejudicial effect. *State v. Sutfield*, 354 So.2d 1334 (La. 1978); *Jackson*, 352 So.2d at 195.

In this case, there was no "clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith." *See State v. Prieur*, supra. The testimony presented regarding the incident differed widely from one witness to another, with one witness placing Arthur Brown across the street from the shooting and not involved, and another placing him in the line of fire and shooting back. There was not a commonality of *modus operandi*—the 2004 incident involved a drive-by-shooting, while the killing of Arthur Brown took place under completely different circumstances. The evidence of the 2004 incident was not substantially relevant for any purpose other than to demonstrate to the jury what a "bad man" Michael Allen was, if he was involved in the 2004 incident. The 2004 incident did not tend to prove a material fact genuinely at issue —the only material fact genuinely as issue was whether Michael Allen was involved in the death of Arthur Brown, and nothing about the 2004 shooting tended to prove or disprove Mr. Allen's involvement. Finally, and most importantly, the probative value of the evidence of the 2004 incident did not outweigh its prejudicial effect. On the contrary, the prejudicial effect of the evidence greatly outweighed its probative value, especially given the paucity of evidence linking Mr. Allen to Arthur Brown's demise.

The Trial Court erred in permitting the State to inflame the jury with evidence of an unproven incident in 2004. By admitting that evidence, the Trial Court permitted the State to portray Mr. Allen as a "bad man," and caused him severe prejudice. This Honorable Court should not uphold a conviction tainted by the improper introduction of *Prieur* evidence.

## CONCLUSION

The evidence presented at Michael Allen's trial was not sufficient to support a conviction for second degree murder. All the evidence pointed clearly to Michael Treaudo's involvement, but only Mr. Treaudo's self-serving testimony actually implicated

55

Mr. Allen. Further, the Trial Court erred in refusing to permit Mr. Allen to present a

defense in this matter, in the form of the criminal history of Jacque Charles and his

possible involvement in the death of Arthur Brown. The Trial Court also erred in

permitting the State to introduce evidence regarding the 2004 incident, which evidence

should have been excluded under *Priaur* and its progeny.

Respectfully Submitted:

*Michael Allen*

Michael Allen DOC #575625
Main Prison Complex, Hickory Hall-4
Louisiana State Penitentiary
Angola, La. 70712

18 of 11
*State v. Allen*, (Appeal—Certiorari—La. Supreme Ct.)

56.

## CERTIFICATE

I, Michael Allen , hereby certify that the foregoing Writ of Certiorari has been forwarded to the Office of the District Attorney, Matthew C. Kirkham, ADA, 619 White Street, New Orleans, La. 70119, by placing a copy of the same in the prison mailbox, postage prepaid.

Done this __4__ day of _December_____, 2013, in Angola, Louisiana, 70712.

_Micheal Allen_____
Micheal Allen, pro se

57

140 So.3d 1174, 2013-2994 La. 5/30/14, State v. Allen. (La. 2014)

Page 1

**\*6348 140 So.3d 1174**

2013-2994 La. 5/30/14

Supreme Court of Louisiana.

STATE of Louisiana
v.
Michael ALLEN.

No. 2013-KO-2994.

May 30. 2014.

Prior report: La.App., 129 So.3d 724.

In re Allen, Michael--Defendant; Applying For Writ of Certiorari and/or Review, Parish of Orleans, Criminal District Court Div. J, No. 490-990; to the Court of Appeal, Fourth Circuit. No. 2012-KA-1118.

Denied.

Appendix "C-4"

© 2018 Thomson Reuters. No claim to original U.S. Govt. works.

58

# STATE OF LOUISIANA
## UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

STATE ex rel MICHAEL ALLEN
NAME OF PETITIONER

No. _____
(to be filled in by the clerk)
CRIMINAL DISTRICT COURT

PARISH OF ORLEANS
STATE OF LOUISIANA

VS.

LOUISIANA STATE PENITENTIARY
Place of Confinement

N. BURL CAIN, Warden
CUSTODIAN (Warden, Superintendent, Jailor, or
authorized person having custody of petitioner)

Please serve CUSTODIAN and LEON A. CANNIZZARO JR., DISTRICT ATTORNEY
PARISH OF ORLEANS , STATE OF LOUISIANA

## INSTRUCTIONS – READ CAREFULLY

(1) This petition must be legibly written or typed, signed by the Petitioner and sworn to before a notary public or institutional officer authorized to administer an oath. Any false statement of a material fact may serve as the basis for a criminal prosecution. All questions must be answered concisely in the proper space on the form. Additional pages are not permitted except with respect to the facts which you rely upon to support your claims for relief. No citation of authorities or legal arguments are necessary.

(2) Only one judgment may be challenged in a single petition except that convictions on multiple counts of a single indictment or information may be challenged in one petition.

(3) YOU MUST INCLUDE ALL CLAIMS FOR RELIEF AND ALL FACTS SUPPORTING SUCH CLAIMS IN THE PETITION.

(4) When the petition is completed, the original must be mailed to the clerk of the district Court in the parish where you were convicted and sentenced.

(5) You must attach official documentation showing your sentence and the crime for which you have been convicted. You may obtain that documentation from the clerk of Court of the district Court of the parish where you were sentenced or from the institution where you are confined. If that documentation is not attached; you must allege that steps were taken to obtain it.

(6) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

## PETITION

1. Name and location of the court which entered the judgment of conviction challenged
CRIMINAL DISTRICT COURT, PARISH OF ORLEANS, SECTION "J",2700 TULANE AVENUE
NEW ORLEANS, LOUISIANA 70119.

2. Date of judgment of conviction   SEPTEMBER 28, 2011

3. Length of sentence  Life without the benefit of probation, parole or suspension of sentence.

4. Nature of offense involved (all counts)   ONE (1) COUNT, SECOND-DEGREE MURDER IN
VIOLATION of LSA-R.S. 14:30.1

5. What was your plea? (check one)

(a) Not guilty ( x )

(b) Guilty ( )

(c) Not guilty and not guilty by reason of insanity ( )

Appendix "D"

59

1

If you entered a guilty plea to one or more counts and not guilty to other counts, give details:

_____ N/A _____
_____ N/A _____
_____ N/A _____
_____ N/A _____

(d) Name and address of the lawyer representing you at your plea (if you had no lawyer, please indicate)
Eric Malveaux Esq., Orleans Public Defender, 2601 Tulane Ave., 7th Floor, New Orleans, LA. 70119   .

(e) Was the lawyer appointed ( x ) or hired ( )?
(check one)

6.  Kind of trial:  (check one)

(a) Jury ( x )

(b) Judge only ( )

7.  (a) Name and address of the lawyer representing you at your trial:
Eric Malveaux Esq., Orleans Public Defender 2601 Tulane Ave. 7th Floor, New Orleans, LA. 70119.

(b) Was the lawyer appointed ( x ) or hired ( )?
(check one)

8.  Did you testify at the trial?  Yes ( ) No ( X )

9.  (a) Give the name and address of the lawyer who represented you at sentencing for the conviction being attached herein.
Eric Malveaux Esq.,  Orleans Public Defender 2601 Tulane Ave. 7th Floor, New Orleans, LA. 70119.
_____
_____

(b) Was the lawyer appointed ( x ) or hired ( )?

10. Did your appeal from the judgment of conviction?
Yes ( x ) No ( )

11. If you did appeal, give the following information:

(a) Citation, docket number, and date of written opinion by the appellate court (if known)
No.2012-KA-1118 Fourth Circuit Court of Appeal (1120/2013); No. 2013-KO-2994 Supreme Court of Louisiana (05/30/2014).

(b) Name and address of lawyer representing you on appeal:  PEGGY J. SULLIVAN, Louisiana Appellate Project, P.O. Box 2806 Monroe, Louisiana 71207.
_____
_____

(c) Was the lawyer appointed ( X ) or hired ( )?
(check one)

12. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court?
Yes ( ) No ( x )

13. If your answer to 12 if "yes", give the following information:

(a)    (1) Name of court _____ N/A _____

60

(2) Nature of proceeding _____ N/A _____
_____

(3) Claims raised _____ N/A _____
_____ N/A _____
_____ N/A _____
_____ N/A _____
_____ N/A _____
_____ N/A _____

(4) Did you receive an evidentiary hearing on your application?
    Yes ( ) No ( )N/A

(5) Was relief granted or denied? _____ N/A _____

(6) Date of disposition ____ N/A _____

(7) Citation of opinion (if known) _____ N/A _____

(8) Name and address of lawyer representing you
    (if none, so state):
    _____ N/A _____

(9) Was the lawyer appointed (n/a ) or hired (n/a )?
    (check one)N/A

(b) As to any second application give the same information:

(a)    (1) Name of court _____ N/A _____

       (2) Nature of proceeding _____ N/A _____
       _____

       (3) Claims raised _____ N/A _____
       _____ N/A _____
       _____ N/A _____
       _____ N/A _____
       _____ N/A _____
       _____ N/A _____

       (4) Did you receive an evidentiary hearing on your application?
           Yes ( n/a ) No ( n/a )

       (5) Was relief granted or denied? ____ N/A _____

       (6) Date of disposition _____ N/A _____

       (7) Citation of opinion (if known) ____ N/A _____

       (8) Name and address of lawyer representing you
           (if none, so state):
           _____ N/A _____
           _____ N/A _____

       (check one) Yes ( n/a )   No (n/a )

(c) Have your filed any other applications for post-conviction relief with respect to the
challenged conviction? Yes ( ) No ( x )N/A

If "yes", set forth the details (as above) on separate paper and attach.

(d) Did you appeal or seek writs or review from the denial of any post-conviction application?

61

(1) First petition, etc. Yes ( ) No ( X )N/A

(2) Second petition, etc. Yes ( ) No (X )N/A

(e) If you did not appeal or seek writs from the denial of any post-conviction application, explain briefly why you did not:

| N/A |
| N/A |
| N/A |

(f) Name of the lawyer who represented you on appeal from the denial of any post-conviction application [if none, so state]:

(1) First petition _____ N/A _____

(2) Second petition _____ N/A _____

## CLAIMS FOR RELIEF

State concisely facts supporting your claim that you are being held unlawfully. If necessary, you may attach extra pages stating additional claims and supporting facts. Do not argue points of law.

The following is a list of those claims, and only those claims, that may provide you with grounds for relief:

(1) Your conviction was obtained in violation of the Constitution of the United States or the State of Louisiana;

(2) The Court exceeded its jurisdiction;

(3) Your conviction or sentence subjected you to double jeopardy;

(4) The limitations on prosecution had expired;

(5) The statute creating the offense for which you were convicted and sentenced is unconstitutional;

(6) The conviction or sentence constitute the ex post facto application of law in violation of the Constitution of the United States or the State of Louisiana.

**A REMINDER: THE ABOVE LIST CONTAINS ONLY THOSE CLAIMS THAT YOU MAY RAISE FOR RELIEF. YOU MUST SET FORTH ALL OF YOUR COMPLAINTS ABOUT YOUR CONVICTION IN THIS APPLICATION. YOU MAY BE BARRED FROM PRESENTING ADDITIONAL CLAIMS AT A LATER DATE. Remember that you must state the FACTS upon which your complaints about your conviction are based. MERE CONCLUSORY ALLEGATIONS WILL NOT SUFFICE.**

### REPETITIVE APPLICATIONS

The above claims may not provide grounds for relief if any of the following applies to you:

(1) Unless required in the interest of justice, any claim for relief which you fully litigated in an appeal shall not be considered.

(2) Any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction may be denied by the Court.

(3) Any claim which you raised in the trial Court and inexcusably failed to pursue on appeal may be denied by the Court.

(4) A successive application may be dismissed if it fails to raise a new or different claim.

(5) A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.

This application will provide space for you to explain the reasons why you failed to raise your claims in the proceedings leading to conviction, or failed to urge the claim on appeal, or failed to include the claim in a prior application.

### CLAIM I

Claim:   Petitioner was denied his rights under the Fourth Amendment to the United States Constitution, and Louisiana Constitution Article 1, Section 13 against unreasonable search and seizure where police failed to establish constitutionally sufficient probable cause before arresting him.

62

(a) Supporting FACTS (tell your story briefly without citing cases or law):
Petitioner asserts that New Orleans Police Department detectives failed to establish by facts and evidence any proof corroborating the information alleged by its witnesses to the crime sufficient enough to meet the constitutional requirements under the Fourth Amendment to the United States Constitution, and Louisiana Constitution,1974, Article 1, Sections 2 and 13.
     SEE ATTACHED MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ADDITIONAL FACTS AND EVIDENCE.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:
Eric Malveaux Esq. Orleans Public Defender 2601 Tulane Ave. 7th Floor, New Orleans, LA. 70119.
_____
_____
_____
_____

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:
                    Factual Record was not complete during direct appeal
                         proceedings.
_____
_____
_____

## CLAIM II

Claim:  Petitioner claims the in-court and out-of-court identification process used by police violated his right to a fair trial and due process of law under the Fourteenth Amendment to the United States Constitution, and Louisiana Constitution 1974, Article 1, Section 2, and 16, where no independent corroboration to the identification was produced in his trial.
_____

(a) Supporting FACTS (tell your story briefly without citing cases or law):
    Petitioner asserts he was denied a fair identification proceeding where New Orleans Police Department detectives used a prior arrest to suspect him of the present crime where the alleged witness did not provide them any identification evidence until the day after his arrest for the present violations.
SEE ATTACHED MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ADDITIONAL FACTS AND EVIDENCE.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:
Eric Malveaux Esq. Orleans Public Defender, 2601 Tulane Ave 7th Floor, New Orleans, LA. 70119.
_____
_____
_____

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:
 Factual record was not complete during direct appeal proceedings.
_____
_____

## CLAIM III

Claim:  Petitioner was denied his Sixth Amendment to the United States Constitution, and Louisiana Constitution 1974, Article 1, section 13 rights to the assistance of counsel before and during his trial where counsel failed to investigate other available avenues of defense, or obtain evidence and witnesses in his preparations for trial.
_____

*63*

(a) Supporting FACTS (tell your story briefly without citing cases or law):
Petitioner asserts he was denied the assistance of counsel where counsel failed to investigate the circumstances of his case, or interview potential witnesses for his defense once counsel were made aware of their testimony as to his whereabouts on the day in question SEE ATTACHED MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION FOR ADDITIONAL FACTS AND EVIDENCE.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:
Eric Malveaux Esq. Orleans Public Defender 2601 Tulane Ave. 7th Floor, New Orleans, LA. 70119.

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:
Factual record was not complete during direct appeal proceedings.

You may attach additional pages getting forth the required information (above) if additional claims are asserted.

A. Do you have in a state or federal court any petition or appeal no pending as to the judgment challenged? Yes ( ) No ( x ) If "yes", name the court
N/A

B. Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged? Yes ( ) No ( X )

(1) If so, give name and location of court which imposed sentence to be served in the future:
N/A

(2) Give date and length of sentence to be served in the future:
N/A

(3) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ( ) No ( X )

C. If a copy of the court order sentencing you to custody is not attached, explain why.
SEE EXHIBIT "A" of   POST-CONVICTION RELIEF APPLICATION

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled.

Signature of Petitioner

_____ day of _____, 2015.

64



## APPLICATION FOR APPOINTMENT OF COUNSEL

I am unable to employ counsel to represent me in this matter because I have no assets or funds except:

NONE

(Write "None" above if you have nothing; otherwise, list your assets including funds in prison accounts.)

_____
Signature of Petitioner

65

AFFIDAVIT

STATE OF LOUISIANA PARISH OF WEST FELICIANA

I, MICHAEL ALLEN, being first duly sworn says that he has read the foregoing application for post-conviction relief and swears or affirms that ll of the information therein is true and correct. He further swears or affirms that he is unable to employ counsel because he has no assets listed above. [Delete reference to appointment of counsel if inapplicable.]

_____
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this _____ day
of _____, 2015.


_____
Notary Public or other person authorized to
administer an oath.

*66*

IN THE

CRIMINAL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA

No._____

STATE EX REL. MICHAEL ALLEN

vs.

STATE OF LOUISIANA

MEMORANDUM OF OF LAW IN SUPPORT OF APPLICATION

FOR POST-CONVICTION RELIEF

RESPECTFULLY SUBMITTED:

_____

MICHAEL ALLEN
#575625
CBC U/L #8
LOUISIANA STATE PENITENTIARY
ANGOLA, LOUISIANA 70712

67

 

TABLE OF CONTENTS

# TABLE OF CONTENTS:

TABLE OF AUTHORITIES.................................................................................................ii

MEMORANDUM IN SUPPORT.........................................................................................1

JURISDICTION....................................................................................................................1

STATEMENT OF THE CASE..............................................................................................1

STATEMENT OF THE FACTS............................................................................................2

STATEMENT OF STANDARD FOR PRO SE PLEADINGS.............................................3

CLAIMS................................................................................................................................4

CLAIM ONE.........................................................................................................................4

CLAIM TWO.........................................................................................................................6

CLAIM THREE.....................................................................................................................9

ARGUMENT.......................................................................................................................10

DEPRIVATION OF FEDERAL AND STATE CONSTITUTIONAL RIGHTS.................13

CONCLUSION....................................................................................................................15

CERTIFICATE OF SERVICE............................................................................................16

VERIFICATION..................................................................................................................16

EXHIBITS...........................................................................................................................

68

## TABLE OF AUTHORITIES

## U.S.CONSTITUTION:

Fifth, Sixth, and Fourteenth Amendments to the United States Constitution............................................1

Fourth Amendment to the United States Constitution........................................................................4

Sixth Amendment to the United States Constitution.....................................................4, 10 12, 13,14


## FEDERAL CASES:

Fitzgerald v. Estelle,505 F. 2d 1334 (5th Cir.), cert denied, 442 U.S. 1011 (1975)........................13

Rummel v. Estelle, 590 F.2d 103 (CA5 1979)..............................................................................1

Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957).......................................3

Draper v. United States, 358 U.S. 307, 79 S. Ct. 329, 3L.Ed.2d 327........................................4

Gerstien v. Pugh, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed.2d 54 (1975)..................................5

Giordenello v. United States, 357 U.S. 480, 78 S. Ct. 1245, 2 L. Ed. 2D 1503 (1958)..............5

Haines v. Kerner, 404 U.S. 519, 92 S. Ct.594, 30 L. Ed. 2D 652 (1972).................................3

Hamilton v. Ford, 969 F.2d 1006-11 (11th Cir.1992)...................................................15

Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed.2d 527 (1983);................................4

Manson v. Brathwaite, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed.2d 140 (1977);..........................7

Martinez v. Ryan,_____ S. Ct. 2012 WL 912950 (2012)...........................................11

Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed.2d 401 (1972)..................................9

McMann v. Richardson, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed.2d 763 (1970)..................1

Strouse v. Leonardo, 923 F.2d 548-55 (2nd Cir. 1991)................................................14

U.S. v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed.2d.......................................9

United States v. Alello, 814 F.2d 109, 113 (2nd Cir. 1987)..........................................14

United States v. Childs, 571 F.2d 315 (5th Cir, 1978)(per curiam)....................................14

United States v. Harris, 403 U.S.573, 91 S. Ct. 2075, 29 L. Ed. 2D 723 (1971)........................5

Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2D 799.................................10

Strickland v.Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2D 674 (1984)...............10


## LA. CONSTITUTION:

Article 1,Section 5, of the Louisiana Constitution.......................................................4

69

Article(s) 1.,2,3,13,16,19,20, and 22 of the Louisiana
Constitution..................................................................1

Louisiana Constitution Article 5, Section 16..........................................1

Louisiana Constitution of 1974, Art. 1, Section 16................................12

## STATUTORY PROVISIONS:

Louisiana Code of Criminal Procedure Art. 741 ....................................12

Louisiana Code of Criminal Procedure Article 924..................................1

Louisiana Code of Criminal Procedure Article 930.3(1).............................1

## STATE CASES:

State v. Cisco, 861 So.2d 118, 2001-2723 (La. 1/14/04).............................15

State v. Johnson, 557 So.2d 1030 (La. App. 4 Cir.1990).............................10

State v. Johnson, 759 So.2d 1052, writ denied, 00-1949 (La. 9/21/01), 797 So.2d 60.........……......7

State v. Prudholm, 446 So.2d 729 (La. 1984).......................................10

State v. Reed, 483 So.2d 1278 (La. App. 4 Cir. 1986)..............................10

State v. Sparrow, 612 So.2d 191 (La. App. 4 Cir. 1992.)...........................11

Gibson v. State, 758 so.2d 782 (La. 4/11/00).......................................5

Guillot v. State, 353 So.2d 1005 (La.1977).........................................6

State v. Rodrigue, 437 So.2d 830 (La.1983).........................................5

State v. Chism, 591 So.2d 385 (1991)...............................................7

State v. Lumpkin, 813 So.2d 640 (La. App.1 Cir. 3/28/02)...........................4

State v. Mena, 344 So.2d 357 (La. 1976)............................................6

State v. Mena, 399 So.2d 149 (La. 1981)............................................5

State v. Peart, 621 So.2d 780 (La. 1993)..........................................14

State v. Powell, 677 So.2d 1008 (La. App.2d Cir.. 4/12/96).........................7

State v. Simms, 571 So.2d 145 (La. 1990)...........................................5

State v. Welsh, 371 So.2d 1314 (La.1979)...........................................5

State of Louisiana v. Michael Allen, No. 490-990, Criminal District Court, Parish of Orleans (2012)....9

 

## REFERENCE:

An Assessment of Trial-Level Defense Services in Louisiana 40 years after Gideon............................12

71

iv

CRIMINAL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

State ex rel. Michael Allen                          No.

Vs.                                                 Filed:_____

State of Louisiana                                  _____

Louisiana State Penitentiary                        Clerk of Court

---

## MEMORANDUM IN SUPPORT OF APPLICATION FOR POST-CONVICTION RELIEF AND REQUEST FOR APPOINTMENT OF COUNSEL, AND EVIDENTIARY HEARING

NOW INTO COURT COMES, Michael Allen, petitioner hereinafter, seeking relief from a judgment by a state court. In support of the forthcoming claims pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Articles 1.,2,3,13,16,19,20, and 22 of the Louisiana Constitution and other laws set forth below, petitioner avers that post-conviction relief should be granted in the case being presented on the grounds that the conviction was obtained in violation of the United States Constitution; the Constitution of the State of Louisiana, and the Louisiana Code of Criminal Procedure Article 930.3(1).

Petitioner hereby avers that the constitutional claims presented and urged before this Court require a granting of the relief sought. In the event this Court concludes that the facts and evidence warrant further development prior to resolution, petitioner respectfully requests that an evidentiary hearing be ordered for those purposes. Petitioner also moves this Court to grant leave for supplementation and/or amendments to the application by himself or the attorney appointed in this case if required.

### JURISDICTION

Petitioner Michael Allen, seeks to exercise his right by virtue of the Louisiana Constitution, which gives this Court standing to review this application for Post-Conviction Relief pursuant to Louisiana Code of Criminal Procedure Article 924; Louisiana Constitution Article 5 section 16.

### STATEMENT OF THE CASE

By Bill of Indictment filed October 1, 2009, the State of Louisiana charged Michael Allen and Michael Treaudo with the second degree murder of Arthur Brown. On January 26, 2010, the Trial Court

1.

*72*



heard the State's Prieur motion on August 11, 2011; and, on August 18, 2011, the Court ruled admissible evidence of Mr. Allen's involvement in a shooting in 2004. Jury trial commenced on September 27, 2011, at the conclusion of which the jury found Mr. Allen guilty as charged of second degree murder. The Trial Court refused to permit Mr. Allen to present evidence, in his case in chief, of the criminal history of Jacque Wayne Charles, who Mr. Allen was alleging could have been a co-conspirator with Michael Treaudo. On October 14, 2011, the Trial Court sentenced Mr. Allen to life in prison without the benefit of probation, parole or suspension of sentence and denied his motion for post-verdict judgment of acquittal. A motion for appeal was also filed on October 14, 2011; and, the Louisiana Appellate Project, through undersigned counsel, was appointed to represent Mr. Allen for purposes of appeal. On November 20, 2013, the Court of Appeal Fourth Circuit, denied affirmed the Trial Court conviction. (No. 2012-KA-1118). Mr. Allen sought writs to the Louisiana Supreme Court. The Supreme Court denied the writ on May 30, 2014. This Post-Conviction Relief Application follows the above cited court action.

## STATEMENT OF THE FACTS

On June 7, 2009, Michael Treaudo borrowed his girlfriend's Chevy Tahoe and stated he was going to pick up Michael Allen. Mr. Treaudo testified that after he picked up Mr. Allen, they proceeded to Arthur Brown's residence. ( Tr. Rec. at Pp.86). Nicole Jackson, Arthur Brown's  girlfriend and the mother of his child, testified that she went outside and saw the Tahoe and that Michael Treaudo asked her where "Rat" ( Arthur Brown's nickname) was. Ms. Jackson also testified that Mr. Treaudo was the only person she saw in the Tahoe at that time. (Tr Rec. Pp. 36-7). She then went inside and told " Rat" who was asking for him; and, "Rat" went outside. When she went back outside, her son told her "Rat" left in the Tahoe, and that was the last time she saw him alive. (Tr. Rec. Pp. 31).

Mr. Treaudo, who testified at Mr. Allen's trial told the jury he had a conversation with Mr. Allen the day before, in which Mr. Allen indicated he believed "Rat" had picked up two-hundred dollars Mr. Allen dropped. He also testified he and Mr. Allen picked " Rat" up to go to a friend of "Rat's" and buy some marijuana. (Tr. Rec. Pp.80-86). The stop at "Rat's" friend's house was fruitless. Mr. Treaudo testified the three went next to his uncle's house in search of marijuana, however, his uncle was not home. According to Mr. Treaudo's testimony, Mr. Allen suggested they drive to New Orleans East so he , Mr. Allen , could take some money to a girl. They drove through a neighborhood with only one way in or out. (Tr. Rec. Pp. 88-90. When they got to the point where Mr. Allen told Mr. Treaudo to stop, Mr.

73

Treaudo stated he was on the phone speaking to his friend, Latoria Carter. Mr. Treaudo further testified that when he, Mr. Allen ,and "Rat" got out of the vehicle, he told his friend Ms. Carter he would call her back. At that point Mr. Treaudo stated he walked around the back of the Tahoe and saw Mr. Allen shoot "Rat" in the head. He further stated that as he ran to get back into the Tahoe he heard four more shots. (Tr. Rec. Pp. 90-1). Arthur "Rat" Brown died of multiple gunshot wounds to the head.

Yolanda Merritt, who lived in the neighborhood where the shooting took place, testified she saw a teal Chevy SUV drive past her house shortly after she heard sounds she took for gunshots. (Tr. Rec. Pp.49-50). She noticed the Chevy because the it was out of place with vehicles which normally frequent her neighborhood. When presented with photographic lineups containing Mr. Treaudo and Mr. Allen, she identified Mr. Treaudo, but not Mr. Allen. (Tr. Rec. Pp. 55-6).

New Orleans Police Department Detective Kevin Burns testified no physical evidence connected Mr. Allen to the murder of Arthur "Rat" Brown. (Tr. Rec. Pp. 109). Aside from Mr. Treaudo's testimony, no other testimony placed Mr. Allen with Mr. Treaudo on the day of the murder. Ms. Jones testified Mr. Treaudo told her he was going to pick up Mr. Allen, but could not provide any evidence that he actually did so. (Tr. Rec. Pp. 42). Lamyra Henry, the mother of another of Mr. Brown's children, testified she talked spoke with Mr. Brown on the phone just minutes before his death. She stated that Mr. Brown told her he was with "Son" and "Mike". (Tr. Rec. Pp.42-6). Although she admitted she knew more than one "Mike", she stated that the "Mike" Mr. Brown meant was Michael Allen.

Latoria Carter, who was on the phone with Mr. Treaudo, testified the call did not disconnect when Mr. Treaudo stated he would call her back. She testified she heard the shots, and a voice she believed to be Mr. Treaudo's ask, "Man, what the f**k you did that for?" but she could not identify the other voice she heard. (Tr. Rec. Pp. 129-130).

## STATEMENT OF STANDARD FOR PRO SE PLEADINGS

The law, as it presently exists does not hold a pro se prisoner to the high standards in which attorneys are held to. Further, the pro se prisoner is to be given the benefit of any favorable doubts regarding his pleadings as the inability to sufficiently and skillfully draft his arguments are forever present. In Haines v. Kerner, 404 U.S. 519, 92 S. Ct.594, 30 L. Ed. 2D 652 (1972); the Supreme Court opined: "A pro se complaint, "however inartfully pleaded," must be held to less stringent standards that formal pleadings drafted by lawyers and, can only be dismissed for failure to state a claim if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id., at 520-52, 92 S. Ct. At 596, quoting Conley v. Gibson, 355 U.S. 41, 78

3.

74

S. Ct. 99, 2 L. Ed.2d 80 (1957).

Under this settled principle of law, this Court is duty bound to permit the development of the underlying facts of this case. Petitioner, hereby invokes his right to be held to a less stringent standard which precedent of the Supreme Court of the United States in the above cited cases allow.

## CLAIMS

1. Petitioner Allen asserts the affidavit submitted in support of the arrest warrant application is constitutionally insufficient to support probable cause to arrest him for the charge of second degree murder in this case.

2. Petitioner Allen asserts the in-court and out-of-court identification procedure used by police created a substantial likelihood of misidentification and should have inadmissible in his trial.

3. I. Petitioner Allen asserts he received ineffective assistance at trial as his defense attorney failed to put the prosecutor's case through the adversarial process as envisioned by the Sixth Amendment of the Constitution and the right to counsel.

II. Petitioner Allen also asserts he is the victim of Systematic Ineffective Assistance of Counsel as set forth in the Assessment of Trial Level Defense Services in Louisiana, 40 years after Gideon v. Wainwright.

## CLAIM ONE

Petitioner Allen asserts that his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 5, of the Louisiana Constitution prohibit unreasonable searches and seizures and provide that a warrant may not be issued without probable cause. E. g. Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed.2d 527 (1983); Draper v. United States, 358 U.S. 307, 79 S. Ct. 329, 3L.Ed.2d 327; State v. Lumpkin, 813 So.2d 640 (La. App.1 Cir. 3/28/02). Both Federal and State Constitutions provide, on the matter of unreasonable search and seizure, in pertinent part: "No warrants shall issue, But upon probable cause, supported by oath or affirmation..."

## ARGUMENT

In the instant case, petitioner Allen argues that detective Kevin Burns Jr., of the New Orleans Police Department's Homicide Division, arrest warrant affidavit contained no affirmative allegation that the witnesses he relied on demonstrated they spoke with any personal knowledge of the crime, or the identity of the perpetrator, sufficiently to form a basis upon which a finding of probable cause could be made. Also, the affiant to the arrest warrant failed to indicate in his report, that his independent investigation produced any source's of information, which led him to believe that the information was

4.

*75*

reliable.

During the Motion to Suppress the Evidence and Identification hearing, detective Burns testified that he received information from a party whom was listed on the victim's cell phone as a "favorite five," and, that the victim left with an individual named Michael Treaudo. (Supp. Hearing Pp.7). That person further stated that "Michael Treaudo was the driver of a "teal" blue Chevy Tahoe." A witness whom lived on the scene of the shooting on 5700 Red Maple, spoke with detective Burns the following day. She stated that she heard what she "believed to be gunshots, and that the gunshots came from inside the vehicle." The witness further stated that when she" looked out of her window, she observed a "blue green" Chevy Tahoe being driven by a black male, small in size, wearing a white t-shirt and talking on a cell phone." The detective then acknowledged that this was the same witness whom gave police the lead on the case the same day of the murder.(Supp. Hearing Pp. 20). Detective Burns testified that he then showed this witness a photographic lineup which contained a picture of Michael Allen. However, the witness could not identify Allen as a person in the Chevy Tahoe. (Supp. Hearing Pp. 21). Several witnesses testified at the suppression hearing including the owner of the Chevy Tahoe which was alleged to be involved in the murder. (Supp. Hearing Pp.4-102). None of those witnesses identified Michael Allen as being in the Chevy Tahoe before or during the murder of Arthur Brown.

Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and which he has reasonable and trustworthy information sufficient to justify a person of average caution in the belief that the accused has committed an offense. Petitioner Allen argues that detective Kevin Burns failed to establish any corroborating evidence to reasonably support his sources veracity, reliability or basis of knowledge to support his assertion to the magistrate judge that probable cause to arrest him existed. E. g. Illinois v. Gates, supra; Giordenello v. United States, 357 U.S. 480, 78 S. Ct. 1245, 2L.Ed.2d 1503 (1958); Gibson v. State, 758 so.2d 782 (La. 4/11/00). The determination of probable cause, unlike the determination of guilt at trial, does not require the resolution of conflicting evidence required at trial. The evidence must support a reasonable belief that the person to be arrested has committed a crime. Cf. Gerstien v. Pugh, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed.2d 54 (1975); State v. Rodrigue, 437 So.2d 830 (La.1983); State v. Simms, 571 So.2d 145 (La. 1990).

Petitioner Allen argues that he was arrested June 10, 2009. One day before his co-defendant Michael Treaudo.(See Orleans Parish Criminal Sheriff Arrest Register No. F-08717-09 pgs.1&1.) Thus, Treaudo's confession after his arrest a day later than Allen should be constitutionally insufficient to support probable cause. The Court's have held that admissions of criminal activity carry their own

76

indicia of reliability sufficient to support a finding of probable cause. United States v. Harris, 403 U.S. 573, 91 S. Ct. 2075, 29 L. Ed.2d 723 (1971); State v. Mena, 399 So.2d 149 (La. 1981); State v. Welsh, 371 So.2d 1314 (La.1979); State v. Mena, 344 So.2d 357 (La. 1976). The courts have further held that where a person confesses to a crime, the confession and implication of another is deemed highly credible and more reliable and trustworthy than previous statements disavowing any knowledge of the murder, because confessions are statements against penal interest. See *Mena, 399 So.2d at 152.*

Petitioner Allen asserts that since he was arrested a day before Michael Treando made his confession to police implicating him as the shooter, detective Burns did not possess any facts and circumstances within his personal knowledge to justify a man of average caution in the belief that he has committed or is committing an offense to justify his arrest. Detective Burns did not possess Michael Treando's information before he sought the arrest warrant for Michael Allen, nor did any of the numerous witnesses provide him with any information indicating that Michael Allen was with Treando on the day of the murder. In passing on the validity of an arrest warrant a reviewing court may consider only the information brought to the magistrate judge's attention. In this case, the affidavit to the arrest warrant did not set forth the underlying circumstances necessary to enable the magistrate to independently judge the validity of the information provided by the witnesses to form the conclusion that petitioner Allen committed the crime of murder. The affiant in this matter has nothing in the affidavit to the arrest warrant to support the claim that the information he received from the witnesses was credible or reliable. The probative value of the report should be assessed by the magistrate on the information provided to him, and whether the affiant had any independent knowledge from his investigation to support probable cause to arrest the petitioner. Not by an overzealous officer trying to solve the crime. Wherefore, petitioner Allen asserts that this Court should find based upon the above facts and evidence that the Police in this matter lacked constitutionally sufficient probable cause to arrest him.

## CLAIM TWO

Petitioner Allen argues that under the totality of the circumstances, the identification evidence given by State witnesses should have been ruled inadmissible by the trial court as the evidence failed to show that the procedure used by police negated every reasonable probability of misidentification.

### ARGUMENT

A lineup is unduly suggestive if the procedure focuses attention on the defendant. E. g. State v.

77

Guillot, 353 So.2d 1005 (La.1977). A strict identity of characteristics is not required, but a sufficient resemblance to reasonably test the identification is necessary. Id. Even if the procedure used was suggestive, an identification will be admitted if, under the totality of the circumstances, the identification is found to be reliable. See *State v. Johnson*, 759 So.2d 1052, writ denied, 00-1949 (La. 9/21/01), 797 So.2d 60.

Petitioner Allen contends that the identification of him as the person who shot Arthur Brown should have been ruled inadmissible as none of the witnesses relied on by police described him as the person whom they saw shoot Mr. Brown. In the instant case, State witness Yolanda Merritt testified that on Sunday morning, June 7, 2009, she heard what she "believed to be gunshots." She then observed "a "teal" colored SUV drive through her neighborhood in New Orleans East occupied by two Black males." (Tr. Rec. Pp.46-50). Witness Merritt testified that she was able to "get a good look at the driver and the passenger of the SUV." She gave a description to police indicating the driver was "a small built Black male, and the passenger was a bigger built guy." (Tr. Rec. at 51). Also, that "the driver of the SUV was talking on a cell phone with his head turned toward the passenger." Witness Merritt then testified that she "felt something was strange about the vehicle and that she wrote down the last three digits of the license plate which was "709." She also testified that she noted the time, which she stated was "12:33 p.m., and, the color and make of the SUV, "teal," and "Chevy" on her "sticky tab" note pad."(Tr. Rec. at 52-3).

Subsequently, members of the New Orleans Police Department met with witness Merritt to obtain any identification information on the two suspects. Witness Merritt was able to tentatively identify the driver of the SUV, but not the passenger.(Tr. Rec Pp. 55-60).

When a defendant claims that he is not the person who committed the crime, the rationale found in Manson v. Brathwaite, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed.2d 140 (1977); should be used to determine the reliability of the identification. The factors to be considered are:

1. the opportunity of the witness to view the criminal at the time of the crime.

2. The witness's degree of attention;

3. the accuracy of his or her prior description of the criminal

4. the level of certainty demonstrated at the confrontation; and

5. the length of time between the crime and the confrontation.

Petitioner Allen argues State witness Merritt, who lives on the scene of the crime, and observed the two occupants of the "teal" colored SUV, failed to identify him as one of the occupiers she saw driving

78

through her neighborhood Sunday, June 7, 2009. See *State v. Powell*, 677 So.2d 1008 (La. App.2d Cir. 4/12/96); State v. Chism, 591 So.2d 385 (1991). Therefore, her identification of him as a suspect in the murder should have been ruled inadmissible by the trial court. Additionally, another witness for the State, Nicole Jackson, testified that "she and Arthur Brown lived together and that Brown is the father of her child." (Tr. Rec. Pp.25-8). She stated that "on June 7,2009, at about 11:00 a. m., her son came inside and said: Mama, Mike want Rat outside." She asked her son "was it "little Mike" which is the "nickname" she knows Michael Treaudo goes by. (Tr. Rec. p.29). Her son replied "yes," and she told "Rat" who it was looking for him. Five minutes later, her son came back inside and told her "Mama, they have a girl outside that want Rat." At that point witness Jackson went outside to see who the girl was. The girl stated something about a cell phone she and "Rat" shared. After she and the girl finished speaking, she turned to go back inside to tell "Rat" what the girl said when "little Michael Treaudo" leaned up in his vehicle and asked "Man, Nicki, where Rat at?"(Tr. Rec. at p.g 30). Witness Jackson testified that she then "went inside and told "Rat" that "Mike" was outside ,"and "Rat" went outside to see what the girl wanted. When "Rat" came back in the house, he started toward the room where witness Jackson was to say something ,stopped, through his hands up like, "Fuck it", and turned around and left. She stated that she "didn't see him ("Rat") anymore after that."

Witness Jackson further testified that the way her house is positioned, she was able "to see the driver's side of the SUV." After "Rat" left the house, witness Jackson stated she "went outside to see where he went." She was informed by some people that "he got into a car". Later on that day witness Jackson's son came running into the house saying "Mom, they got the man calling on the phone saying Rat got shot." "Rat's" sister also called asking her "Nicki, what's going on? Somebody called my phone saying my brother got shot and killed." Witness Jackson told "Rat's" sister "that is probably somebody playing." She then called "Rat's phone where a man answered and informed her "that the person who owns the phone is dead." (Tr. Rec. p.32). She asked the man to describe the person and what he had on. Once the man did so, she "threw the phone down and started hollering." Later that day she met with a detective at her house who showed her a photographic lineup. Witness Jackson stated at trial she was "able to identify a person in the photo lineup." The person she identified as being in the driver's seat of the car which Arthur Brown left her house in was Michael Treaudo. (Tr. Rec. at p. 33).

During the cross-examination of witness Jackson by the defense, Jackson testified that "when she first went outside at 11:00 a. m. she didn't see anyone in the "blue" SUV." It was when she was going back inside that Michael Treaudo called her name and she looked back and noticed him in the driver's

79

seat of the vehicle.(Tr. Rec. p. 36-7). Witness Jackson further stated that she "didn't see Michael Allen in the SUV on June 7, 2009 when "Rat" got into the vehicle and left her house." (Tr. Rec. p. 37).

As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. Petitioner Allen contends that the in-court identification of him by the witnesses for the State should be excluded as evidence as the witnesses made no previous identification at any lineup conducted by police prior to his trial. Cf. U.S. v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed.2d (1967); Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed.2d 401 (1972). The record does not reflect that the identification of petitioner Allen came from an independent source. It appears that police depended on a previous crime in which petitioner was alleged to be involved in 2004 that led them to conclude he was the shooter in the instant matter.  See Transcript of *Prieur Motion:* State of Louisiana v. Michael Allen, No. 490-990, Criminal District Court, Parish of Orleans (2012).

Petitioner Allen asserts that it was not proven that he was the shooter of Arthur Brown on June 7, 2009, and gives these items for consideration:

1. witness Merritt's inability to describe him as the person whom was sitting in the passenger seat of "teal" colored SUV when it drove by her New Orleans East neighborhood on June 7, 2009.

2. the witness's attention seemed to be focused on the driver of the SUV and the fact that it was a "strange" vehicle in her neighborhood.

3. the witness failed to give a prior description of him to police

4. the witnesses admitted at trial that they could not identify the passenger in the SUV.

5. The length of time between the crime and the confrontation did not affect the witnesses inability to identify him as the person in the passenger seat of the SUV.

The association of the driver and passenger with the SUV and the crime was established by means not directly bearing on whether petitioner Allen was the person seen with Michael Treaudo when he, Treaudo, allegedly picked up Arthur Brown in front of Nicole Jackson's residence and subsequently drove to New Orleans East where Mr. Brown was ultimately murdered. Therefore, the identification of petitioner Allen by the State's witnesses in the photographic lineup, and subsequently in court, should have been ruled insufficient, and ultimately inadmissible, as the identification evidence offered by the State to the jury failed to negate every reasonable probability of misidentification.

## CLAIM THREE

I.  Petitioner Michael Allen contends his trial lawyer rendered ineffective assistance where his defense

80

18

10.

counsel failed to investigate the circumstances of his case prior to trial.

II. Petitioner Allen also asserts he is the victim of Systematic Ineffective Assistance of Counsel as set forth in the Assessment of Trial Level Defense Services in Louisiana, 40 years after Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 held that every person accused of a crime, whether state or federal, is entitled to a lawyer at trial.

## ARGUMENT

I. The Sixth Amendment right to counsel is the right to the effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed.2d 763 (1970). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland, supra. In the instant case, petitioner Allen contends that his defense counsel failed to effectively challenge the information received by investigating officer Kevin Burns as to the truth of the identity of the passenger and the shooter as provided by the witnesses police interviewed. Allen argues that the information detective Burns included in his report shows the inability of any of the witnesses whom were questioned by police to identify him as the passenger or the shooter on the day of the murder. Defense counsel had access to this information prior to Allen's trial. Therefore, he should have been prepared to attack the police investigation more thoroughly. At trial, defense counsel's questioning of the state's witnesses revealed that these witnesses merely identified the "nickname" of Michael Allen and Michael Treaudo, instead of whether they observed the defendant's commit the crime. Under the totality of the circumstances, the identification evidence should not have been admissible at petitioner Allen's trial. (Tr. Rec. Pp.103-111). If there is only one plausible line of defense, counsel should conduct a reasonably substantial investigation into that line of defense. Cf. Rummel v. Estelle, 590 F.2d 103 (CA5 1979). In this case, the only question was the identity of the shooter. Thus, counsel should have focused on the key issue of whether anyone could identify his client as the shooter, rather than whether the crime was committed.

Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be

conducted. See *State v. Pradholm*, 446 So.2d 729 (La. 1984); *State v. Johnson*, 557 So.2d 1030 (La. App. 4 Cir. 1990); *State v. Reed*, 483 So.2d 1278 (La. App. 4 Cir. 1986). Petitioner Allen argues that he was prejudiced by his defense counsel's performance before the jury as counsel's focus was not on the key issue of the prosecutor's case, which was the identity of the shooter. Allen asserts that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different, *Strickland, supra*, 466 U.S. At 693, 104 S. Ct. At 2068, *State v. Sparrow*, 612 So.2d 191, (La App. 4 Cir. 1992). Therefore, petitioner Allen was denied a fair trial as his defense counsel failed to perform his professional duties as envisioned under the Sixth Amendment to the United States Constitution.

II. Petitioner Michael Allen herein further requests that an evidentiary hearing is warranted in this matter to address the issue of Conflict of Interest on behalf of the State of Louisiana and an indigent defendant's right to assistance of counsel. This distinct claim of petitioner Allen's trial counsel ineffective assistance compels him to be allowed to have witnesses testify on his behalf (compulsory process). Petitioner Allen hereby requests that appointed counsel effect such subpoenas as deemed necessary for the admissions of fact and the taking of evidence.

It would be preferred that counsel be appointed to assist in the evidentiary proceedings. E.g. *Martinez v. Ryan*, ___, S. Ct. 2012 WL 912950 (2012), Petitioner Allen wishes to employ every viable means available to him to secure the presence of these expert witnesses, this includes the Louisiana Procedure for securing out-of-State witnesses. These witnesses are as follows:

REQUEST FOR SUBPOENAS OF WITNESSES WHOM COULD TESTIFY TO THE TRUTH OF THE ALLEGATIONS SUBMITTED IN PETITIONER'S POST-CONVICTION RELIEF APPLICATION, PLEASE ISSUE SUBPOENAS AD TESTIFICANDUM.

Representatives of:

The National Legal Aid & Defender Association

1140 Connecticut Avenue, NW Suite 900

·Washington, DC 20036

The National Association of Criminal Defense Lawyers

1150, 18th Street, NW Suite 950

Washington, DC 20036

82

11.

[ Persons whom are witnesses from the State of Louisiana or supporting Legislative documents from within the State are in "**bold**" letters below.] The requested witnesses listed below are to include but are not limited to:

> **David J. Carroll,** Director of Research & Evaluations for the Defender Legal Services Division of NLADA; Robert Boruchowitz, NACDL; Fern Laethem, NACDL and Phyllis Subin, NACDL; **Paul Marx,** La. Public Defenders Association; Mr. George Steimel, Governmental Affairs Consulting Firm; Kathryn Jones, NACDL; Ms. Catherine Vanchiere Beane, NACDL; James Boren, B.R. La.; Marsha Oliver, LIDB Staff Attorney; **Jim Looney,** Director of the Louisiana Appellate Project; **Edward Greenlee,** Executive Director of LIDB. Also, likely to be included for subpoena are persons from the previous study by the American Bar Association, Bar Information Program, A Study of the Operation of the Indigent Defense System in the 19th Judicial District, East Baton Rouge, Louisiana, prepared by the Spandenberg Group, October 1992. Also, a Subpoena Duces Tecum is to issue for Louisiana Senate Committee, Room 1, Baton Rouge, Louisiana, April 8, 2003.

Petitioner Allen seeks the presence of these witnesses because they are capable of explaining (in their capacity as Criminal Defense Experts and as authors of or participants in the creation of "An Assessment of Trial-Level Defense Services in Louisiana 40 years after Gideon"), in detail and with precision, just how petitioner Allen was deprived of his right to counsel as an indisputable matter of law and fact. As petitioner Allen at this time hereby invokes his unequivocal right to compulsory process under the *United States Constitution and the Louisiana Constitution of 1974, Art. 1Section 16* and, *Louisiana Code of Criminal Procedure Art. 741* (La. C. Cr. P.) as to those persons whom were actually involved in the compilation of the evidence which proved the Louisiana system of providing representation of the State's Indigent defendant's unconstitutional. For the purposes set forth above, petitioner Allen presents and adopts the whole Report which is attached and labeled here as (Exhibit "G"); "**An Assessment of Trial-Level Defense Services in Louisiana 40 years after Gideon.**" This served to further establish how petitioner Allen was systematically denied his Sixth Amendment right to counsel with all of its foreseeable safeguards intended to protect anyone accused of a crime.

This is consistent with the findings of The **National Legal Aid & Defender Association's** **Assessment of Trial Level Indigent Services in Louisiana 40 years after Gideon v. Wainwright.** Petitioner Allen contends that the findings made are relevant and applicable to his case and adopts the findings of the said association as well as the findings of *The National Association of Criminal Defense*

12.

83

*Lawyers* as being his own. To this end, Allen wishes to proceed accordingly with the his post-conviction application so that the matter above may be made a permanent part of the record. Whereby Allen prays that the Honorable Criminal District Court for the Parish of Orleans find his post-conviction relief application to be in accord with the standard of "Liberal Construction Considerations" in light of his status as a layman and a pro se litigant.

It is requested again that subpoenas issue for the aforementioned witnesses, that a hearing be designated, and that counsel be appointed prior to the hearing to consult with petitioner to discuss strategy and the direction the case is taking prior to the hearing. This concludes the pre-claim in this matter.

Whereas petitioner Allen prays that the relief to which he seeks is granted, so that prior to any disposition to his case is made, he will be properly prepared before the Court so that this matter may be resolved in the interest of fairness and justice.

## DEPRIVATION OF FEDERAL AND STATE CONSTITUTIONAL RIGHTS

While petitioner Allen is seeking to remedy the violation of his Constitutional rights, the State/Government may argue that a more stringent test need be employed than the one used in *Cuyler v. Sullivan*, or *Strickland v. Washington*. In doing so, the State may offer the case of *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir.), cert. Denied, 442 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975), and the standards announced therein. However, it is ultimately this Honorable Court's duty to decide which principle of law govern this claim. Notably, in *Fitzgerald*, the Court constructed the conceptual framework within which *Sixth Amendment* claims were to be analyzed, while at the same time establishing the criteria by which such claims were to be judged when "retained counsel" is involved.

The reason for the distinction drawn in Fitzgerald between "retained" and "appointed" counsel is the requirement of the State action imposed by the on all rights incorporated thereunder. Fitzgerald, thus identified two situations involving retained counsel which satisfy the State action requirement.

*In the first instance:*

Where a lawyers ineffectiveness renders the trial fundamentally unfair, State action is present because the State's criminal justice system has failed and enforcement of the resultant judgment would violate Due Process, regardless of whether counsel is retained or appointed.

*In the second instance*:

Where retained counsel is less than reasonably effective yet not so ineffective as to render the proceedings fundamentally unfair, requisite State involvement is established by showing:... "that some

84

responsible State official connected with the criminal proceedings who could have remedied the conduct failed in his duty to accord justice to the accused. That the trial judge and the prosecutor have such a capacity and duty is unquestionable. Therefore, if the trial judge or the prosecutor can be shown to have actually known that a particular defendant is receiving incompetent representation and takes no remedial action, the State action requirement is satisfied. If they directly participate in the incompetency, it is even more so. Furthermore, if the incompetency of a retained attorney's representation is so apparent that a reasonably attentive official of the State should have been aware of and could have corrected it, then again the State action requirement is satisfied.

*Fitzgerald v. Estelle*, 505 F2d at 1337 (emphasis added). The *Fitzgerald* analysis has subsequently been made applicable to claims arising out of federal proceedings. *United States v. Childs*, 571 F.2d 315 (5ᵗʰ Cir. 1978)(*per curiam*). The Court's of the State of Louisiana have been aware of the underlying problem since *State v. Peart*, 621 So.2d 780 (La. 1993), but the problem persist without remedy. Because of this, a *"Conflict of Interest"* emerged in this case where trial counsel would not raise ineffectiveness against himself due to the reasons set out in the *Assessment of the Louisiana Public Defender System* book and, because it might result in his termination from the Indigent Defender Program, or result in him being labeled a "whistle blower."

The law is clear, "When a District Court is sufficiently appraised of even the possibility of a conflict of interest", the Court has an "inquiry obligation." See, *Wood*, 450 U. S. at 272-73, 101 S. Ct. at 1178-79. When known, the Court must investigate the facts and details of the attorneys interest to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all. See, *Strouse v. Leonardo*, 923 F.2d 548-55 (2ⁿᵈ Cir. 1991); (In order to protect a defendant's right to conflict free counsel, the trial court must initiate an inquiry when it knows or reasonably should know of the possibility of a conflict of interest."). See also, *United States v. Aiello*, 814 F.2d 109, 113 (2ⁿᵈ Cir. 1987) ( *Sixth Amendment* "imposes a duty upon trial court to inquire.) According to what is known as the Automatic Reversal Rule, when a possible conflict has been entirely ignored, reversal is automatic. No warning, no waiver secured of the right to effective assistance, nor was anything ever mentioned to petitioner by any of his counsels afforded to him through the *Louisiana Public Defender System*, that, "he might be exposed to or become the victim of systematic ineffective assistance of counsel." This lapse constituted conflict-laden representation. In relation to this, the trial attorney of record provided conflict-laden representation which deprived petitioner of his *Sixth Amendment* rights to: 1.) Conflict Free Counsel, and,2.) The Effective Assistance of Conflict-Free Counsel.

14.

85

Counsel refused to make available to his client other counsel, via motion to appoint another counsel. The Courts of Louisiana have been placed on notice since *Peart*, and a *Study of the Operation of the Indigent Defense System in the 19th Judicial District Court of East Baton Rouge, Louisiana*, prepared by *The Spandenberg Group*, October 1992. Consequently, there is no escaping that the Court was sufficiently notified of the conflict and its possible effects.

The District Court's failure to inquire could itself be considered an independent constitutional violation that alone necessitates reversal. See *Hamilton v. Ford*, 969 F.2d 1006-11 (11th Cir.1992) (reversal automatic when there is no inquiry because "the trial court has failed to discharge its constitutional duty under *Holloway* to determine whether the defendant's are receiving adequate assistance of counsel, a duty separate from the *Cuyler* framework."); *cert. Denied*, U.S. ____ , 113 S. Ct. 1625, 123 L. Ed. 2d 183 (1993). Alternatively, the absence of an inquiry by the district court, and thus the absence of any account or record of the true nature of the alleged conflict may require a presumption of prejudice that a defendant must usually demonstrate to make out a claim of ineffective assistance of counsel. See (rial court fails to inquire into an alleged conflict, a reviewing court will presume prejudice upon a showing of possible conflict."), cert. denied, 475 U.S. 1020, 106 S. Ct. 1209, 89 L. Ed.2d 321 (1986).

Pursuant to the Louisiana Supreme Court's decision and rationale announced in *State v. Cisco*, 861 So.2d 118, 2001-2723 (La. 1/14/04), petitioner Allen is entitled to relief sought. In *Cisco*, the Supreme Court referred to the case of: "To be more than just a hollow right, our law requires that assistance of counsel be effective. As a general rule, therefore, Louisiana Courts have held that any attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant he is representing."

## CONCLUSION

Wherefore, petitioner Michael Allen respectfully prays that for the reasons argued herein, that this Honorable Court grant him the post-conviction relief sought.

Respectfully Submitted this _____ , day of _____ ,2015.

_____

Michael Allen # 575625

Main Prison CBC U/L #8

Louisiana State Penitentiary

Angola, Louisiana 70712

15.

86

## CERTIFICATE OF SERVICE

I, Michael Allen, hereby certify that I have served a true and correct copy of the above and foregoing Application for Post-Conviction Relief via U. S. Mail postage prepaid to:

Honorable Darryl Derbigny, Judge, Orleans Criminal District Court

2700 Tulane Avenue, New Orleans, Louisiana 70119

Leon Cannizzaro, Jr., District Attorney, Parish of Orleans

619 South White Street, New Orleans, Louisiana 70119

on this _____ day of _____ ,2015.

_____

Michael Allen

## VERIFICATION

Before me, the undersigned Classification Official, did personally appear Michael Allen #575625, who after having been duly sworn, does verify that he is the Petitioner in the above and foregoing, that he has read and understands the contents thereof; that he believes the contents to be true and correct to the best of his knowledge under the penalty of perjury prescribed by law.

_____

Michael Allen

#57562

SUBSCRIBED BEFORE ME THIS _____ day of _____, 2015.

_____

CLASSIFICATION OFFICIAL

16.

87

No. _____

| | |
|---|---|
| State ex rel Michael Allen | Criminal District Court |
| vs. | Parish of Orleans |
| State of Louisiana | State of Louisiana |

_____          _____

Date Filed By Clerk                         Dpty. Clerk of Court

---

## MOTION FOR EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL

---

NOW INTO COURT COMES MICHAEL ALLEN, pro se Petitioner, who respectfully moves this Honorable Court to grant him an evidentiary hearing, and the appointment of counsel, for the reason(s) set out below:

Petitioner Michael Allen, an inmate at the Louisiana State Penitentiary, Angola, Louisiana, is currently seeking Post-Conviction Relief from his underlying criminal conviction had before this Court in the above entitled and numbered matter.

I

Petitioner Allen contends that the allegations presented in his Post-Conviction Relief Application pleadings will entitle him to relief.

II

Therefore, Petitioner Allen respectfully moves this Honorable Court to grant him an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure Article 930.

III

Petitioner Allen contends that the granting of an evidentiary hearing for the taking of testimony and/or other evidence is necessary as there are questions of fact which cannot properly be resolved pursuant to Louisiana Code Criminal Procedure Article(s) 928 and 929; that a hearing is necessary as the factual and legal issues cannot be resolved based only upon Petitioner's pleadings, the State's answers, and/or supporting documents submitted by either party or available to the Court.

17.

88

## IV

Furthermore, should this Court grant Petitioner Allen an evidentiary hearing, Petitioner motions this Court pursuant to Louisiana Code Criminal Procedure Article 930.7 ©, to appoint counsel for the sole purpose of assisting him in the preparation for, and appearances in such evidentiary hearings.

## CONCLUSION AND PRAYER

Wherefore, Petitioner Michael Allen respectfully prays that this Honorable Court will grant an evidentiary hearing in this matter and if so granted, Petitioner Allen further prays that this Court will appoint counsel for such hearing as mandated by law.

Respectfully Submitted this _____ day of _____ 2015.

_____

Michael Allen

#575625
Main Prison CBC U/L #8
Louisiana State Penitentiary
Angola, Louisiana 70712

89



No._____

| | |
|---|---|
| State ex rel. Michael Allen | Criminal District Court |
| vs. | Parish of Orleans |
| State of Louisiana | State of Louisiana |

_____          _____

Date Filed By Clerk          Dpty. Clerk of Court

---

## PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM

---

NOW INTO COURT COMES Michael Allen, pro se Petitioner, who respectfully moves this Honorable Court to grant the instant petition and issue a Writ of Habeas Corpus Ad Testificandum upon Burl Cain, Warden, Louisiana State Penitentiary, Angola, Louisiana for the reasons set forth below:

### I

Petitioner Allen, an inmate at the Louisiana State Penitentiary, Angola, Louisiana is currently seeking Post-Conviction Relief from his underlying criminal conviction had before this Court in the above entitled and numbered matter.

### II

N. Burl Cain is the Warden of said penitentiary.

### III

In conjunction with this application for Post-Conviction Relief, Petitioner has also filed into this Court a motion seeking an evidentiary hearing in this matter.

### IV

Pursuant to Louisiana Code Criminal Procedure Article 930 (A), petitioner Allen is entitled the right to be present at such hearing and, he further asserts that he is hereby exercising said entitlement.

19.

90

## CONCLUSION AND PRAYER

Wherefore, Petitioner Michael Allen respectfully prays that this Honorable Court will issue a Writ of Habeas Corpus Ad Testificandum upon the Warden Burl Cain of Louisiana State Penitentiary, or his designee to produce the body of petitioner Michael Allen before this Honorable Court for the purpose of an evidentiary hearing in this post-conviction relief proceeding.

Respectfully Submitted,

_____

Michael Allen #575625
Main Prison CBC U/L #8
Louisiana State Penitentiary
Angola, Louisiana 70712

91

OFFENDER'S REQUEST FOR LEGAL / INDIGENT MAIL

NAME: _____

NUMBER: _____

LOCATION: _____

BALANCE IN YOUR DRAWING ACCOUNT: $_____

LIST EACH ITEM TO BE MAILED
GIVE THE NAME AND COMPLETE ADDRESS OF EACH
PIECE TO BE MAILED:

_____
name

_____
address

_____
city, state, zip code

_____
name

_____
address

_____
city, state, zip code

_____
name

_____
address

_____
city, state, zip code

ANY DELIBERATE MISREPRESENTATION WILL RESULT
IN YOUR MAIL BEING RETURNED

_____
offender's signature and number

_____
classification officer          date

92