## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL ALLEN**                                      **CIVIL ACTION**

**VERSUS**                                             **NO. 19-14737**

**DARREL VANNOY, WARDEN**                              **SECTION "T"(4)**
**LOUISIANA STATE PENITENTIARY**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* **28 U.S.C. § 2254(e)(2)**.[1]

## I.     Factual and Procedural Background

Petitioner Michael Allen ("Allen") is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On October 1, 2009, Allen and a co-defendant, Michael Treaudo,[3] were indicted by an Orleans Parish Grand Jury for the second degree murder of Arthur Brown.[4]  Both defendants entered a plea of not guilty on October 13, 2009.[5]

The record reflects that, by 2009, Treaudo had known Allen, known as "Mike", for about ten years and he had known Brown, also known as "Rat" or "Rat Rat," his whole life.  On June 6, 2009, Allen told Treaudo that he had dropped or lost $200, and he believed Brown picked it up.

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] ECF No. 5.

[3] The state court records and rulings contain multiple spellings of Treaudo's name, including the indictment where it is spelled "Trudeau."

[4] St. Rec. Vol. 1 of 7, Indictment, 10/1/09; Grand Jury Return, 10/1/09.

[5] St. Rec. Vol. 1 of 7, Minute Entry, 10/13/09; Indictment, as amended 2/7/11.

On the morning of June 7, 2009, Treaudo picked Allen up to go to Brown's house to buy marijuana. Treaudo was driving a teal blue Chevy Tahoe SUV he had borrowed the previous night from a friend, Tasha Jones.

Brown and Nicole Jackson were living together in Algiers with their child.[6]  That morning, the couple's son entered the house around 11:00 a.m. to tell Jackson that Treaudo, known to them as "Little Mike" or "Sun,"[7] wanted to see Brown, who was taking a shower.  Approximately five minutes later, their son came back inside and said a girl wanted to see Brown.  Jackson went outside and saw a blue SUV parked on the opposite side of the street.  She told the woman that Brown was in the shower, and the woman said something about a cell phone.  As Jackson turned to go back inside, Treaudo sat up in the driver's seat and asked her where Brown was.  She told Treaudo that Brown was in the shower.  The woman and Treaudo were the only people she saw in the SUV.

Jackson returned inside the house to tell Brown that Treaudo was outside.  Brown went outside and then soon returned in the house.  As he started to say something to Jackson, he stopped in the middle of the room, threw his hands up, said "F - - k it," and turned around and walked back outside.  When he went back out, he told Treaudo and Allen that he knew who had marijuana to sell.  When Brown tried to get into the Tahoe, Allen moved to the backseat and told Brown to get in the front.  The person who was supposed to have the marijuana was not home.  The three men then drove to the home of Treaudo's uncle, still looking for marijuana to buy, but he too was not

---

[6]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Allen*, 129 So.3d 724, 726-34 (La. App. 4th Cir. 2013); St. Rec. Vol. 4 of 7, 4th Cir. Opinion, 2012-KA-1118, pp. 2-16, 11/20/13.

[7]These are the spelling used by the Louisiana Fourth Circuit.  The indictment spells the nicknames as "Lil Mike" and "Son."  St. Rec. Vol. 1 of 7, Indictment, 10/1/09.

home.  Allen soon received a cellphone call, which prompted him to ask Treaudo to take him to New Orleans East to bring some money to a girl.

As they crossed the Mississippi River bridge from Algiers, Treaudo took a cell phone call from his girlfriend, Lotoria Carter, and Brown also talked to someone on his phone.  Allen directed Treaudo to take a particular exit, and they ended up on a dead-end street called Red Maple Drive. At some point, Allen had Treaudo stop near a little u-turn and all three men exited the vehicle. Treaudo was still talking to Carter on the phone when he exited the Tahoe.  As the call ended, Treaudo walked around the back of the Tahoe just in time to see Allen shoot Brown in the head with a black revolver.  Treaudo had not heard either of them say anything before the shooting.

Treaudo scrambled to get back into the Tahoe and heard four more shots.  Allen got in the car, and Treaudo asked him why he shot Brown.  Allen replied, "You either rolling with me or you can roll with him," and told Treaudo to keep his mouth shut.  After brief banter, Treaudo told Allen he was "tripping," and then drove off.  Unbeknownst to Treaudo, he had not ended the call with Carter, and she heard the shooting and subsequent conversations between Allen and Treaudo.

Yolanda Merritt lived in the neighborhood near the shooting.  When she heard the gunshots, she looked out of a window.  She saw a teal-colored Chevy SUV, with tinted windows and occupied by two black men.  The car was coming around the corner from Red Maple Drive. She wrote down on paper the last three digits of the license plate, "7-0-9" and the make and color of the SUV, and the time, 12:33 p.m.  A minute or two later she heard screaming outside, and a neighbor said someone had been shot.  Merritt then called 9-1-1 at 12:35 p.m. to report what she had seen and written down.  She described the driver as a "small built" young black man, with dreadlocks, wearing a white T-shirt.  She described the passenger as a bigger, stockier man.  She

3

reported that the driver was on a cell phone and his head was turned toward the passenger, who was looking straight ahead.

On the way back across the river, Allen threw the spent casings into the river as they crossed the bridge. Treaudo dropped Allen off at a woman's residence. After Treaudo learned the police were looking for him, he parked the Tahoe near his sister's residence and wiped down the steering wheel and the seats where Brown and Allen sat.

In the meantime, not long after the shooting, Jackson's son told her that people were saying Brown had been shot. At the same time, Brown's sister called Jackson to tell her that she heard Brown had been shot. Jackson then called Brown's cell phone, and a man answered. The man told her that someone was dead. She determined from the caller's description of the tattoos and clothing that it was Brown. A New Orleans Police Department ("NOPD") detective later met with her and showed her a photo lineup in which she identified Treaudo as the driver.

NOPD Homicide Detective Kevin Burns inspected Brown's cell phone found at the scene. Among the names on the phone was Lamyra Henry, who also had a child with Brown. The cell phone call log indicated that Brown called Henry at 12:05 p.m., with no answer, and then he called her again at 12:07 p.m., when Brown and Henry spoke for ten minutes and three seconds. During that call, Brown told Henry that he was with both Allen, whom she also knew as "Mike," and Treaudo, whom she also knew as "Sun." After speaking with Henry, Detective Burns determined that Brown was still alive at 12:17 p.m. He also learned that the SUV belonged to Tasha Jones, a friend of Treaudo's who lived around the corner from Brown and Jackson.

Detective Burns went to Jones's residence and she told him Treaudo had her car. Using the speaker feature so the detective could hear, Jones telephoned Treaudo. Based on information

4

from Treaudo, Detective Burns seized Jones's SUV which had been left near the corner of Alix and LeBouef Streets in Algiers.

On February 7, 2011, co-defendant Treaudo withdrew his not guilty plea to enter a plea of guilty to the lesser offense of manslaughter.[8]  The state trial court sentenced him to seven years in prison at hard labor.[9]

Allen was tried before a jury on September 26 through 28, 2011, and found guilty as charged.[10]  At an October 14, 2011, hearing, the state trial court denied Allen's motion for post-verdict judgment of acquittal and sentenced him to life in prison without benefit of parole, probation, or suspension of sentence.[11]

On direct appeal, Allen's appointed counsel asserted the following errors:[12]  (1) the evidence was insufficient to support the verdict; (2) the state trial court erred in refusing to allow Allen to present evidence of the criminal history of Jacque Wayne Charles, who may have conspired with Treaudo to kill Brown; and (3) the state trial court erred in allowing the State to introduce evidence of Allen's involvement in a 2004 shooting for which he was not convicted. Allen was granted leave to file a supplemental brief, which he did not do.[13]  On November 20, 2013, the Louisiana Fourth Circuit affirmed Allen's conviction and sentence finding no merit in the claims.[14]

---

[8]St. Rec. Vol. 1 of 7, Minute Entry, 2/7/11.  Treaudo's first trial ended in mistrial when the jury could not reach a verdict.  *Id.*, Treaudo's Mistrial Minutes, 6/14-16/10.
[9]*Id.*
[10]St. Rec. Vol. 1 of 7, Trial Minutes, 9/26/11; Trial Minutes, 9/27/11; Trial Minutes, 9/28/11; St. Rec. Vol. 3 of 7, Trial Transcript, 9/26/11; Trial Transcript, 9/27/11; St. Rec. Vol. 4 of 7, Trial Transcript, 9/28/11.
[11]St. Rec. Vol. 1 of 7, Sentencing Minutes, 10/14/11; Motion for Post-Verdict Judgment of Acquittal, 10/14/11; St. Rec. Vol. 4 of 7, Sentencing Transcript, p. 2, 10/14/11.
[12]St. Rec. Vol. 4 of 7, Appeal Brief, 2012-KA-1118, 9/11/12.
[13]St. Rec. Vol. 4 of 7, Motion to Supplement, 1/25/13; 4th Cir. Order, 2012-KA-1118, 1/30/13.
[14]*Allen*, 129 So.3d at 724; St. Rec. Vol. 4 of 7, 4th Cir. Opinion, 2012-KA-1118, 11/20/13.

On May 30, 2014, the Louisiana Supreme Court denied Allen's related writ application without stated reasons.[15]  Allen's conviction and sentence were final 90 days later, on August 28, 2014, because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

Almost nine months later, on May 21, 2015, Allen submitted an application for post-conviction relief to the state trial court.[16]  Although the application is not in the certified record provided by the Respondent, the record reflects that on May 28, 2015, the state trial court denied the application for failure to state a claim for relief under La. Code Crim. P. art. 930.3.[17]  The state trial court also instructed that a copy of its ruling be mailed to Allen at his prison address.  Allen did not seek review of this ruling.

Almost three years later, on April 30, 2018, Allen mailed what he calls a "post-conviction status check" to the state trial court.[18]  On May 9, 2018, having construed Allen's pleading as "a second post-conviction relief application," the trial court denied the application as repetitive of the first application denied on May 28, 2015.[19]

---

[15]*State v. Allen*, 140 So.3d 1174 (La. 2014); St. Rec. Vol. 6 of 7, La. S. Ct. Order, 2013-KO-2994, 5/30/14; La. S. Ct. Writ Application, 13-KO-2994, 12/26/13 (dated 12/4/13); St. Rec. Vol. 4 of 7, La. S. Ct. Letter, 2013-KO-2994, 12/26/13.

[16]*See* ECF No. 5-3, p. 30 (Allen's mail request dated 5/21/15 for the application to be mailed to the district attorney); *see also*, St. Rec. Vol. 1 of 7, Docket Entry, 5/26/15 (date application filed by the state trial court).  The record does not include a file stamped copy of the application.

[17]St. Rec. Vol. 1 of 7, Docket Entry, 5/26/15.

[18]ECF No. 5-4, at 5, 4/30/18 (mail slip titled "post-conviction status check"); St. Rec. Vol. 5 of 7, Notice of Intent, p.1, 9/13/18.  In the notice of intent, Allen wrote "August of 2018" but apparently meant April, 2018, which was his last mailing before the state trial court's order at issue.  *See also*, St. Rec. Vol. 1 of 7, Docket Entry, 5/8/18.

[19]St. Rec. Vol. 5 of 7, Trial Court Order, 5/9/18; *see also*, St. Rec. Vol. 1 of 7, Docket Entry, 5/9/18.

On November 20, 2018, Allen untimely[20] sought review of that ruling in the Louisiana Fourth Circuit.[21] Allen protested that his petition could not have been repetitive claiming he only filed one application in 2015, and simply was seeking the status of that application when he wrote the court in 2018. In addition, he claimed that he had not received notice that the 2015 application had been denied in May of that same year. On December 7, 2018, the Louisiana Fourth Circuit denied the application without stated reasons.[22]

On September 24, 2019, the Louisiana Supreme Court denied Allen's untimely[23] filed writ application finding his post-conviction application was not timely, and he failed to prove that an exception applied, citing La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995).[24]

## II.   <u>Federal Petition</u>

On January 7, 2020, after correction of certain deficiencies, the clerk of this Court filed Allen's federal petition for habeas corpus relief in which he asserted the following grounds for relief:[25] (1) the affidavit in support of the arrest warrant was constitutionally insufficient to support probable cause for his arrest; (2) the in-court and out-of-court identification procedures created a substantial likelihood of misidentification; and (3) he received ineffective assistance when counsel failed to put the State's case to meaningful adversarial test. Allen contends that the state courts'

---

[20]Under La. App. R. 4-3, a defendant has 30 days from issuance of the state trial court's ruling to seek review in the appellate court.
[21]St. Rec. Vol. 5 of 7, 4th Cir. Writ Application, 11/27/18 (received and efiled by prison legal department on 11/20/18).
[22]St. Rec. Vol. 5 of 7, 4th Cir. Order, 2018-K-1003, 12/7/18.
[23]Under La. S. Ct. R. X§5, a defendant has 30 days from the appellate court's ruling to file a writ application in the Louisiana Supreme Court.
[24]*State v. Allen*, 279 So.3d 906 (La. 2019); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2019-KH-00085, 9/24/19; La. S. Ct. Writ Application, 19-KH-85, 1/15/19 (efiled 12/26/18).
[25]Rec. Doc. No. 5.

denial of relief on each of these issues was contrary to or an unreasonable application of federal law.  He also argues that the state courts erred in finding that he filed a second, successive application for post-conviction relief.  He also argues that his federal petition should be considered timely filed because he did not received a copy of the state trial court's 2015 ruling on his application for post-conviction relief, the trial court did not give him a return date on his notice of intent to seek review of the 2018 ruling, and he is actually innocent based on the facts presented at trial.

The State filed a response in opposition asserting that Allen's federal petition should be dismissed as untimely filed.[26]  The State contends that Allen allowed more than one year to pass since finality of his conviction without having filed a federal petition.  In support, the State argues that the federal limitations ran despite his claim that he received no notice of the 2015 ruling and he has failed to establish a basis for equitable tolling or the actual innocence exception.  In the alternative, the State contends that because Allen did not exhaust state court review of his claims in a procedurally proper manner, the claims are now in procedural default and alternatively could be dismissed for that reason.

## III. <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to Allen's petition, which is deemed filed in this Court under the

---

[26]Rec. Doc. No. 18.

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

mailbox rule on December 23, 2019.[28]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.   *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts and the record shows that Allen's federal petition was not timely filed under the AEDPA.  For the following reasons, his petition should be dismissed as time-barred.

## IV.   Statute of Limitations

The AEDPA codified in 28 U.S.C. § 2244(d)(1)(A) requires a petitioner to bring his § 2254 claim within one year of the date the state court conviction became final.[29]   *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).   As stated above, Allen's conviction was final under federal law on August 28, 2014.  Pursuant to § 2244, Allen had one year from that date, or until August 28, 2015,

---

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Allen's pleadings indicate that he delivered the petition and related pleadings to the prison legal department on December 23, 2019, for electronic delivery to this court, which was done the same day.  ECF No. 1-7, p. 5.

[29]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-

    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

to timely file a federal petition for habeas corpus relief, which he did not do.  Thus, literal application of the statute would bar Allen's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

A.    **Statutory Tolling**

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state court pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.

*Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review").   A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.   *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In Allen's case, the AEDPA filing period began to run on August 29, 2014, the day after his conviction was final under federal law, and continued to run for 265 days until May 21, 2015, when Allen submitted his application for post-conviction relief to the state trial court for filing. The application remained pending until Monday, June 29, 2015, when Allen did not seek review within 30 days of the trial court's May 28, 2015 ruling.[30]

The next day, June 30, 2015, the AEDPA filing began to run again without interruption for the remaining 100 days, until October 7, 2015, when it expired.   Allen had no other properly filed state post-conviction or other collateral review pending during that time period.   As discussed by the State, the fact that Allen claims that he did not receive a copy of the state trial court's May 28, 2015, ruling does not change the *statutory* tolling calculation.   *See Grillette v. Warden, Winn Corr. Ctr.*, 372 F.3d 765, 769-71 (5th Cir. 2004) (a state application ceases to be pending when the time

---

[30]As noted previously, Allen had 30 days from the issuance of the order to seek review in the Louisiana Fourth Circuit.  La. App. R. 4-3.  Also, the thirtieth day was Saturday, June 27, 2015, causing the last day of the period to fall to the next business day, Monday, June 29, 2015.  *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6.

for supervisory review expires).  In addition, the United States Fifth Circuit has propounded that a state court's failure to notify a petitioner of its ruling or order in the state court post-conviction proceedings is *not* a state-created impediment for purposes of statutory tolling.  For example, in *Critchley v. Thaler*, 586 F.3d 318 (5th Cir. 2009), the Fifth Circuit noted that when the state merely "fails to provide notice of its ruling on a state habeas petition to the affected petitioner . . ., *equitable* tolling rules govern that situation" instead of *statutory* tolling.  *See id.* at 321 n.3 (emphasis added) (citing *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009)); *see also Clarke v. Rader*, 721 F.3d 339, 343 (5th Cir. 2013) (noting that "[w]e have serious reservations about whether the State's failure to notify [the petitioner] of the . . . denial provides a basis for a statutory tolling claim rather than merely an equitable tolling claim"); *accord Williams v. Thaler*, 400 F. App'x 886, 889 (5th Cir. 2010) (noting that it is "unclear" whether a state court's failure to provide notice of a writ denial "is a violation of constitutional or federal law under § 2244(d)(1)(B)").  For these reasons, Allen is not entitled to statutory tolling for any delay or failure by the state trial court to provide him notice of the May 28, 2015, ruling.

Therefore, Allen's federal petition, filed under the mailbox rule on December 23, 2019, was filed more than four years and two and one-half months after the AEDPA filing period expired on October 7, 2015.  His untimely federal petition should be dismissed with prejudice unless he meets another exception or excuse to the running of the AEDPA limitations period.

### B.   No Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling of the AEDPA limitations period where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus.  *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998);

12

*Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). However, equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary circumstance outside of his control from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002); *see Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy*, 577 F.3d at 599-600 (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's seventeen-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).  A habeas petitioner bears the burden of proof

to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

In this case, Allen requests equitable tolling claiming that he did not receive notice of the state trial court's May 28, 2015, ruling, which prevented him from timely seeking other state court and federal review of his claims.[31]  Equitable tolling can be warranted where a petitioner's ability to seek timely review was thwarted by his failure to receive notice of a state court judgment. *See*, *e.g.*, *Williams*, 400 F. App'x at 892 ("Our delayed notice cases demonstrate that the simple fact that a petitioner did not receive notice that the AEDPA limitations period had ceased to toll may be an extraordinary circumstance that warrants equitable tolling.") (citing *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000)).  Even so, a delay or failure of notice is only *half* of Allen's burden.  He must also establish that he pursued his rights diligently, because "[e]quity is not intended for those who sleep on their rights." *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) (internal quotation marks omitted).

The United States Supreme Court has explained that its extraordinary circumstance and diligence facets are required "'elements,' not merely factors of indeterminate or commensurable weight." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016)[32] (citing *Pace*, 544 U.S. at 418) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements")).  The Supreme Court has directed that a request for equitable tolling must be rejected when the petitioner fails to satisfy either one of the two elements. *Id*.; *Lawrence*

---

[31]ECF No. 5-1, at pp. 9-13.

[32]While *Menominee Indian Tribe* was not a habeas corpus case, its equitable tolling discussion was expressly based on the Supreme Court's interpretation of *Holland*.  The reasoning therefore applies to habeas cases. *See, e.g.*, Brian R. Means, *Federal Habeas Manual* § 9A:83 (2020); *Cadet v. Fla. Dept. of Corrs.*, 853 F.3d 1216, 1218-19 (11th Cir. 2017) (recognizing *Menominee Indian Tribe* as one of the Supreme Court's significant sources explaining equitable tolling for habeas cases).

*v. Florida*, 549 U.S. 327, 336-337 (2007) (rejecting equitable tolling without addressing diligence because habeas petitioner fell "far short of showing 'extraordinary circumstances.'"); *Pace*, 544 U.S. at 418 (holding, without resolving litigant's argument that he had "satisfied the extraordinary circumstance test," because "[e]ven if we were to accept [his argument], he would not be entitled to relief because he has not established the requisite diligence").  Thus, even if this Court accepts the state trial court's failure to notify Allen as an extraordinary circumstance, to establish the diligence requirement, Allen must prove that he acted with "reasonable diligence" to protect or pursue his rights. *Holland*, 560 U.S. at 563.  Allen does not satisfy this burden.

The record reflects that Allen did not seek post-conviction relief in the state courts with the requisite diligence or the alacrity expected in similar cases.  For example, Allen's was final under the AEDPA on August 28, 2014, which was 90 days after his state court direct appeal was resolved. He waited almost nine months, until May 21, 2015, to seek post-conviction relief in the state trial court.  In other words, Allen allowed three-quarters of the one-year AEDPA limitations period to elapse before he initiated state post-conviction review.  In this Circuit, similar delays in seeking state post-conviction relief have been considered indicative of a lack of diligence for equitable tolling purposes. *See Schmitt v. Zeller*, 354 F. App'x 950, 951-52 (5th Cir. 2009) ("[Petitioner] delayed approximately ten months after his conviction was final before applying for state habeas relief. . . . [Petitioner]'s filing the state petition after squandering most of the year available under Section 2244 is a factor in deciding whether equitable tolling should be allowed for problems that arise in later filing the federal petition."); *Nelms v. Johnson*, No. 01-10696, 2002 WL 31319277, at *1 (5th Cir. Sept. 30, 2002) ("This court has found no case in which equitable tolling was granted after a petitioner had let ten months of the AEDPA limitations period slip by.")

Even more compelling in this case is the fact that Allen failed diligently to monitor the status of his May 2015 state court post-conviction application. Accepting Allen's assertions as true, the first status check he made would have been mailed to the state trial court judge (not the clerk of court) on October 20, 2016.[33] This was almost seventeen months after he submitted the application in May of 2015. No other correspondence (not related to his efforts to get copies of the District Attorney's file) was sent to or docketed by the state trial court until years later in January, February, and May of 2018.[34] These delays at the hands of Allen are compelling. For a person professing concern over the perceived delay in addressing his pleadings, Allen sat idle during extended periods without questioning the status of his application. He also took no curative measures, such as mandamus in the higher state courts or a protective filing in the federal court, during the three-year period. As others in this court have recognized, "while . . . incarcerated persons face more obstacles than free citizens in making routine status checks on pending court matters, even prisoners are not absolved of all responsibility to track their litigation diligently." *Smith v. Terrell*, No. 07-9449, 2009 WL 2139697, at *4 (E.D. La. July 13, 2009) (order adopting attached report and recommendation).

In this case, accepting his assertions as true, Allen sat idle for one year and a half without inquiry and then waited another year and a half before making a subsequent inquiry into the status of his 2015 post-conviction application. This extended time crossed into unreasonable and does not warrant equitable tolling, even assuming he did not get notice of the court's May 28, 2015 ruling. *See*, *e.g.*, *Stroman v. Thaler*, 603 F.3d 299, 302 (5th Cir. 2010) (finding that an 18 month

---

[33]ECF No. 5-1, p. 10; ECF No. 5-4, p.1.

[34]ECF No. 5-1, p. 10; ECF No. 5-4, pp. 4 and 5; St. Rec. Vol. 1 of 7, Docket Entries, 1/24/18, 2/23/18, and 5/8/15.

wait between inquiries as to the status of an application was not sufficiently diligent for equitable tolling); *Hicks v. Quarterman*, No. H-06-2208, 2007 WL 79706, at *5 (S.D. Tex. Jan. 8, 2007) (lack of diligence where prisoner waited one year to make first inquiry about the status of a filing and another year to make the second inquiry), *aff'd*, 298 F. App'x 346 (5th Cir. 2008).

Allen also claims that he finally received notice through the state trial court's May 9, 2018, order that the court had denied his first application on May 28, 2015.[35]  In that same judgment, the state trial court also construed and denied his correspondence as a successive application.[36] Despite his claims of discontent with the order, he waited three and one-half months until September 13, 2018, to submit to the state trial court a notice of his intent to seek review of the May 9, 2018, ruling.[37]  While he complains that the state trial court did not provide a return date for his untimely[38] filed notice, he waited until November 20, 2018, which was almost six months after the state trial court's ruling, to file a writ application with the Louisiana Fourth Circuit.  This subsequent delay also signifies a lack reasonableness and diligence by Allen.  *See*, *George v. Vannoy*, No. 17-01614, 2018 WL 1698308, at * 3 (W.D. La. Mar. 6, 2018), *report and recommendation adopted*, 2018 WL 1661457, at *1 (W.D. La. Apr. 6, 2018) (petitioner's lack of diligence continued when he waited an additional 32 days between learning of the denial of his state writ and the mailing of his federal habeas petition).

Furthermore, Allen's federal petition would be *un*timely even if a reviewing court were to equitably toll the entire period from the filing of his state court application on May 21, 2015,

---

[35]St. Rec. Vol. 5 of 7, Trial Court Order, 5/9/18.

[36]*Id.*

[37]*Id.*, Notice of Intent, dated 9/13/18.

[38]As noted previously, La. App. R. 4-3 requires that the petitioner file for review within 30 days of the issuance of the state trial court's order.

through the state trial court's May 9, 2018, ruling on Allen's second state court application.  Under this alternative theory, at the time of the May 21, 2015, state court filing, Allen had expended 265 days of the one-year AEDPA limitations period.  The one-year AEDPA filing period would remain tolled until June 8, 2018, which was thirty days after the May 9, 2018, ruling, when Allen failed timely to seek review in the Louisiana Fourth Circuit.[39]  The one-year AEDPA filing period would have begun to run again on June 9, 2018, for the remaining 100 days, until Monday, September 17, 2018,[40] when it would have expired long before his federal petition was filed.  Thus, Allen's federal petition deemed filed on December 23, 2019, would not be timely filed even if the Court were equitable toll the almost four-year period of delay.

Nevertheless, Allen has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation.  For the foregoing reasons, Allen has not established diligence in his efforts to preserve his rights or to timely file a federal habeas petition.  He is not entitled to equitable tolling.

### C.    No Other Excuse or Exception to Time Bar

Allen has asserted no other valid excuse or exception to avoid the expiration of the one-year AEDPA limitations period in this case, and his petition must be dismissed as untimely.  He generally asserts that he is actually innocent based on challenges to the testimony and evidence presented at his trial.  The testimony at his trial was already considered by the jury and does not invoke further scrutiny by a court on collateral review.  Instead, to prove actual innocence, a petitioner must present a credible claim of actual innocence based on "new reliable evidence . . .

---

[39]The Court again refers to La. App. R. 4-3.

[40]The thirtieth day was Sunday, September 16, 2018, causing the last day of the period to fall to the next business day, Monday, September 17, 2018.  *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6.

that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his factual innocence. *Schlup v. Delo*, 513 U.S. 298, 324 & 327 (1995). Thus, Allen is required to make a credible showing of his actual, or factual, innocence based on newly discovered evidence that was *not* available at trial. *McQuiggin v. Perkins*, 569 U.S. 383 (2013); *Schlup*, 513 U.S. at 327; *see also House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324). No such claim or high-level of proof has been offered by Allen to this Court, nor has any such claim been established or exhausted in the state courts before being asserted in this federal court. His conclusory claim of actual innocence is insufficient to warrant further consideration or excuse his untimely federal petition.

In addition, although not asserted by him, any suggestion by Allen that he was denied effective assistance of trial counsel would not provide excuse for his untimely federal filing. The United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), and their progeny, simply do *not* provide a basis for review of his untimely filed federal petition. In *Martinez*, the Court held that *a state court imposed* "'*procedural default* will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17) (emphasis added).

In this case, however, the bar at issue in this federal court arises from Allen's failure to meet the *federal* limitations deadline under the AEDPA. The *Martinez* and *Trevino* decisions do *not* address or provide an excuse for the untimely filing of a federal habeas petition. *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez*

rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (order adopting report and recommendation).  As already discussed, these cases also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA.  *See In re Paredes*, 587 F. App'x at 813; *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).  Thus, neither *Martinez* nor *Trevino* excuse the Allen's untimely filed federal petition.

Allen's federal petition deemed filed on December 23, 2019, was not timely filed within the one-year AEDPA statute of limitations period which expired on October 7, 2015.  There is no equitable tolling or other exception applicable to his untimely filing, and the petition should be dismissed with prejudice as time-barred.

## V.     <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Allen's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[41]

New Orleans, Louisiana, this 14th day of December, 2020.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[41]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.